## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNIVERSAL PROPERTY SERVICES INC. and SYED KAZMI, | |
| Plaintiffs, | Civil Action No. 20-3315 (FLW) |
| v. | **AMENDED MEMORANDUM OPINION AND ORDER** |
| LEHIGH GAS WHOLESALE SERVICES, INC., LEHIGH GAS WHOLESALE LLC, LGP REALTY HOLDINGS LP, CIRCLE K STORES INC. and TMC FRANCHISE CORP., | |
| Defendants. | |

**THIS MATTER** having been opened to the Court on three separate motions to dismiss filed by Defendants Lehigh Gas Wholesale Services, Inc. ("Lehigh Gas Inc."), Lehigh Gas Wholesale LLC ("Lehigh Gas LLC"), LGP Realty Holdings LP ("LGP Realty") (together with Lehigh Gas Inc. and Lehigh Gas LLC, the "Lehigh Defendants"), Circle K Stores Inc. ("Circle K"), and TMC Franchise Corp. ("TMC") (collectively, "Defendants"); the Court having reserved decision in its Opinion ("January 13th Opinion") and Order ("January 13th Order") dated January 13, 2021, with respect to a portion of Circle K's Motion to Dismiss, directing Plaintiffs and Circle K to provide supplemental briefing addressing whether Pennsylvania or New Jersey law should govern Plaintiffs' claims in Counts III, IV, and V; the Court also having reserved decision on the Lehigh Defendants' Motion to Dismiss, directing Plaintiffs and the Lehigh Defendants to conduct limited jurisdictional discovery to determine whether the Court may exercise personal jurisdiction over the Lehigh Defendants; and the Court having reviewed the parties' supplemental submissions related to these issues, pursuant to Fed. R. Civ. P. 78, makes the following findings:

1

I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

1. This matter arises from a terminated franchise relationship, involving the acquisition of franchised gas stations and convenience stores located in Florida.

2. Although I will provide a brief background of the factual allegations raised in Plaintiffs' Amended Complaint, I incorporate the full set of facts delineated in my previous Opinion here. In 2018, Plaintiffs became interested in acquiring certain franchised gas stations and convenience stores from Circle K. Plaintiffs allege, however, that during that time, Circle K supplied them with false and misleading historical financial data related to several of the gas stations and convenience stores. Specifically, Plaintiffs allege that during negotiations Circle K and TMC sent two memorandums which provided certain "trailing 12 month data for the period through April 2018 for each of the 22 locations that UPS was considering acquiring," including: "(1) total gallons of fuel sold; (2) gross sales data for sales in the convenience store; (3) net lottery commissions; (4) net ATM commissions; (5) other sales; and (6) real estate tax." According to Plaintiffs, although Circle K knew or should have known that the historical data that it supplied to Plaintiffs was false and misleading, Circle K never disclosed the falsity or incompleteness of the financial date and information, and instead, proceeded to enter into seventeen Supply Agreements and Leases with UPS. Plaintiffs also allege that UPS entered into franchise agreements for each of the locations with Circle K's affiliate, TMC, based on the false and misleading information.

3. On March 26, 2020, Plaintiffs filed their Complaint in this Court, and an Amended Complaint ("FAC") on April 10, 2020, asserting claims against the Lehigh Defendants, Circle K, and TMC. (ECF Nos. 1 and 6.) Specifically, the FAC asserts thirteen causes of action, including claims for violation of Florida's Deceptive and Unfair Trade Practices

Act, the Florida Franchise Act, and various common law fraud claims against Circle K and TMC. Claims for violation of the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq.* ("PMPA"), breach of contract, permanent injunction, and declaratory judgment are asserted against the Lehigh Defendants.

4. On June 22, 2020, the Lehigh Defendants filed a Motion to Dismiss, and Circle K and TMC[1] each filed separate Motions to Dismiss on June 29, 2020. (ECF Nos. 28, 32, 33.) In addition to moving to dismiss the FAC for lack of personal jurisdiction, the Lehigh Defendants moved to dismiss Plaintiffs' claims for improper venue and failure to state a claim under Fed. R. Civ. P. 12(b)(6). Circle K moved to dismiss Plaintiffs' common-law fraud and Florida statutory claims against it. In part, Circle K sought to enforce the Pennsylvania choice-of-law clauses in the Lease and Supply Agreement and apply them to Plaintiffs' non-contractual, tort-based claims.

5. In the January 13th Opinion and Order, I denied the Lehigh Defendants' Motion to Dismiss without prejudice, based on its decision to grant Plaintiffs' request for jurisdictional discovery, and reserved decision as to Circle K's Motion to Dismiss, directing Plaintiffs and Circle K to provide supplemental briefing addressing whether Pennsylvania or New Jersey law should govern Plaintiffs' claims pursuant to the Leases and Supply Agreements executed by the parties. With respect to Circle K, I found that the choice of law provision in the parties' Leases and Supply Agreements providing for Pennsylvania law was "limited solely to contract claims arising from the parties' contracts." (ECF No. 56, January 13th

---

[1] The Court granted TMC's Motion to Dismiss, and therefore, Plaintiffs' claims, in Counts III through V, against TMC were dismissed without prejudice based on choice of law principles. Consistent with the January 13th Opinion and Order, however, Plaintiffs were granted leave to file a Second Amended Complaint in order to replead these claims in accordance with Arizona law.

Opinion, at 21.) However, to determine which state's law governs the parties' tort-based claims, I noted that the Court "must weigh the factors enumerated in the Restatement to determine which jurisdiction has the most significant relationship to the claim." (*Id.*) Since the parties focused primarily on the application of either Pennsylvania or Florida law, I permitted the parties to submit supplemental letter briefs on "whether Pennsylvania or New Jersey law should apply based on the factors set forth in § 148(2) of the Restatement." (*Id.* at 24.)

6. On January 27, 2021 and February 2, 2021, Circle K and Plaintiffs filed supplemental briefing in accordance with the Court's directive. (ECF Nos. 60 and 61.)

7. Also on February 2, 2021, the Lehigh Defendants notified the Court that they were withdrawing the portion of their Motion to Dismiss based on lack of personal jurisdiction. (ECF No. 65.) The Lehigh Defendants further explained that although they consented to the Court's personal jurisdiction for purposes of this action only, they wished to pursue their remaining arguments contained in the Motion to Dismiss, namely that this matter should be dismissed under Rules 12(b)(1), (b)(3), and (b)(6).

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(6)

8. Courts undertake a three-part analysis when considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)) (alteration in original). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203,

210 (3d Cir. 2009) (quotation omitted). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[M]ere restatements of the elements of [a] claim[ ] ... are not entitled to the assumption of truth." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (alterations in original) (quotation omitted). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

9. "Rule 12 prohibits the court from considering matters outside the pleadings in ruling on a motion to dismiss for failure to state a claim ... and a court's consideration of matters outside the pleadings converts the motion to a motion for summary judgment." *Kimbugwe v. United States*, No. 12-7940, 2014 WL 6667959, at *3 (D.N.J. Nov. 24, 2014). "[A]n exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted) (internal quotation marks omitted). Notwithstanding these principles, courts may not consider allegations raised for the first time in a plaintiff's opposition to a motion to dismiss. *See Pennsylvania ex rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

B. Federal Rule of Civil Procedure 9(b)

10. Fraud based claims are subject to a heightened pleading standard, requiring a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). For a fraud-based claim, a court may grant a motion to dismiss pursuant to Federal Rule of Civil Procedure 9(b) if the plaintiff fails to plead with the required particularity. *See Frederico v. Home Depot*, 507 F.3d 188, 200-02 (3d Cir. 2007). The level of particularity required is sufficient details to put the defendant on notice of the "precise misconduct with which [it is] charged." *Id.* at 200 (citation omitted). At a minimum, Rule 9(b) requires a plaintiff to allege the "essential factual background that would accompany the first paragraph of any newspaper story—that is, the 'who, what, when, where and how' of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir. 2006) (citation omitted). The heightened pleading standard set forth in Rule 9(b) applies to Plaintiffs' statutory and common law fraud claims against Circle K in Counts I through V.

**III. DISCUSSION**

A. Circle K's Motion to Dismiss

11. The January 13th Opinion found that the choice of law provision in the parties' Leases and Supply Agreements providing for Pennsylvania law was "limited solely to contract claims arising from the parties' contracts." (*See* January 13th Opinion at 21.)

12. Finding that the choice of law provision did not apply to Plaintiffs' common law fraud claims asserted in Counts III, IV, and V, I explained that New Jersey courts use the "most significant relationship" test to determine which state's law applies. (*Id.*) (citing *P.V. v. Camp Jaycee*, 197 N.J. 132, 143 (2008). New Jersey's "most significant relationship" test

consists of two prongs. First, a court must examine the substance of the potentially applicable laws in order to determine if an actual conflict exists. *Camp Jaycee*, 197 N.J. at 143 (citing *Lebegern v. Forman*, 471 F.3d 424, 430 (3d Cir.2006)). If there is no actual conflict, the analysis ends, and the court applies the law of the forum state. *See In re Ford Motor Co.*, 110 F.3d 954, 965 (3d Cir.1997); *Rowe v. Hoffman–La Roche, Inc.*, 189 N.J. 615, 621 (2007). However, if a conflict is found, the court must weigh the factors enumerated in the Restatement to determine which jurisdiction has the most significant relationship to the claim.

13. Following an application of the factors set forth in section 148 of the Restatement (Second) of Conflict of Laws, the January 13th Opinion concluded that Florida law clearly did not apply because it lacked a substantial relationship to the claims, and the parties' briefing did not fully discuss whether New Jersey or Pennsylvania law should govern the tort-based claims against Circle K. (January 13th Opinion at 22-24.)

14. Based on the supplemental briefing provided by Plaintiffs and Circle K, the Court finds that New Jersey law governs Plaintiffs' claims for fraudulent misrepresentation (Count III), fraudulent concealment (Count IV), and negligent misrepresentation (Count V). Indeed, regardless of whether a conflict exists between New Jersey and Pennsylvania law, the parties agree that New Jersey has the most significant relationship to the claims. Plaintiffs are both citizens of New Jersey and UPS maintains its principal place of business in New Jersey. (FFAC, ¶¶ 1-2.) By contrast, Circle K is a Texas corporation with its principal place of business in Arizona. (*Id.* at ¶ 3.) The only connection that Circle K has to Pennsylvania is one meeting that took place in a Pennsylvania office on December 4, 2018. As explained by Plaintiffs, however, this one meeting, occurred at the conclusion of the

parties' negotiations -- after Plaintiffs had already received and relied on Circle K's purported fraudulent misrepresentations, which form the basis for these tort claims. (*Id.* at ¶¶ 33-34.) In fact, Plaintiffs allege that several of the misrepresentations underlying the fraud claims were made by Circle K representatives located in New Jersey, and that Plaintiffs relied on Circle K's misrepresentations by entering into several Supply Agreements and Leases on April 30, 2019 and July 10, 2019, in New Jersey. (See *id.* at ¶¶ 30, 41, 43.)

15. In addition, as discussed in the January 13th Opinion, because the FAC appears to have been pled under the mistaken belief that Florida law applied to Plaintiffs' claims in Counts III, IV, and V, those claims are dismissed without prejudice and Plaintiffs are granted leave to file a Second Amended Complaint that conforms to New Jersey's pleading requirements for claims of fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation.

B. The Lehigh Defendants' Motion to Dismiss

16. As stated above, in addition to certain jurisdictional arguments, the Lehigh Defendants moved to dismiss Plaintiffs' claims for improper venue and failure to state a claim under Fed. R. Civ. P. 12(b)(6). Specifically, the Lehigh Defendants argued that Plaintiffs' PMPA claims should be dismissed because venue is improper, Plaintiffs' claims for a permanent injunction and declaratory judgment should be dismissed because they are moot and duplicative, and Plaintiffs' claim for punitive damages should be dismissed as insufficiently pled. In addition, the Lehigh Defendants argued that Plaintiffs' claims against Circle K and TMC for fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation should be dismissed for failure to state a claim. Because the

8

Court granted Plaintiffs' request for jurisdictional discovery, however, these issues were not decided in the January 13th Opinion.

17. At the outset, Plaintiffs have consented to the dismissal of Counts VII and X, which seek a permanent injunction against the Lehigh Defendants pursuant to the PMPA and assert a claim for wrongful eviction against Lehigh Gas Inc. (*See* Plaintiffs' Opp. to Lehigh Def. Motion to Dismiss, 20-21.) When Plaintiffs filed their Amended Complaint against the Lehigh Defendants in April 2020, Plaintiffs sought to enjoin the Lehigh Defendants from terminating Plaintiffs' franchises. (FAC, ¶¶ 211-232.) Since then, however, Plaintiffs have voluntarily surrendered and vacated each of the franchise premises as part of the parties' settlement of Florida state court eviction actions. Specifically, in March 2020, Lehigh Gas Inc. sent default notices to UPS before commencing seventeen separate eviction actions in Florida state court. (FAC, ¶¶ 129-30; Declaration of Keenan D. Lynch, Esq. ("Lynch Decl.") in Support of the Lehigh Defendants' Motion to Dismiss, ¶¶ 12-13.) On May 7, 2020, after Plaintiffs filed their Amended Complaint, the parties entered into a written settlement of those eviction actions. (Lynch Decl., ¶ 12 and Ex. 4.) Pursuant to the Settlement Agreement, UPS has vacated each of the properties and the Florida evictions actions have been dismissed. (Lynch Decl., ¶ 13.) Accordingly, Counts VII and X are dismissed as moot.

18. Next, the Court is unpersuaded by the Lehigh Defendants' argument that Plaintiffs' claims for violation of the PMPA should be dismissed for improper venue under 15 U.S.C. § 2805(a). The Lehigh Defendants argue that the PMPA contains a specific venue provision that authorizes a franchisee, here UPS, to bring suit in either of two different venues: (1) the district in which the franchisor, here Lehigh Gas Wholesale Services, Inc., has its

principal place of business, or (2) the district in which the franchisee "is doing business." 15 U.S.C. § 2805(a). According to the Lehigh Defendants, because Lehigh Gas Wholesale, Inc. has its principal place of business in Pennsylvania and UPS is not "doing business" in New Jersey for purposes of the PMPA, Plaintiffs' claims under the PMPA cannot be brought in this District.

19. I disagree. The PMPA provides:

> the franchisee may maintain a civil action against such franchisor. Such action <u>may</u> be brought, without regard to the amount in controversy, in the district court of the United States in any judicial district in which the principal place of business of such franchisor is located or in which such franchisee is doing business, except that no such action may be maintained unless commenced within 1 year after the later of—
>
> > (1) the date of termination of the franchise or nonrenewal of the franchise relationship; or
> >
> > (2) the date the franchisor fails to comply with the requirements of section 2802, 2803, or 2807 of this title.

15 U.S.C. § 2805(a) (emphasis added).

20. While the PMPA's venue provision is hardly the model of clarity, I find that the express language of section 2805(a), which suggests the provision's permissive nature, cannot be ignored.[2] Specifically, the venue provision's usage of the word "may," rather than "must" or "shall" demonstrates to the Court, and has been found in other contexts, to convey flexibility, not rigidity. *See BP Auto Group, LLC v. Reynolds and Reynolds Company*, No. 18-12510, 2019 WL 3852701, *2 (D. N.J. Aug. 16, 2019) (finding the Federal Arbitration Act's venue provision to be permissive based on the use of word "may" in 9 U.S.C. § 9).

---

[2] Indeed, both parties note that no court has expressly held whether section 2805(a) is permissive or mandatory.

      In addition, regardless of whether section 2805(a) is permissive or mandatory, this provision provides that a franchisee may maintain a civil action against a franchisor in any judicial district in which the "franchisee is doing business." Notably, the provision does not restrict a franchisee from only suing a franchisor in a district where one of its franchises is located and doing business. And, in this case, UPS alleges that it is a New Jersey corporation, with a principal place of business in Allentown, New Jersey. Accordingly, the Lehigh Defendants' Motion to Dismiss is denied with respect to Plaintiffs' claim in Count VIII for violation of the PMPA.

21. Next, the Lehigh Defendants argue that Count IX, which asserts a claim for declaratory judgment against the Lehigh Defendants, is duplicative of Plaintiffs' PMPA claim in Count VIII and breach of contract claims in Counts XI and XII. Here, I agree.

22. In Count IX, Plaintiffs seek declaratory judgment stating that "the Supply Agreements and Leases were not properly terminated" and that "UPS did not breach the Supply Agreements and/or Leases[.]" (*Id.* at ¶¶ 242-43.) Plaintiffs' breach of contract claims, on the other hand, allege that Lehigh Gas LLC breached paragraph 3 of the Supply Agreement by refusing to sell fuel to UPS starting on January 27, 2020, and that the Lehigh Defendants breached the Supply Agreement and Leases by improperly withholding credit card proceeds resulting from the sale of items other than fuel. (*Id.* at ¶¶ 253-60.) To state a claim for breach of contract, however, a plaintiff must plausibly allege, in part, the existence of a valid contract and that "plaintiffs did what the contract required them to do[.]" *Levari Enterprises, LLC v. Kenworth Truck Co.*, No. 12-06210, 2021 WL 672657, at *5 (D.N.J. Feb. 22, 2021) (citing *Globe Motor Co. v. Igdalev*, 225 N.J. 469, 481 (2016)). In that regard, dismissal of the declaratory judgment claim will not prejudice Plaintiffs

because adjudication of the breach of contract claim will still resolve the same issue and necessarily decide the question raised in the declaratory judgment claim. *Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 379 (D.N.J. 2015) (dismissing declaratory judgment claim as redundant of plaintiffs' other claims for breach of express warranty and violation of the Consumer Fraud Act); *Maniscalco v. Brother Intern. Corp. (USA)*, 627 F. Supp. 2d 494, 504 (D.N.J. 2009) (dismissing declaratory judgment claim where the declaration plaintiffs sought would be duplicative of a favorable finding on their consumer fraud act claims); *Hammond v. Doan*, 127 N.J. Super. 67, 70-71 (App. Div. 1974) ("While ... a declaratory judgment action is not precluded by the existence of an alternative form of relief, there is ordinarily no reason to involve its provisions where another adequate remedy is available."). Accordingly, the Court grants the Lehigh Defendants' Motion to Dismiss the declaratory judgment claim in Count IX of the FAC.

23. Finally, the Lehigh Defendants seek dismissal of Plaintiffs' punitive damages claims. (Lehigh Def. Moving Br., at 25-26.) Plaintiffs, however, failed to oppose or otherwise address these arguments, and therefore, the Lehigh Defendants' Motion to Dismiss is granted as to Plaintiffs' punitive damages claims. *Trustees of I.A.M. Dist. No. 15 Health Fund v. Operant Material Solutions of New York New Jersey LLC*, No. 07–4262, 2008 WL 4601792, at *2 n.1 (D.N.J. Oct. 15, 2008) (granting motion to dismiss after finding that, by "declin[ing] to address" points made in defendant's brief, the plaintiff "conced[ed] defeat."); *In re Insulin Pricing Litig.*, No. 317-699, 2020 WL 831552, at *5 (D.N.J. Feb. 20, 2020) (same).

**IT IS** on this 30th day of April, 2021,

**ORDERED** that New Jersey law governs Plaintiffs' tort-based claims asserted against Circle K for fraudulent misrepresentation (Count III), fraudulent concealment (Count IV), and negligent misrepresentation (Count V); and it is further

**ORDERED** that the above-referenced claims are dismissed without prejudice with the right to replead under New Jersey law as set forth below; and it is further

**ORDERED** that the Lehigh Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part. Specifically, Plaintiffs' claim for a permanent injunction against the Lehigh Defendants (Count VII) and wrongful eviction against Lehigh Gas Inc. (Count X) are dismissed as moot, Plaintiffs' claim for declaratory judgment against the Lehigh Defendants (Count IX) is dismissed as duplicative of Plaintiffs' breach of contract claims (Counts XI and XII) and PMPA claim (Count VIII), Plaintiffs' claims against the Lehigh Defendants for punitive damages are dismissed; and the Lehigh Defendants' motion to dismiss the PMPA claim (Count VIII) for improper venue is denied; and it is further

**ORDERED** that Plaintiffs are granted leave to file a Second Amended Complaint against Circle K, TMC, and the Lehigh Defendants within twenty-one (21) days from the date of this Order consistent with this Order and the Court's January 13th Opinion and Order.

/s/ Freda L. Wolfson  
Hon. Freda L. Wolfson  
U.S. Chief District Judge