Jennine DiSomma, Esq. (jdisomma@saiber.com)
Jakob B. Halpern, Esq. (jhalpern@saiber.com)
Catherine Soliman, Esq. (csoliman@saiber.com)
**SAIBER LLC**
18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932
T: (973) 622-3333
F: (973) 622-3349

Otto Konrad, Esq. (okonrad@williamsmullen.com)
Brendan O'Toole, Esq. (botoole@williamsmullen.com)
Meredith M. Haynes, Esq. (mhaynes@williamsmullen.com)
**WILLIAMS MULLEN**
200 S. 10th Street, Suite 1600
Richmond, Virginia 23219
T: (804) 420-6093
F: (804) 420-6507

*Attorneys for Defendants and Counterclaimants*
*Lehigh Gas Wholesale Services, Inc.,*
*Lehigh Gas Wholesale LLC, and*
*LGP Realty Holdings LP*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNIVERSAL PROPERTY SERVICES INC., and SYED KAZMI, <br><br> Plaintiffs, <br><br> v. <br><br> LEHIGH GAS WHOLESALE SERVICES, INC., LEHIGH GAS WHOLESALE LLC, LGP REALTY HOLDINGS LP, CIRCLE K STORES INC. and TMC FRANCHISE CORP., <br><br> Defendants. | Civil Action No. 3:20-3315 (FLW) (TJB) <br><br><br> **DEFENDANTS LEHIGH GAS WHOLESALE SERVICES, INC., LEHIGH GAS WHOLESALE LLC, AND LGP REALTY HOLDINGS LP'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT, SEPARATE DEFENSES AND COUNTERCLAIMS** <br><br> *Document Filed Electronically* |

Defendants Lehigh Gas Wholesale Services, Inc., Lehigh Gas Wholesale LLC, and LGP Realty Holdings LP (the "Lehigh Defendants"), answer Plaintiffs' Second Amended Complaint [ECF No. 70] as follows:

<u>**Allegations Against the Parties**</u>

1.      The Lehigh Defendants are without sufficient information to confirm or deny the allegations in Paragraph 1, and therefore deny the same.

2.      The Lehigh Defendants are without sufficient information to confirm or deny the allegations in Paragraph 2, and therefore deny the same.

3.      The Lehigh Defendants are without sufficient information to confirm or deny the allegations in Paragraph 3, and therefore deny the same.

4.      The Lehigh Defendants are without sufficient information to confirm or deny the allegations in Paragraph 4, and therefore deny the same.

5.      Admitted.

6.      Admitted.

7.      Admitted.

8.      Denied.

9.      The Lehigh Defendants are without sufficient information to confirm or deny the allegations in Paragraph 9, and therefore deny the same.

10.      The Lehigh Defendants are without sufficient information to confirm or deny the allegations in Paragraph 10, and therefore deny the same.

11.      Denied.

12.      Denied.

**Alleged Jurisdiction and Venue**

13.     The allegations in paragraph 13 state a legal conclusion to which no response is required, but if such a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

14.     The allegations in paragraph 14 state a legal conclusion to which no response is required, but if such a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

15.     The allegations in paragraph 15 state a legal conclusion to which no response is required, but if such a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

16.     The allegations in paragraph 16 state a legal conclusion to which no response is required, but if such a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

17.     The allegations in paragraph 17 state a legal conclusion to which no response is required, but if such a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

**The Alleged Nature of the Action**

18.     Denied.

19.     The allegations in paragraph 19 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

20.     Denied.

21.     Denied.

3

22.     Denied.

23.     Denied.

24.     The allegations in paragraph 24 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

25.     Regarding paragraph 25, the Lehigh Defendants admit only that UPS is no longer in possession of the Premises.  The Lehigh Defendants are without sufficient information to confirm or deny the ownership and operation of the Premises.  The Lehigh Defendants deny the remaining allegations in paragraph 25 and specifically deny that Plaintiffs' claims have merit or that Plaintiffs are entitled to the relief sought in the Second Amended Complaint or to any relief whatsoever.

## ALLEGED FACTUAL BACKGROUND

26.     The allegations in paragraph 26 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

27.     The Lehigh Defendants are without sufficient information to confirm or deny the allegations in Paragraph 27, and therefore deny the same.

**I.      Circle K and TMC's Alleged Misrepresentations and Omissions**

28.     The Lehigh Defendants are without sufficient information to confirm or deny the allegations in Paragraph 28, and therefore deny the same.

29.     The allegations in paragraph 29 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

30.     The allegations in paragraph 30 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

31.     The allegations in paragraph 31 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

32.     The allegations in paragraph 32 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

33.     The allegations in paragraph 33 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

34.     The allegations in paragraph 34 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

35.     The allegations in paragraph 35 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

36.     The allegations in paragraph 36 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

37.     The allegations in paragraph 37 and subparts (a)-(q) are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

38.     The allegations in paragraph 38 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

39.     The allegations in paragraph 39 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

40.     The allegations in paragraph 40 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

41.     The allegations in paragraph 41 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

42.     The allegations in paragraph 42 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

43.     The allegations in paragraph 43 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

44.     The allegations in paragraph 44 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

45.     The allegations in paragraph 45 merely define terms and do not require a response. To the extent a response is required, the allegations are denied.

## II.     UPS Allegedly Enters Into 17 Security Agreements, Supply Agreements, and Leases with Circle K

46.     The allegations in paragraph 46 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

47.     The allegations in paragraph 47 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

48.     The allegations in paragraph 48 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

49.     The allegations in paragraph 49 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

### UPS Allegedly Enters into the Franchise Agreements

50.     The allegations in paragraph 50 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

51.     Regarding the allegations in paragraph 51, the Lehigh Defendants admit that UPS executed franchise agreements with TMC to operate Circle K or Kangaroo Express convenience stores for the locations identified in paragraph 51. The contents of the franchise agreements speak for themselves, and the Lehigh Defendants deny any allegations inconsistent with their terms. The remaining allegations in paragraph 51 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

52.     Regarding the allegations in paragraph 52, the Lehigh Defendants admit that UPS executed franchise agreements with TMC to operate Circle K or Kangaroo Express convenience stores for the locations identified in paragraph 52. The contents of the franchise agreements speak for themselves, and the Lehigh Defendants deny any allegations inconsistent with their terms. The remaining allegations in paragraph 52 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

53.     Regarding the allegations in paragraph 53, the Lehigh Defendants admit that UPS executed Franchise Agreements for the operation of the 17 Circle K or Kangaroo Express convenience stores identified in paragraphs 51 and 52. The contents of the Franchise Agreements speak for themselves, and the Lehigh Defendants deny any allegations inconsistent with their terms. The remaining allegations in paragraph 53 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

54.     Regarding the allegations in paragraph 54, the Lehigh Defendants admit that Syed Kazmi executed a Personal Guaranty, the contents of which speak for themselves. The Lehigh

Defendants deny any allegations inconsistent with the Personal Guaranty's terms. The remaining allegations in paragraph 54 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

55.    The allegations in paragraph 55 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

**III.    <u>Allegations Concerning the FTC Rule</u>**

56.    The allegations in paragraph 56 state a legal conclusion to which no response is required, but if such a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

57.    The allegations in paragraph 57 state a legal conclusion to which no response is required, but if such a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

58.    The allegations in paragraph 58 state a legal conclusion to which no response is required, but if such a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

59.    The allegations in paragraph 59 state a legal conclusion to which no response is required, but if such a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

60.    Regarding paragraph 60, the Franchise Agreements speak for themselves and the Lehigh Defendants deny any allegations inconsistent with their terms. The remaining allegations in paragraph 60 are not directed to the Lehigh Defendants, and therefore no response is required

from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

61.     The allegations in paragraph 61 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

62.     The allegations in paragraph 62 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

63.     The allegations in paragraph 63 state legal conclusions to which no response is required, but if such a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

64.     The allegations in paragraph 64 state legal conclusions to which no response is required, but if such a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

65.     The allegations in paragraph 65 and subparts (a) through (f) state legal conclusions to which no response is required, but if such a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

66.     The allegations in paragraph 66 state legal conclusions to which no response is required, but if such a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

67.     The allegations in paragraph 67 state a legal conclusion to which no response is required, but if such a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

68.     The allegations in paragraph 68 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

**IV.     Allegations Concerning the Letters of Credit and Inventory Agreement**

69.     The allegations in paragraph 69 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

70.     The allegations in paragraph 70 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

71.     The allegations in paragraph 71 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

72.     The allegations in paragraph 72 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

73.     The allegations in paragraph 73 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

74.     The allegations in paragraph 74 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

75.     The allegations in paragraph 75 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

76.     The allegations in paragraph 76 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

77.     The allegations in paragraph 77 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

**V.      Allegations concerning UPS' Operations; Circle K's and TMC's Additional Alleged Misrepresentations**

78.     The allegations in paragraph 78 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

79.     The allegations in paragraph 79 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

80.     The allegations in paragraph 80 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

**VI.     Circle K Allegedly Assigns the Supply Agreements, Leases, and Security Agreements**

81.     Admitted.

VII.   **The Lehigh Parties' Alleged Breaches and Wrongful Acts**

    a.   **The Lehigh Parties Allegedly Improperly Withhold UPS' Credit Card Proceeds**

82.   Denied.

83.   The Supply Agreements referenced in paragraph 83 speak for themselves and to the extent the allegations in paragraph 83 are inconsistent with the terms of the Supply Agreements, the Lehigh Defendants deny them.

84.   The Lehigh Defendants admit Lehigh Supplier delivered motor fuel to UPS. The remaining allegations in paragraph 84 are denied.

85.   Denied.

86.   Denied.

87.   Denied.

88.   Denied.

89.   Denied.

90.   Denied.

91.   Denied.

92.   Denied.

93.   Denied.

94.   Denied.

95.   Denied.

96.   Denied.

97.   Denied.

98.   Denied.

b.    **Allegations Concerning the Lehigh Parties' February 6, 2020 Notice**

99.    Admit.

100.    Regarding paragraph 100, the February 6, 2020 Notice of Termination speaks for itself and the Lehigh Defendants deny any allegations inconsistent with its contents. The remaining allegations in paragraph 100 are denied.

101.    The allegations in paragraph 101 state a legal conclusion to which no response is required, but if such a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.  Further, the February 6, 2020 Notice referenced in paragraph 101 speaks for itself and to the extent the allegations in paragraph 101 are inconsistent with the terms of the February 6, 2020 Notice, the Lehigh Defendants deny them.

102.    The February 6, 2020 Notice referenced in paragraph 102 speaks for itself and to the extent the allegations in paragraph 102 are inconsistent with the terms of the February 6, 2020 Notice, the Lehigh Defendants deny them.  The Lehigh Defendants specifically deny the allegation in the second sentence of paragraph 102.

103.    The February 6, 2020 Notice referenced in paragraph 103 speaks for itself and to the extent the allegations in paragraph 103 are inconsistent with the terms of the February 6, 2020 Notice, the Lehigh Defendants deny them.

i.    **The Lehigh Parties' allegations of unpaid rent.**

104.    Denied.

105.    Denied.

106.    Denied.

107.    Denied.

108.    Denied.

109.    Denied.

### ii.    The Allegedly Unpaid Fuel Drafts.

110.    Denied.

111.    Denied.

112.    The Supply Agreements referenced in paragraph 112 speak for themselves and to the extent the allegations in paragraph 112 are inconsistent with the terms of the Supply Agreements, the Lehigh Defendants deny them.

113.    Admitted.

114.    The February 6, 2020 Notice referenced in paragraph 114 speaks for itself and to the extent the allegations in paragraph 114 are inconsistent with the terms of the February 6, 2020 Notice, the Lehigh Defendants deny them.

115.    Denied.

116.    Denied.

117.    Denied.

118.    Denied.

### iii.    The February 6, 2020 Notice's Allegations Regarding UPS' Letter of Credit.

119.    The Supply Agreement referenced in paragraph 119 speaks for itself and to the extent the allegations in paragraph 119 are inconsistent with the terms of the Supply Agreement, the Lehigh Defendants deny them.

120.    Regarding paragraph 120, the Lehigh Defendants admit UPS initially entered into the Supply Agreement with Circle K and that UPS provided two letters of credit concerning same. The Lehigh Defendants are without sufficient information to confirm or deny the remaining allegations in Paragraph 120, and therefore deny the same.

15

121.    Admitted.

122.    Denied.

123.    Denied.

124.    Denied.

125.    Denied.

126.    Admitted.

127.    The February 26, 2020 letter referenced in paragraph 127 speaks for itself and to the extent the allegations in paragraph 127 are inconsistent with the February 26, 2020 letter, the Lehigh Defendants deny them.

### c.    Allegations concerning the Three-Day Notices

128.    Regarding paragraph 128, the Lehigh Defendants admit Lehigh Landlord sent 17 notices of default under the Leases to UPS on March 5, 2020, the terms of which speaks for themselves. Lehigh Defendants deny any allegations inconsistent with the March 5, 2020 correspondences. Lehigh Defendants deny the remaining allegations in paragraph 128.

129.    Denied.

### d.    Lehigh Supplier's Alleged Breach of the Supply Agreements

130.    The Supply Agreement referenced in paragraph 130 speaks for itself and to the extent the allegations in paragraph 130 are inconsistent with the Supply Agreement, the Lehigh Defendants deny them.

131.    Admitted.

132.    Admitted.

## VIII.   UPS' Alleged Damages

133.    Denied.

134.    The Lehigh Defendants are without sufficient information to confirm or deny the allegations in Paragraph 134, and therefore deny the same.

135.    The Lehigh Defendants are without sufficient information to confirm or deny the allegations in Paragraph 135, and therefore deny the same.

136.    Denied.

137.    Denied.

138.    Denied.

139.    Denied.

140.    The Lehigh Defendants are without sufficient information to confirm or deny the allegations in Paragraph 135, and therefore deny the same.  The Lehigh Defendants further deny that Plaintiffs' claims have any merit, and deny that Plaintiffs are entitled to the relief sought in the Second Amended Complaint or to any relief whatsoever.

141.    Denied.

142.    Denied.

143.    Denied.

144.    Denied.

## IX.    **Allegations concerning TMC's Purported Termination of the Franchise Agreements**

145.    The allegations in paragraph 145 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

146.    The allegations in paragraph 146 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

147.    The allegations in paragraph 147 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

148.    The allegations in paragraph 148 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

149.    The allegations in paragraph 149 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

150.    The allegations in paragraph 150 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

151.    The allegations in paragraph 151 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

152.    The allegations in paragraph 152 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

153.    The allegations in paragraph 153 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

154.    The allegations in paragraph 154 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

155.    The allegations in paragraph 155 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

156.    The allegations in paragraph 156 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

157.    Denied.

158.    The allegations in paragraph 158 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

159.    The allegations in paragraph 159 state a legal conclusion to which no response is required, but if such a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

**CAUSES OF ACTION**

**COUNT I**
**Against Circle K and TMC**
**(ALLEGED FRAUDULENT MISREPRESENTATION)**

160.    The Lehigh Defendants restate and incorporate by reference their responses to the allegations contained in Paragraphs 1 through 159 of the Answer as if fully set forth herein.

161.   The allegations in paragraph 161 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

162.   The allegations in paragraph 162 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

163.   The allegations in paragraph 163 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

164.   The allegations in paragraph 164 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

165.   The allegations in paragraph 165 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

166.   Denied.

**COUNT II**
**Against Circle K and TMC**
**(ALLEGED FRAUDULENT CONCEALMENT)**

167.   The Lehigh Defendants restate and incorporate by reference their responses to the allegations contained in Paragraphs 1 through 166 of the Answer as if fully set forth herein.

168.   The allegations in paragraph 168 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

169.    The allegations in paragraph 169 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

170.    The allegations in paragraph 170 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

171.    The allegations in paragraph 171 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

172.    The allegations in paragraph 172 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

173.    The allegations in paragraph 173 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

174.    The allegations in paragraph 174 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

175.    Denied.

## COUNT III
### Against Circle K and TMC
### (ALLEGED NEGLIGENT MISREPRESENTATION)

176.    The Lehigh Defendants restate and incorporate by reference their responses to the allegations contained in Paragraphs 1 through 175 of the Answer as if fully set forth herein.

177.    The allegations in paragraph 177 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

178.    The allegations in paragraph 178 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

179.    The allegations in paragraph 179 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

180.    The allegations in paragraph 180 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

181.    Denied.

**COUNT IV**
**Against Circle K**
**(ALLEGED BREACH OF THE INVENTORY AGREEMENT)**

182.    The Lehigh Defendants restate and incorporate by reference their responses to the allegations contained in Paragraphs 1 through 181 of the Answer as if fully set forth herein.

183.    The allegations in paragraph 183 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

184.    The allegations in paragraph 184 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

185.   The allegations in paragraph 185 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

186.   The allegations in paragraph 186 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

187.   The allegations in paragraph 187 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

188.   The allegations in paragraph 188 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

189.   Denied.

**COUNT V**
**Against the Lehigh Parties**
**(ALLEGED VIOLATION OF THE PMPA)**

190.   The Lehigh Defendants restate and incorporate by reference their responses to the allegations contained in Paragraphs 1 through 189 of the Answer as if fully set forth herein.

191.   The documents referenced in paragraph 191 speaks for themselves and to the extent the allegations in paragraph 191 are inconsistent with those documents, the Lehigh Defendants deny them. The remaining allegations in paragraph 191 state legal conclusions to which no response is required, but if such a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

192.    The allegations in paragraph 192 state a legal conclusion to which no response is required, but if such a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

193.    The allegations in paragraph 193 state a legal conclusion to which no response is required, but if such a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

194.    Denied.

195.    The allegations in paragraph 195 state legal conclusions to which no response is required, but if such a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

196.    The allegations in paragraph 196 state legal conclusions to which no response is required, but if such a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

197.    Denied.

198.    Denied.

199.    The allegations in paragraph 199 state a legal conclusion to which no response is required, but if such a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

200.    The allegations in paragraph 200 state legal conclusions to which no response is required, but if such a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

201.    Denied.

202.    Denied.

203.    Denied.

204.    Denied.

205.    Denied.

206.    Denied.

207.    Denied.

## COUNT VI
### Against Lehigh Supplier
### (ALLEGED BREACH OF THE SUPPLY AGREEMENT)

208.    The Lehigh Defendants restate and incorporate by reference their responses to the allegations contained in Paragraphs 1 through 207 of the Answer as if fully set forth herein.

209.    The Supply Agreement referenced in paragraph 209 speaks for itself and to the extent the allegations in paragraph 209 are inconsistent with those documents, the Lehigh Defendants deny them.

210.    Denied.

211.    Denied.

## COUNT VII
### Against the Lehigh Parties
### (ALLEGED BREACH OF THE SUPPLY AGREEMENT AND LEASES)

212.    The Lehigh Defendants restate and incorporate by reference their responses to the allegations contained in Paragraphs 1 through 211 of the Answer as if fully set forth herein.

213.    The Supply Agreement referenced in paragraph 213 speaks for itself and to the extent the allegations in paragraph 213 are inconsistent with those documents, the Lehigh Defendants deny them.

214.    Denied.

215.    Denied.

216.   Denied.

217.   Denied.

**COUNT VIII**
**Against TMC**
**(ALLEGED VIOLATION OF ARIZONA'S CONSUMER FRAUD ACT, A.R.S. § 44-1521**
***et seq.*)**

218.   The Lehigh Defendants restate and incorporate by reference their responses to the allegations contained in Paragraphs 1 through 217 of the Answer as if fully set forth herein.

219.   The allegations in paragraph 219 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

220.   The allegations in paragraph 220 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

221.   The allegations in paragraph 221 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

222.   The allegations in paragraph 222 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

223.   The allegations in paragraph 223 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

224.    The allegations in paragraph 224 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

225.    The allegations in paragraph 225 are not directed to the Lehigh Defendants, and therefore no response is required from the Lehigh Defendants.  To the extent a response is required, the Lehigh Defendants deny the allegations and demand strict proof thereof.

226.    All allegations in the Second Amended Complaint not specifically admitted are denied.

227.    The Lehigh Defendants deny the allegations in the WHEREFORE clause, including subparagraphs (1)-(12), and deny that Plaintiffs are entitled to any of the relief requested, or any other relief.

## SEPARATE DEFENSES

1.    Plaintiffs' claims are barred to the extent they failed to mitigate their damages.

2.    Plaintiffs' claims are barred by the doctrine of unclean hands.

3.    The Lehigh Defendants did not proximately cause Plaintiffs' alleged damages, if any.

4.    Plaintiffs' damages, if any, were proximately caused by the actions of third parties.

5.    Plaintiffs' claims are barred by their own material breaches of contract.

6.    Plaintiffs are estopped from asserting their claims by written agreements with Defendants which contradict Plaintiffs' claims.

7.    The Lehigh Defendants reserve the right to add any additional defenses as investigation in this matter continues.

## COUNTERCLAIMS

Counterclaimants Lehigh Gas Wholesale LLC (the "Lehigh Supplier"), Lehigh Gas Wholesale Services, Inc. (the "Florida Lehigh Landlord") and LGP Realty Holdings LP (the "New Jersey Lehigh Landlord" and collectively with the Florida Lehigh Landlord, the "Lehigh Landlord"; the Lehigh Landlord and the Lehigh Supplier collectively, "Lehigh" or "Counterclaimants"), by their counsel, allege as follows for their Counterclaims against Universal Property Services, Inc. ("UPS") and Syed Kazmi ("Kazmi"; UPS and Kazmi collectively, "Counterclaim Defendants"):

1.      UPS is a New Jersey corporation, with a principal place of business located at 6 Lenn Road, Allentown, New Jersey 08501.  UPS formerly operated retail service stations at eighteen (18) premises located in Florida and New Jersey (the "Premises").  Each of the Premises is listed in **Exhibit A**.

2.      Kazmi is an individual and resident of the state of New Jersey, whose residence is 6 Lenn Road, Allentown, New Jersey 08501.  Kazmi is President of UPS.

3.      Lehigh Landlord is comprised of a Delaware corporation and a Delaware limited partnership, both with a principal place of business at 600 Hamilton Street, Allentown, Pennsylvania 18101.  Lehigh Landlord purchases and leases commercial real estate like the Premises.

4.      Lehigh Supplier is a Delaware limited liability company. Its principal place of business is 600 Hamilton Street, Allentown, Pennsylvania, 18101.  Lehigh Supplier provides motor vehicle fuel to automobile service stations under motor fuel supply agreements.

5.      This Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367, as all of the claims are based upon the same facts and contracts, are interrelated, and form

part of the same case and controversy as set forth in Counterclaim Defendants' Second Amended Complaint.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. §1391(c)(2), because Counterclaim Defendants reside in this district.

7.      In the winter of 2018 and the spring of 2019, UPS entered into various Contracts of Sale (the "Supply Agreements") and Station Leases (the "Leases") (Supply Agreements and Leases collectively, the "Franchise Agreements") with Circle K Stores, Inc. ("Circle K").

8.      As UPS's President, pursuant to Personal Guaranties of Performance included in the Franchise Agreements (the "Guaranties"), Kazmi personally guaranteed the obligations of UPS under the Franchise Agreements.

9.      Pursuant to the Franchise Agreements, UPS took possession of the Premises and agreed to operate and use the Premises in connection with the sale or distribution of motor fuel and as convenience store businesses.  UPS also agreed in executing the Franchise Agreements to fulfill various obligations, including, but not limited to, the payment of monthly rent installments, taxes, network fees and environmental inspection fees (the "Monthly Lease Fees"), and to purchase minimum monthly amounts of petroleum products.

10.     The Franchise Agreements also contained consequences and accelerations of fees and payments in the event of UPS's default.

11.     On September 5, 2019, Circle K assigned its interests in the Franchise Agreements to Lehigh (the "Assignment"). Therefore, the Franchise Agreements were by and between UPS and, as applicable, Lehigh Supplier and Lehigh Landlord, pursuant to the Assignment.

12.     Lehigh Supplier provided motor vehicle fuel to the Premises, and Lehigh Landlord was the lessor of the Premises pursuant to the Supply Agreements and Leases.

13.     Specifically, Lehigh leased the Premises to UPS for nonresidential purposes for three-year terms (save for one of the Premises), commencing in either December of 2018 or July or August of 2019, subject to Lehigh's option to terminate the Leases, as provided in Paragraph 17 of the Leases.

14.     After the Assignment, UPS repeatedly breached the Leases by failing to pay the Monthly Lease Fees, among other breaches.

15.     Thus, on February 6, 2020, Lehigh served UPS with written notice of Lehigh's election to terminate 17 of the Franchise Agreements, effective at 12:01 a.m. EST on February 27, 2020 (the "Initial Notice of Termination").

16.     On June 17, 2020, Lehigh served UPS with written notice of Lehigh's election to terminate one additional Franchise Agreement, effective immediately (the "Additional Notice of Termination" and together with the Initial Notice of Termination, the "Notice of Termination"). Copies of the Notice of Termination, served on UPS, in strict compliance with Paragraphs 10 and 17 of the Leases, are attached as **Exhibit B**.[1]

17.     As specified in the Initial Notice of Termination, as of February 6, 2020, UPS had failed to pay more than $720,000 in Monthly Lease Fees to Lehigh.  As specified in the Additional Notice of Termination, as of June 17, 2020 UPS had failed to pay more than $26,800 in Monthly Lease Fees to Lehigh.

18.     UPS breached the Leases by failing to pay the Monthly Lease Fees, with interest, since such amounts first became due under the Leases, and future Monthly Lease Fees which continue to accrue under the Leases through the end of the Lease terms.

---

[1] The Supply Agreement and Lease Agreement that were attached to the June 17, 2020 termination notice are omitted from Exhibit B.

19.      UPS also has breached the Supply Agreements by failing to provide acceptable letters of credit as required under Section 7 of the Supply Agreements.  In the winter of 2019-20, Lehigh made demand on an unacceptable letter of credit provided by UPS.  In 2020, the issuing bank refused a lawful draft Lehigh made on such letter of credit.

20.      As outlined in the Initial Notice of Termination, as of February 1, 2020, UPS had failed to pay amounts due under the Supply Agreements totaling in excess of $54,400.00.

21.      The Supply Agreements (Paragraph 24(b)(xiv)) and Leases (Paragraph 17(a)(iii)) contain cross-default provisions.  Thus, UPS's defaults under the Leases results in UPS's default of the Supply Agreements and UPS' defaults under the Supply Agreements results in UPS's default under the Leases.

22.      By reason of the Franchise Agreement provisions referenced in the above paragraphs, and the Notice of Termination served on UPS, the Franchise Agreements terminated as of February 27, 2020 and June 17, 2020, respectively.  Lehigh was entitled to possession of the Premises as of that date and was free of any further obligations under the Franchise Agreements.

23.      On or about June 1, 2020, UPS delivered possession of 17 of the Premises to the Lehigh Landlord pursuant to the provisions of a Settlement Agreement of Eviction Actions Only.

24.      Lehigh has incurred additional damages in connection with repairing damage to the Premises caused by UPS and in connection with reletting certain of the Premises.

25.      Lehigh is entitled to its costs and attorneys' fees pursuant to Paragraph 38 of the Supply Agreements and Paragraph 17(d) of the Leases.

## COUNT I – BREACH OF LEASES

26.      Lehigh adopts and realleges the allegations in Paragraphs 1-25 as if set forth herein.

27.     As set forth above, the Leases obligated UPS to pay Monthly Lease Fees and imposed accelerations of payments due under the Leases on default.

28.     UPS has breached the Leases by failing to pay the Monthly Lease Fees that remain due and owing and committed other breaches identified in the Notice of Termination.

29.     As provided in the Leases, UPS is obligated to pay additional amounts that were to come due during the term of the Leases.  With the termination of the Leases, those amounts accelerated and became due and payable in full.

30.     As a result of the breaches of the Leases by UPS, Lehigh has suffered damages, exclusive of fees and interest, including but not limited to what is now due and owing, together with future rent and damages, which continue to accrue under the Leases through the balance of their terms.

WHEREFORE, Lehigh demands judgment against UPS for damages to be proven at trial, together with interest, taxable costs, and attorneys' fees, and such other relief as this Court deems just and proper.

## COUNT 2 – BREACH OF SUPPLY AGREEMENTS

31.     Lehigh adopts and realleges the allegations in Paragraphs 1-30 as if set forth herein.

32.     During the term of the Supply Agreements, UPS is obligated to purchase minimum monthly amounts of petroleum products as specified in the Supply Agreements.

33.     UPS breached its obligations under the Supply Agreements.

34.     As a result of the breaches of the Supply Agreements by UPS, Lehigh has suffered damages, exclusive of fees and interest, including but not limited to what is now due and owing, together with additional damages that will accrue through the balance of the Supply Agreements' terms.

WHEREFORE, Lehigh demands judgment against UPS for damages in the amount to be proven at trial, together with interest, taxable costs, and attorneys' fees, and such other relief as this Court deems just and proper.

## COUNT 3 – BREACH OF GUARANTIES

35.     Lehigh adopts and realleges the allegations in Paragraphs 1-34 as if set forth herein.

36.     In June 2019, in conjunction with UPS entering into the Franchise Agreements, and in exchange for good and valuable consideration, Kazmi executed and delivered the Guaranties to Circle K, which Guaranties were later assigned to Lehigh.

37.     Pursuant to the Guaranties, Kazmi fully, unconditionally and irrevocably guaranteed UPS's full and prompt payments when due, and promised that he would pay or perform any payment or obligation not fulfilled by UPS, whether by acceleration or otherwise, as if they constituted his direct and primary obligation.

38.     As set forth herein, UPS defaulted in its obligations to Lehigh under the Franchise Agreements.

39.     Kazmi is personally liable for UPS's defaults under the Franchise Agreements.

40.     Kazmi has defaulted under the Guaranties by failing and refusing to honor those Guaranties.

41.     By reason of the foregoing, and pursuant to the terms of the Franchise Agreements and Guaranties contained in the Franchise Agreements, Kazmi is personally liable to Lehigh, assignee of Circle K, for the damages Lehigh has sustained and is continuing to sustain as a result of UPS's multiple breaches of the Franchise Agreements.

42.     As a result, Kazmi is liable to Lehigh, as assignee of Circle K, for damages as further set forth in Counts I and II of the Counterclaims.

WHEREFORE, Lehigh demands judgment against Kazmi for damages in the amount to be proven at trial, together with interest, taxable costs, and attorneys' fees, and such other relief as this Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Defendants and Counterclaimants Lehigh Gas Wholesale Services, Inc., Lehigh Gas Wholesale LLC, and LGP Realty Holdings LP respectfully request that the Court grant the following relief:

A.      That the Court enter judgment dismissing the Second Amended Complaint;

B.      That the Court enter judgment in Counterclaimants' favor and against Counterclaim Defendants on each of the counterclaims;

C.      That the Court award Counterclaimants pre- and post-judgment interest;

D.      That the Court award Defendants and Counterclaimants their costs and reasonable attorneys' fees expended in this action; and

E.      That the Court award such other and further relief as it deems just.

Respectfully submitted,

**SAIBER LLC**
*Attorneys for Defendants and Counterclaimants*
*Lehigh Gas Wholesale Services, Inc.,*
*Lehigh Gas Wholesale LLC, and*
*LGP Realty Holdings LP*

Dated:  July 19, 2021                    By:    Jakob B. Halpern
                                          Jennine DiSomma, Esq. (jdisomma@saiber.com)
                                          Jakob B. Halpern, Esq. (jhalpern@saiber.com)
                                          Catherine Soliman, Esq. (csoliman@saiber.com)
                                          18 Columbia Turnpike, Suite 200
                                          Florham Park, New Jersey 07932
                                          T: (973) 622-3333
                                          F: (973) 622-3349

Otto Konrad, Esq. (okonrad@williamsmullen.com)
Brendan O'Toole, Esq.
(botoole@williamsmullen.com)
Meredith M. Haynes, Esq.
(mhaynes@williamsmullen.com)
**WILLIAMS MULLEN**
200 S. 10th Street, Suite 1600
Richmond, Virginia 23219
T: (804) 420-6093
F: (804) 420-6507

## LOCAL CIVIL RULE 11.2 CERTIFICATION

Pursuant to Local Civil Rule 11.2, the undersigned counsel hereby certifies that this

matter in controversy is the subject of no other matter pending in this Court.

Respectfully submitted,

**SAIBER LLC**
*Attorneys for Defendants and Counterclaimants*
*Lehigh Gas Wholesale Services, Inc.,*
*Lehigh Gas Wholesale LLC, and*
*LGP Realty Holdings LP*

Dated:  July 19, 2021                    By:    Jakob B. Halpern
Jennine DiSomma, Esq. (jdisomma@saiber.com)
Jakob B. Halpern, Esq. (jhalpern@saiber.com)
Catherine Soliman, Esq. (csoliman@saiber.com)
18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932
T: (973) 622-3333
F: (973) 622-3349

Otto Konrad, Esq. (okonrad@williamsmullen.com)
Brendan O'Toole, Esq.
(botoole@williamsmullen.com)
Meredith M. Haynes, Esq.
(mhaynes@williamsmullen.com)
**WILLIAMS MULLEN**
200 S. 10th Street, Suite 1600
Richmond, Virginia 23219
T: (804) 420-6093
F: (804) 420-6507

36

## LOCAL CIVIL RULE 201.1 CERTIFICATION

Under Local Civil Rule 201.1, the undersigned counsel hereby certifies that both the

Second Amended Complaint and the Counterclaims seek monetary damages greater than

$150,000, and therefore this action is not appropriate for compulsory arbitration.

Respectfully submitted,

**SAIBER LLC**
*Attorneys for Defendants and Counterclaimants*
*Lehigh Gas Wholesale Services, Inc.,*
*Lehigh Gas Wholesale LLC, and*
*LGP Realty Holdings LP*

Dated:  July 19, 2021

By:   Jakob B. Halpern
Jennine DiSomma, Esq. (jdisomma@saiber.com)
Jakob B. Halpern, Esq. (jhalpern@saiber.com)
Catherine Soliman, Esq. (csoliman@saiber.com)
18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932
T: (973) 622-3333
F: (973) 622-3349

Otto Konrad, Esq. (okonrad@williamsmullen.com)
Brendan O'Toole, Esq.
(botoole@williamsmullen.com)
Meredith M. Haynes, Esq.
(mhaynes@williamsmullen.com)
**WILLIAMS MULLEN**
200 S. 10th Street, Suite 1600
Richmond, Virginia 23219
T: (804) 420-6093
F: (804) 420-6507

# EXHIBIT A

**PREMISES**

| Site ID | Address | City | State | Zip |
|---------|---------|------|-------|-----|
| FLO131 | 2413 US Highway 301 N | Ellenton | FL | 34222 |
| FLO133 | 10800 Metro Pkwy | Fort Myers | FL | 33966 |
| FLO134 | 5055 S Orange Blossom Trail | Kissimmee | FL | 34758 |
| FLO135 | 2158 N. Temple Ave | Starke | FL | 32091 |
| FLO136 | 9750 Old St Augustine Rd | Jacksonville | FL | 32257 |
| FLO137 | 1005 S Edgewood Ave | Jacksonville | FL | 32205 |
| FLO138 | 3232 W Silver Springs Blvd | Ocala | FL | 34475 |
| FLO139 | 205 S Lawrence Blvd | Keystone Heights | FL | 32656 |
| FLO141 | 239 N Center St | Pierson | FL | 32180 |
| FLO142 | 1140 County Road 309 | Crescent City | FL | 32112 |
| FLO143 | 901 State Road 20 | Interlachen | FL | 32148 |
| FLO145 | 17025 SE County Road 234 | Micanopy | FL | 32667 |
| FLO146 | 861 E State Road 44 | Wildwood | FL | 34785 |
| FLO147 | 5420 W State Road 235 | La Crosse | FL | 32615 |
| FLO150 | 808 S Park Ave | Apopka | FL | 32703 |
| FLO152 | 13075 Spring Hill Dr | Spring Hill | FL | 34609 |
| FLO153 | 5051 Gateway Ave | Orlando | FL | 32821 |
| NJ0174 | 127 Easton Avenue | New Brunswick | NJ | 08901 |

# EXHIBIT B



February 6, 2020

**VIA FEDERAL EXPRESS AND CERTIFIED MAIL - RETURN RECEIPT REQUESTED**

Universal Property Services, Inc.
6 Lenn Road
Allentown, NJ 08501
Atten: Syed Kazmi

Syed Kazmi, Guarantor
6 Lenn Road
Allentown, NJ 08501

   Re: Notice of Termination and Reservation of Rights

Dear Mr. Kazmi:

   Please be advised that this letter serves as notice that, **effective twenty-one (21) days from the date of this letter** (the "Effective Date"), with respect to each of the premises specified on Exhibit A hereof, Lehigh Gas Wholesale LLC and Lehigh Gas Wholesale Services, Inc. (collectively, the "Supplier"), as successors in interest to Circle K Stores Inc, pursuant to assignments with an effective date of on or about September 5, 2019, hereby terminates each of the Contracts of Sale (the "Supply Agreements") and the Station Leases (the "Leases") specified on Exhibit B attached hereto (collectively, the Supply Agreements and the Leases are referred to herein as the "Franchise Agreements") by and between Universal Property Services, Inc. ("Dealer"). Capitalized terms used, but not otherwise defined, in this letter have the meanings given those terms in the Franchise Agreements.

   This notice is provided in compliance with Section 15 U.S.C, Sections 2801 et. seq. (the "PMPA"), including, without limitation, 15 U.S.C Section 2804(b)(1). Attached hereto is a summary statement under Section 2804(c)(3)(C).

The specific grounds for the termination are as follows (collectively, the Defaults"):

1. Failure to pay under the Leases the monthly rent installments, taxes, network fees and environmental compliance inspection fees (together, the "Monthly Lease Fees") on the applicable due dates (Section 3(a) and 3(c) of the Leases), which according to Supplier's records (attached for reference as Exhibit C), reflect that Dealer has failed to pay the Monthly Lease Fees in the months of November 2019, December 2019, January 2020 and February 2020. The current YTD Combined

Statements for each site listed on <u>Exhibit C</u> shows **past due Monthly Lease Fees of Seven Hundred Twenty-One Thousand, Eighty-Five Dollars and Seventy-Eight Cents ($721,085.78)**.

Total Monthly Lease Fees owed by type of expense:

| Type of Expense | Total Amount Owed |
|---|---|
| Personal Property Tax | $12,353.76 |
| Rent | $655,677.70 |
| Real Estate Tax | $31,750.82 |
| Network Solutions | $7,305.19 |
| Maintenance | $8,377.31 |
| Environmental | $5,621.00 |
| | **$721,085.78** |

Total Monthly Fees Owed by Individual Site:

| Site ID (See Attachment A) | Total Amount Owed |
|---|---|
| FL0131 | $28,917.72 |
| FL0133 | $40,752.48 |
| FL0134 | $8,997.65 |
| FL0135 | $29,773.44 |
| FL0136 | $31,069.16 |
| FL0137 | $46,886.95 |
| FL0138 | $34,278.42 |
| FL0139 | $95,281.07 |
| FL0141 | $31,766.66 |
| FL0142 | $74,118.93 |
| FL0143 | $30,985.53 |
| FL0145 | $57,932.47 |
| FL0146 | $18,584.74 |
| FL0147 | $42,162.92 |
| FL0150 | $41,346.61 |
| FL0152 | $41,740.54 |
| FL0153 | $66,490.49 |
| | **$721,085.78** |

2. Failure to pay under the Supply Agreements, supply agreement charges (the "<u>Supply Agreement Charges</u>") (Section 4 of the Supply Agreements), including six (6) unpaid returned fuel drafts which according to Supplier's records (attached for reference as <u>Exhibit D</u>), reflect that the Dealer has failed to pay the Supply Agreement Charges in the aggregate of Fifty Four Thousand Four Hundred Forty Six and 88/100 ($54,446.88).

3. Cross defaults under Section 24(b)(xiv) of the Supply Agreements and 17(a)(iii) of the Leases.

4.  Failure to provide an acceptable letter of credit as required under Section 7 of the Supply Agreements.

The Defaults are all reasonable and of material significance to the franchise relationship and in multiple instances Supplier first acquired knowledge of the Defaults not more than sixty days of the date of this notification.  Accordingly, pursuant to Section 15 U.S.C § 2802(b)(2)(A)(i) the Supplier may terminate the Franchise Agreements.   Termination of the Franchise Agreements also is justified pursuant to 15 U.S.C. §§ 2802(b)(2)(C) and 2802(c)(8) as a consequence of the Dealer failing to pay Supplier in a timely manner when due all sums to which the Supplier is legally entitled.

Furthermore, Supplier hereby makes a concurrent demand upon you under the Personal Guaranties of Performance specified on the attached Exhibit B for payment of the Liabilities.

Finally, Supplier reserves the right, without notice, to exercise all rights to apply the Security provided pursuant to the Security Agreements specified on Exhibit B towards payment of any and all amounts due under the Franchise Agreements.

The rights of Supplier expressed in this letter are without prejudice to any additional, rights, claims or remedies that Supplier may have now or in the future, at law, in equity or otherwise, with respect to this matter, all of which are expressly reserved, including but not limited to: rights of eviction, rights to collect the balance of the rent owed for the remainder of the term, all sums incurred by us to prepare the station for re-rental, attorney's fees/costs incurred to enforce our rights under the Franchise Agreements, as well as any rights we may have to claim damages for the loss of business resulting from this default.

Notwithstanding any termination, Supplier reserves all of its rights under the Franchise Agreements to make demand for and collect all such other amounts that presently or in the future may be due and payable under the Franchise Agreements. Nothing in this letter should be read to limit our rights with respect to other basis for termination or other violations of the Franchise Agreements.

Regards,

*David Hrinak*

dotloop verified
02/06/20 2:00 PM EST
ROFE-J6LH-9IKE-LJOV

David Hrinak
Vice President Operations

Enclosures

Cc: Keenan Lynch, Esq.
    Ken Frye

**Exhibit A**
**Premises**

| Site ID | Address | City | State | Zip | Effective Date | Expiration Date |
|---------|---------|------|-------|-----|----------------|-----------------|
| FL0131 | 2413 US Highway 301 N | Ellenton | FL | 34222 | 8/7/2019 | 8/6/2022 |
| FL0133 | 10800 Metro Pkwy | Fort Myers | FL | 33966 | 8/8/2019 | 8/7/2022 |
| FL0134 | 5055 S Orange Blossom Trail | Kissimmee | FL | 34758 | 8/15/2019 | 8/14/2022 |
| FL0135 | 2158 N Temple Ave | Starke | FL | 32091 | 7/18/2019 | 7/17/2022 |
| FL0136 | 9750 Old St Augustine Rd | Jacksonville | FL | 32257 | 7/15/2019 | 7/14/2022 |
| FL0137 | 1005 S Edgewood Ave | Jacksonville | FL | 32205 | 7/16/2019 | 7/15/2022 |
| FL0138 | 3232 W Silver Springs Blvd | Ocala | FL | 34475 | 7/30/2019 | 7/29/2022 |
| FL0139 | 205 S Lawrence Blvd | Keystone Heights | FL | 32656 | 7/24/2019 | 7/23/2022 |
| FL0141 | 239 N Center St | Pierson | FL | 32180 | 7/29/2019 | 7/28/2022 |
| FL0142 | 1140 County Road 309 | Crescent City | FL | 32112 | 7/25/2019 | 7/24/2022 |
| FL0143 | 901 State Road 20 | Interlachen | FL | 32148 | 7/23/2019 | 7/22/2022 |
| FL0145 | 17025 SE County Road 234 | Micanopy | FL | 32667 | 7/31/2019 | 7/30/2022 |
| FL0146 | 861 E State Road 44 | Wildwood | FL | 34785 | 7/31/2019 | 7/30/2022 |
| FL0147 | 5420 W State Road 235 | La Crosse | FL | 32615 | 7/22/2019 | 7/21/2022 |
| FL0150 | 808 S Park Ave | Apopka | FL | 32703 | 8/13/2019 | 8/12/2019 |
| FL0152 | 13075 Spring Hill Dr | Spring Hill | FL | 34609 | 8/6/2019 | 8/5/2022 |
| FL0153 | 5051 Gateway Ave | Orlando | FL | 32821 | 8/14/2019 | 8/13/2022 |

**Exhibit B**

**Franchise Agreements**
**Contract of Sale (Branded-Lessee)**

| Site ID # | Description |
| --- | --- |
| FL0131 | Between Lehigh Gas Wholesale LLC and Universal Property Services Inc. |
| FL0133 | Between Lehigh Gas Wholesale LLC and Universal Property Services Inc. |
| FL0134 | Between Lehigh Gas Wholesale LLC and Universal Property Services Inc. |
| FL0135 | Between Lehigh Gas Wholesale LLC and Universal Property Services Inc. |
| FL0136 | Between Lehigh Gas Wholesale LLC and Universal Property Services Inc. |
| FL0137 | Between Lehigh Gas Wholesale LLC and Universal Property Services Inc. |
| FL0138 | Between Lehigh Gas Wholesale LLC and Universal Property Services Inc. |
| FL0139 | Between Lehigh Gas Wholesale LLC and Universal Property Services Inc. |
| FL0140 | Between Lehigh Gas Wholesale LLC and Universal Property Services Inc. |
| FL0141 | Between Lehigh Gas Wholesale LLC and Universal Property Services Inc. |

| FL0142 | Between Lehigh Gas Wholesale LLC and Universal Property Services Inc. |
| FL0145 | Between Lehigh Gas Wholesale LLC and Universal Property Services Inc. |
| FL0146 | Between Lehigh Gas Wholesale LLC and Universal Property Services Inc. |
| FL0147 | Between Lehigh Gas Wholesale LLC and Universal Property Services Inc. |
| FL0150 | Between Lehigh Gas Wholesale LLC and Universal Property Services Inc. |
| FL0152 | Between Lehigh Gas Wholesale LLC and Universal Property Services Inc. |
| FL0153 | Between Lehigh Gas Wholesale LLC and Universal Property Services Inc. |

**Station Lease (Lessee Branded)-Triple Net**

| Site ID # | Description |
| --- | --- |
| FL0131 | Between Lehigh Gas Wholesale Services, Inc. and Universal Property Services Inc. |
| FL0133 | Between Lehigh Gas Wholesale Services, Inc. and Universal Property Services Inc. |
| FL0134 | Between Lehigh Gas Wholesale Services, Inc. and Universal Property Services Inc. |
| FL0135 | Between Lehigh Gas Wholesale Services, Inc. and Universal Property Services Inc. |

FL0136          Between Lehigh Gas Wholesale Services, Inc. and
                Universal Property Services Inc.

FL 0137         Between Lehigh Gas Wholesale Services, Inc. and
                Universal Property Services Inc.

FL0138          Between Lehigh Gas Wholesale Services, Inc. and
                Universal Property Services Inc.

FL0139          Between Lehigh Gas Wholesale Services, Inc. and
                Universal Property Services Inc.

FL0141          Between Lehigh Gas Wholesale Services, Inc. and
                Universal Property Services Inc.

FL0142          Between Lehigh Gas Wholesale Services, Inc. and
                Universal Property Services Inc.

FL0143          Between Lehigh Gas Wholesale Services, Inc. and
                Universal Property Services Inc.

FL0145          Between Lehigh Gas Wholesale Services, Inc. and
                Universal Property Services Inc.

FL0146          Between Lehigh Gas Wholesale Services, Inc. and
                Universal Property Services Inc.

FL0147          Between Lehigh Gas Wholesale Services, Inc. and
                Universal Property Services Inc.

FL0150          Between Lehigh Gas Wholesale Services, Inc. and
                Universal Property Services Inc.

FL0152          Between Lehigh Gas Wholesale LLC and Universal
                Property Services Inc.

FL0153          Between Lehigh Gas Wholesale LLC and Universal
                Property Services Inc.

**Personal Guaranty of Performance**

**Site ID #**          **Description**

FL0131          Between Syed Kazmi, as Guarantor, and in favor
                of Lehigh Gas Wholesale LLC, and Lehigh Gas
                Wholesale Services LLC

FL0133          Between Syed Kazmi, as Guarantor and in favor
                of Lehigh Gas Wholesale LLC and Universal
                Property Services Inc.

FL0134          Between Syed Kazmi, as Guarantor and in favor
                of Lehigh Gas Wholesale LLC and Universal
                Property Services Inc.

FL0135          Between Syed Kazmi, as Guarantor and in favor
                of Lehigh Gas Wholesale LLC and Universal
                Property Services Inc.

FL0136          Between Syed Kazmi, as Guarantor and in favor
                of Lehigh Gas Wholesale LLC and Universal
                Property Services Inc.

FL0137          Between Syed Kazmi, as Guarantor and in favor
                of Lehigh Gas Wholesale LLC and Universal
                Property Services Inc.

FL0138          Between Syed Kazmi, as Guarantor and in favor
                of Lehigh Gas Wholesale LLC and Universal
                Property Services Inc.

FL0139          Between Syed Kazmi, as Guarantor and in favor
                of Lehigh Gas Wholesale LLC and Universal
                Property Services Inc.

FL0141          Between Syed Kazmi, as Guarantor and in favor
                of Lehigh Gas Wholesale LLC and Universal
                Property Services Inc.

FL0142          Between Syed Kazmi, as Guarantor and in favor
                of Lehigh Gas Wholesale LLC and Universal
                Property Services Inc.

FL0143          Between Syed Kazmi, as Guarantor and in favor
                of Lehigh Gas Wholesale LLC and Universal
                Property Services Inc.

FL0145          Between Syed Kazmi, as Guarantor and in favor
                of Lehigh Gas Wholesale LLC and Universal
                Property Services Inc

FL0146          Between Syed Kazmi, as Guarantor and in favor
                of Lehigh Gas Wholesale LLC and Universal
                Property Services Inc

FL0147          Between Syed Kazmi, as Guarantor and in favor
                of Lehigh Gas Wholesale LLC and Universal
                Property Services Inc

FL0150          Between Syed Kazmi, as Guarantor and in favor
                of Lehigh Gas Wholesale LLC and Universal
                Property Services Inc

FL0152          Between Syed Kazmi, as Guarantor and in favor
                of Lehigh Gas Wholesale LLC and Universal
                Property Services Inc

FL0153          Between Syed Kazmi, as Guarantor and in favor
                of Lehigh Gas Wholesale LLC and Universal
                Property Services Inc

## Security Agreement

**Site ID #**      **Description**

FL0131          Universal Property Services Inc.

FL0133          Universal Property Services, Inc.

FL0134          Universal Property Services, Inc.

FL0135          Universal Property Services, Inc.

FL0136          Universal Property Services, Inc.

FL0137          Universal Property Services, Inc.

FL0138          Universal Property Services, Inc.

FL0139          Universal Property Services, Inc.

FL0141          Universal Property Services, Inc.

FL0142          Universal Property Services, Inc.

FL0143          Universal Property Services, Inc.

FL0145          Universal Property Services, Inc.

FL0146          Universal Property Services, Inc.

FL0147          Universal Property Services, Inc.

FL0150          Universal Property Services, Inc.

FL0152          Universal Property Services, Inc.

FL0153          Universal Property Services, Inc.

**Exhibit C**

**Monthly Lease Fee Statements**

t CrossAmerica Partners LP
600 Hamilton Street
Suite 500
Allentown, PA 18101

**Statement**

| | |
|---|---|
| **Account** | fl0136 t0001874 Universal Property Services Inc |
| **Prop Name** | FL0136 |
| **Assigned Spaces** | FUEL |

Syed Kazmi
Universal Property Services Inc
6 Lenn Road
Allentown, NJ 08501

| | |
|---|---|
| **Date** | 01/31/2020 |
| **Payment** | $ |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | **Balance Forward** | | | 0.00 |
| 10/01/2019 | :ACH-269485 - Pre-Authorized Payment | 0.00 | 7,868.53 | -7,868.53 |
| 10/01/2019 | PP TAX ESTIMATE (10/2019) | 233.61 | 0.00 | -7,634.92 |
| 10/01/2019 | DEALER RENT - PERSONAL (10/2019) | 6,930.00 | 0.00 | -704.92 |
| 10/01/2019 | RE TAX ESTIMATE (10/2019) | 704.92 | 0.00 | 0.00 |
| 11/01/2019 | PP TAX ESTIMATE (11/2019) | 233.61 | 0.00 | 233.61 |
| 11/01/2019 | DEALER RENT - PERSONAL (11/2019) | 6,930.00 | 0.00 | 7,163.61 |
| 11/01/2019 | RE TAX ESTIMATE (11/2019) | 704.92 | 0.00 | 7,868.53 |
| 11/01/2019 | NETWORK SOLUTIONS ESTIMATE (10/2019) | 110.00 | 0.00 | 7,978.53 |
| 11/01/2019 | NETWORK SOLUTIONS ESTIMATE (11/2019) | 110.00 | 0.00 | 8,088.53 |
| 11/04/2019 | :ACH-280706 - Pre-Authorized Payment NSFed by ctrl# 95493 NSF | 0.00 | 7,868.53 | 220.00 |
| 11/07/2019 | :ACH-280706 - NSF receipt Ctrl# 94441 NSF | 0.00 | -7,868.53 | 8,088.53 |
| 11/19/2019 | 10/1/2019 - Verifone - INV#3358964 - Help Desk | 67.32 | 0.00 | 8,155.85 |
| 11/26/2019 | 9/30/2019 - 7G Environmental - INV#4371 - Monthly Visual INspection | 75.00 | 0.00 | 8,230.85 |
| 11/26/2019 | 10/30/2019 - 7G Environmental - INV#4496 - Monthly Visual Inspection | 75.00 | 0.00 | 8,305.85 |
| 11/26/2019 | 11/1/2019 - Titan Cloud - INV#INV0458 - Monthly Titan Monitoring | 3.00 | 0.00 | 8,308.85 |
| 12/01/2019 | NETWORK SOLUTIONS ESTIMATE (12/2019) | 110.00 | 0.00 | 8,418.85 |
| 12/01/2019 | PP TAX ESTIMATE (12/2019) | 233.61 | 0.00 | 8,652.46 |
| 12/01/2019 | DEALER RENT - PERSONAL (12/2019) | 6,930.00 | 0.00 | 15,582.46 |
| 12/01/2019 | RE TAX ESTIMATE (12/2019) | 704.92 | 0.00 | 16,287.38 |
| 12/16/2019 | Verifone - INV#2969966 - SW MAINT | 30.00 | 0.00 | 16,317.38 |
| 12/16/2019 | Verifone - INV#2969966 - PSP HELPDESK | 35.00 | 0.00 | 16,352.38 |
| 12/31/2019 | PP TAX RECOVERY (07/2019 - 12/2019) | -268.78 | 0.00 | 16,083.60 |
| 12/31/2019 | RE TAX EXPENSE (07/2019 - 12/2019) | -811.04 | 0.00 | 15,272.56 |
| 12/31/2019 | NETWORK SOLUTIONS RECOVERY (07/2019 - 12/2019) | -177.42 | 0.00 | 15,095.14 |
| 12/31/2019 | NETWORK SOLUTIONS RECOVERY (07/2019 - 12/2019) | 16.96 | 0.00 | 15,112.10 |
| 01/01/2020 | NETWORK SOLUTIONS ESTIMATE (01/2020) | 110.00 | 0.00 | 15,222.10 |
| 01/01/2020 | PP TAX ESTIMATE (01/2020) | 233.61 | 0.00 | 15,455.71 |
| 01/01/2020 | DEALER RENT - PERSONAL (01/2020) | 6,930.00 | 0.00 | 22,385.71 |
| 01/01/2020 | RE TAX ESTIMATE (01/2020) | 704.92 | 0.00 | 23,090.63 |
| 02/01/2020 | NETWORK SOLUTIONS ESTIMATE (02/2020) | 110.00 | 0.00 | 23,200.63 |
| 02/01/2020 | PP TAX ESTIMATE (02/2020) | 233.61 | 0.00 | 23,434.24 |
| 02/01/2020 | DEALER RENT - PERSONAL (02/2020) | 6,930.00 | 0.00 | 30,364.24 |
| 02/01/2020 | RE TAX ESTIMATE (02/2020) | 704.92 | 0.00 | 31,069.16 |

| 0-30 Days | 31-60 Days | 61-90 Days | Above 90 Days | Amount Due |
|---|---|---|---|---|
| 15,957.06 | 81.96 | 8,198.85 | 6,831.29 | 31,069.16 |

t CrossAmerica Partners LP
600 Hamilton Street
Suite 500
Allentown, PA 18101

**Statement**

| | |
|---|---|
| Account | fl0137 t0001876 Universal Property Services Inc |
| Prop Name | FL0137 |
| Assigned Spaces | FUEL |

Syed Kazmi
Universal Property Services Inc
6 Lenn Road
Allentown, NJ 08501

| | |
|---|---|
| Date | 01/31/2020 |
| Payment | $ |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | **Balance Forward** | | | 0.00 |
| 10/01/2019 | :ACH-269487 - Pre-Authorized Payment | 0.00 | 11,587.60 | -11,587.60 |
| 10/01/2019 | PP TAX ESTIMATE (10/2019) | 360.92 | 0.00 | -11,226.68 |
| 10/01/2019 | DEALER RENT - PERSONAL (10/2019) | 10,500.00 | 0.00 | -726.68 |
| 10/01/2019 | RE TAX ESTIMATE (10/2019) | 726.68 | 0.00 | 0.00 |
| 10/17/2019 | 8/31/2019 - Guardian Fueling - INV#SRVCE2274042 - POS | 806.70 | 0.00 | 806.70 |
| 10/17/2019 | 8/31/2019 - Guardian Fueling - INV#SRVCE2275015 - POS | 384.00 | 0.00 | 1,190.70 |
| 11/01/2019 | PP TAX ESTIMATE (11/2019) | 360.92 | 0.00 | 1,551.62 |
| 11/01/2019 | DEALER RENT - PERSONAL (11/2019) | 10,500.00 | 0.00 | 12,051.62 |
| 11/01/2019 | RE TAX ESTIMATE (11/2019) | 726.68 | 0.00 | 12,778.30 |
| 11/01/2019 | NETWORK SOLUTIONS ESTIMATE (10/2019) | 110.00 | 0.00 | 12,888.30 |
| 11/01/2019 | NETWORK SOLUTIONS ESTIMATE (11/2019) | 110.00 | 0.00 | 12,998.30 |
| 11/04/2019 | :ACH-280707 - Pre-Authorized Payment NSFed by ctrl# 95494 NSF | 0.00 | 12,778.30 | 220.00 |
| 11/07/2019 | :ACH-280707 - NSF receipt Ctrl# 94442 NSF | 0.00 | -12,778.30 | 12,998.30 |
| 11/19/2019 | 10/1/2019 - Verifone - INV#3358964 - Help Desk | 67.32 | 0.00 | 13,065.62 |
| 11/26/2019 | 9/30/2019 - 7G Environmental - INV#4371 - Monthly Visual Inspection | 75.00 | 0.00 | 13,140.62 |
| 11/26/2019 | 10/30/2019 - 7G Environmental - INV#4496 - Monthly Visual Inspection | 75.00 | 0.00 | 13,215.62 |
| 11/26/2019 | 11/1/2019 - Titan Cloud - INV#INV0458 - Monthly Titan Monitoring | 3.00 | 0.00 | 13,218.62 |
| 12/01/2019 | NETWORK SOLUTIONS ESTIMATE (12/2019) | 110.00 | 0.00 | 13,328.62 |
| 12/01/2019 | PP TAX ESTIMATE (12/2019) | 360.92 | 0.00 | 13,689.54 |
| 12/01/2019 | DEALER RENT - PERSONAL (12/2019) | 10,500.00 | 0.00 | 24,189.54 |
| 12/01/2019 | RE TAX ESTIMATE (12/2019) | 726.68 | 0.00 | 24,916.22 |
| 12/31/2019 | PP TAX RECOVERY (07/2019 - 12/2019) | -419.13 | 0.00 | 24,497.09 |
| 12/31/2019 | RE TAX EXPENSE (07/2019 - 12/2019) | -843.89 | 0.00 | 23,653.20 |
| 12/31/2019 | NETWORK SOLUTIONS RECOVERY (07/2019 - 12/2019) | -178.31 | 0.00 | 23,474.89 |
| 12/31/2019 | NETWORK SOLUTIONS RECOVERY (07/2019 - 12/2019) | 16.86 | 0.00 | 23,491.75 |
| 01/01/2020 | NETWORK SOLUTIONS ESTIMATE (01/2020) | 110.00 | 0.00 | 23,601.75 |
| 01/01/2020 | PP TAX ESTIMATE (01/2020) | 360.92 | 0.00 | 23,962.67 |
| 01/01/2020 | DEALER RENT - PERSONAL (01/2020) | 10,500.00 | 0.00 | 34,462.67 |
| 01/01/2020 | RE TAX ESTIMATE (01/2020) | 726.68 | 0.00 | 35,189.35 |
| 02/01/2020 | NETWORK SOLUTIONS ESTIMATE (02/2020) | 110.00 | 0.00 | 35,299.35 |
| 02/01/2020 | PP TAX ESTIMATE (02/2020) | 360.92 | 0.00 | 35,660.27 |
| 02/01/2020 | DEALER RENT - PERSONAL (02/2020) | 10,500.00 | 0.00 | 46,160.27 |
| 02/01/2020 | RE TAX ESTIMATE (02/2020) | 726.68 | 0.00 | 46,886.95 |

| 0-30 Days | 31-60 Days | 61-90 Days | Above 90 Days | Amount Due |
|---|---|---|---|---|
| 23,395.20 | 16.86 | 11,917.92 | 11,556.97 | 46,886.95 |

**t CrossAmerica Partners LP**
600 Hamilton Street
Suite 500
Allentown, PA 18101

| | | |
|---|---|---|
| | **Statement** | |
| **Account** | fl0135 t0001879 Universal Property Services Inc | |
| **Prop Name** | FL0135 | |
| **Assigned Spaces** | FUEL | |

Syed Kazmi
Universal Property Services Inc
6 Lenn Road
Allentown, NJ 08501

| | |
|---|---|
| **Date** | 01/31/2020 |
| **Payment** | $ _____ |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | **Balance Forward** | | | 0.00 |
| 10/01/2019 | :ACH-269489 - Pre-Authorized Payment | 0.00 | 7,329.53 | -7,329.53 |
| 10/01/2019 | PP TAX ESTIMATE (10/2019) | 194.58 | 0.00 | -7,134.95 |
| 10/01/2019 | DEALER RENT - PERSONAL (10/2019) | 6,930.00 | 0.00 | -204.95 |
| 10/01/2019 | RE TAX ESTIMATE (10/2019) | 204.95 | 0.00 | 0.00 |
| 11/01/2019 | PP TAX ESTIMATE (11/2019) | 194.58 | 0.00 | 194.58 |
| 11/01/2019 | DEALER RENT - PERSONAL (11/2019) | 6,930.00 | 0.00 | 7,124.58 |
| 11/01/2019 | RE TAX ESTIMATE (11/2019) | 204.95 | 0.00 | 7,329.53 |
| 11/01/2019 | NETWORK SOLUTIONS ESTIMATE (10/2019) | 70.00 | 0.00 | 7,399.53 |
| 11/01/2019 | NETWORK SOLUTIONS ESTIMATE (11/2019) | 70.00 | 0.00 | 7,469.53 |
| 11/04/2019 | :ACH-280708 - Pre-Authorized Payment NSFed by ctrl# 95495 NSF | 0.00 | 7,329.53 | 140.00 |
| 11/07/2019 | :ACH-280708 - NSF receipt Ctrl# 94443 NSF | 0.00 | -7,329.53 | 7,469.53 |
| 11/18/2019 | 9/18/2019 - Guardian Fueling - INV#SRVCE2278362 - Dispensers | 324.14 | 0.00 | 7,793.67 |
| 11/19/2019 | 10/1/2019 - Verifone - INV#3358964 - Help Desk | 67.32 | 0.00 | 7,860.99 |
| 11/26/2019 | 9/30/2019 - 7G Environmental - INV#4371 - Monthly Visual Inspection | 75.00 | 0.00 | 7,935.99 |
| 11/26/2019 | 10/30/2019 - 7G Environmental - INV#4496 - Monthly Visual Inspection | 75.00 | 0.00 | 8,010.99 |
| 11/26/2019 | 11/1/2019 - Titan Cloud - INV#INV0458 - Monthly Titan Monitoring | 3.00 | 0.00 | 8,013.99 |
| 12/01/2019 | NETWORK SOLUTIONS ESTIMATE (12/2019) | 70.00 | 0.00 | 8,083.99 |
| 12/01/2019 | PP TAX ESTIMATE (12/2019) | 194.58 | 0.00 | 8,278.57 |
| 12/01/2019 | DEALER RENT - PERSONAL (12/2019) | 6,930.00 | 0.00 | 15,208.57 |
| 12/01/2019 | RE TAX ESTIMATE (12/2019) | 204.95 | 0.00 | 15,413.52 |
| 12/31/2019 | PP TAX RECOVERY (07/2019 - 12/2019) | -230.15 | 0.00 | 15,183.37 |
| 12/31/2019 | RE TAX EXPENSE (07/2019 - 12/2019) | -242.41 | 0.00 | 14,940.96 |
| 12/31/2019 | NETWORK SOLUTIONS RECOVERY (07/2019 - 12/2019) | 33.42 | 0.00 | 14,974.38 |
| 01/01/2020 | NETWORK SOLUTIONS ESTIMATE (01/2020) | 70.00 | 0.00 | 15,044.38 |
| 01/01/2020 | PP TAX ESTIMATE (01/2020) | 194.58 | 0.00 | 15,238.96 |
| 01/01/2020 | DEALER RENT - PERSONAL (01/2020) | 6,930.00 | 0.00 | 22,168.96 |
| 01/01/2020 | RE TAX ESTIMATE (01/2020) | 204.95 | 0.00 | 22,373.91 |
| 02/01/2020 | NETWORK SOLUTIONS ESTIMATE (02/2020) | 70.00 | 0.00 | 22,443.91 |
| 02/01/2020 | PP TAX ESTIMATE (02/2020) | 194.58 | 0.00 | 22,638.49 |
| 02/01/2020 | DEALER RENT - PERSONAL (02/2020) | 6,930.00 | 0.00 | 29,568.49 |
| 02/01/2020 | RE TAX ESTIMATE (02/2020) | 204.95 | 0.00 | 29,773.44 |

| 0-30 Days | 31-60 Days | 61-90 Days | Above 90 Days | Amount Due |
|---|---|---|---|---|
| 14,799.06 | 33.42 | 7,943.99 | 6,996.97 | 29,773.44 |

**t CrossAmerica Partners LP**
600 Hamilton Street
Suite 500
Allentown, PA 18101

| | **Statement** |
|---|---|
| **Account** | fI0147 t0001883 Universal Property Services Inc |
| **Prop Name** | FL0147 |
| **Assigned Spaces** | FUEL |

Syed Kazmi
Universal Property Services Inc
6 Lenn Road
Allentown, NJ 08501

| | |
|---|---|
| **Date** | 01/31/2020 |
| **Payment** | $ |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | **Balance Forward** | | | 0.00 |
| 10/01/2019 | :ACH-269491 - Pre-Authorized Payment | 0.00 | 10,165.90 | -10,165.90 |
| 10/01/2019 | PP TAX ESTIMATE (10/2019) | 443.81 | 0.00 | -9,722.09 |
| 10/01/2019 | DEALER RENT - PERSONAL (10/2019) | 9,450.00 | 0.00 | -272.09 |
| 10/01/2019 | RE TAX ESTIMATE (10/2019) | 272.09 | 0.00 | 0.00 |
| 10/17/2019 | 8/30/2019 - Guardian Fueling - INV#SRVCE227479 - POS | 688.25 | 0.00 | 688.25 |
| 10/17/2019 | 9/16/2019 - Guardian Fueling - INV#SRVCE280540 - POS | 366.45 | 0.00 | 1,054.70 |
| 11/01/2019 | PP TAX ESTIMATE (11/2019) | 443.81 | 0.00 | 1,498.51 |
| 11/01/2019 | DEALER RENT - PERSONAL (11/2019) | 9,450.00 | 0.00 | 10,948.51 |
| 11/01/2019 | RE TAX ESTIMATE (11/2019) | 272.09 | 0.00 | 11,220.60 |
| 11/01/2019 | NETWORK SOLUTIONS ESTIMATE (10/2019) | 110.00 | 0.00 | 11,330.60 |
| 11/01/2019 | NETWORK SOLUTIONS ESTIMATE (11/2019) | 110.00 | 0.00 | 11,440.60 |
| 11/04/2019 | :ACH-280709 - Pre-Authorized Payment NSFed by ctrl# 95496 NSF | 0.00 | 11,220.60 | 220.00 |
| 11/07/2019 | :ACH-280709 - NSF receipt Ctrl# 94444 NSF | 0.00 | -11,220.60 | 11,440.60 |
| 11/22/2019 | 10/1/2019 - Verifone - INV#3358964 - Help Desk | 67.32 | 0.00 | 11,507.92 |
| 11/22/2019 | 10/21/2019 - Guardian Fueling - INV#SRVCE289112 - POS | 716.22 | 0.00 | 12,224.14 |
| 11/26/2019 | 9/30/2019 - 7G Environmental - INV#4371 - Monthly Visual Inspection | 75.00 | 0.00 | 12,299.14 |
| 11/26/2019 | 10/30/2019 - 7G Environmental - INV#4496 - Monthly Visual Inspection | 75.00 | 0.00 | 12,374.14 |
| 11/26/2019 | 11/1/2019 - Titan Cloud - INV#INV0458 - Monthly Titan Monitoring | 3.00 | 0.00 | 12,377.14 |
| 11/26/2019 | 11/1/2019 - Titan Cloud - INV#INV0458 - Monthly Titan Monitoring | 3.00 | 0.00 | 12,380.14 |
| 12/01/2019 | NETWORK SOLUTIONS ESTIMATE (12/2019) | 110.00 | 0.00 | 12,490.14 |
| 12/01/2019 | PP TAX ESTIMATE (12/2019) | 443.81 | 0.00 | 12,933.95 |
| 12/01/2019 | DEALER RENT - PERSONAL (12/2019) | 9,450.00 | 0.00 | 22,383.95 |
| 12/01/2019 | RE TAX ESTIMATE (12/2019) | 272.09 | 0.00 | 22,656.04 |
| 12/31/2019 | PP TAX RECOVERY (07/2019 - 12/2019) | -544.03 | 0.00 | 22,112.01 |
| 12/31/2019 | RE TAX ESTIMATE (07/2019 - 12/2019) | -333.53 | 0.00 | 21,778.48 |
| 12/31/2019 | NETWORK SOLUTIONS RECOVERY (07/2019 - 12/2019) | -183.63 | 0.00 | 21,594.85 |
| 12/31/2019 | NETWORK SOLUTIONS RECOVERY (07/2019 - 12/2019) | 16.27 | 0.00 | 21,611.12 |
| 01/01/2020 | NETWORK SOLUTIONS ESTIMATE (01/2020) | 110.00 | 0.00 | 21,721.12 |
| 01/01/2020 | PP TAX ESTIMATE (01/2020) | 443.81 | 0.00 | 22,164.93 |
| 01/01/2020 | DEALER RENT - PERSONAL (01/2020) | 9,450.00 | 0.00 | 31,614.93 |
| 01/01/2020 | RE TAX ESTIMATE (01/2020) | 272.09 | 0.00 | 31,887.02 |
| 02/01/2020 | NETWORK SOLUTIONS ESTIMATE (02/2020) | 110.00 | 0.00 | 31,997.02 |
| 02/01/2020 | PP TAX ESTIMATE (02/2020) | 443.81 | 0.00 | 32,440.83 |
| 02/01/2020 | DEALER RENT - PERSONAL (02/2020) | 9,450.00 | 0.00 | 41,890.83 |
| 02/01/2020 | RE TAX ESTIMATE (02/2020) | 272.09 | 0.00 | 42,162.92 |

| 0-30 Days | 31-60 Days | 61-90 Days | Above 90 Days | Amount Due |
|---|---|---|---|---|
| 20,551.80 | 16.27 | 11,215.44 | 10,379.41 | 42,162.92 |

**t CrossAmerica Partners LP**
600 Hamilton Street
Suite 500
Allentown, PA 18101

| | **Statement** |
|---|---|
| **Account** | fl0143 t0001889 Universal Property Services Inc |
| **Prop Name** | FL0143 |
| **Assigned Spaces** | FUEL |

Syed Kazmi
Universal Property Services Inc
6 Lenn Road
Allentown, NJ 08501

| | |
|---|---|
| **Date** | 01/31/2020 |
| **Payment** | $ |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | **Balance Forward** | | | 0.00 |
| 10/01/2019 | :ACH-269497 - Pre-Authorized Payment | 0.00 | 7,827.02 | -7,827.02 |
| 10/01/2019 | PP TAX ESTIMATE (10/2019) | 100.04 | 0.00 | -7,726.98 |
| 10/01/2019 | DEALER RENT - PERSONAL (10/2019) | 7,350.00 | 0.00 | -376.98 |
| 10/01/2019 | RE TAX ESTIMATE (10/2019) | 376.98 | 0.00 | 0.00 |
| 11/01/2019 | PP TAX ESTIMATE (11/2019) | 100.04 | 0.00 | 100.04 |
| 11/01/2019 | DEALER RENT - PERSONAL (11/2019) | 7,350.00 | 0.00 | 7,450.04 |
| 11/01/2019 | RE TAX ESTIMATE (11/2019) | 376.98 | 0.00 | 7,827.02 |
| 11/01/2019 | NETWORK SOLUTIONS ESTIMATE (10/2019) | 10.00 | 0.00 | 7,837.02 |
| 11/01/2019 | NETWORK SOLUTIONS ESTIMATE (11/2019) | 10.00 | 0.00 | 7,847.02 |
| 11/04/2019 | :ACH-280710 - Pre-Authorized Payment NSFed by ctrl# 95497 NSF | 0.00 | 7,827.02 | 20.00 |
| 11/07/2019 | :ACH-280710 - NSF receipt Ctrl# 94445 NSF | 0.00 | -7,827.02 | 7,847.02 |
| 11/19/2019 | 10/1/2019 - Verifone - INV#3358964 - Help Desk | 67.32 | 0.00 | 7,914.34 |
| 11/26/2019 | 9/30/2019 - 7G Environmental - INV#4371 - Monthly Visual Inspection | 75.00 | 0.00 | 7,989.34 |
| 11/26/2019 | 10/30/2019 - 7G Environmental - INV#4496 - Monthly Visual Inspection | 75.00 | 0.00 | 8,064.34 |
| 11/26/2019 | 11/1/2019 - Titan Cloud - INV#INV0458 - Monthly Titan Monitoring | 3.00 | 0.00 | 8,067.34 |
| 12/01/2019 | NETWORK SOLUTIONS ESTIMATE (12/2019) | 10.00 | 0.00 | 8,077.34 |
| 12/01/2019 | PP TAX ESTIMATE (12/2019) | 100.04 | 0.00 | 8,177.38 |
| 12/01/2019 | DEALER RENT - PERSONAL (12/2019) | 7,350.00 | 0.00 | 15,527.38 |
| 12/01/2019 | RE TAX ESTIMATE (12/2019) | 376.98 | 0.00 | 15,904.36 |
| 12/31/2019 | PP TAX RECOVERY (07/2019 - 12/2019) | -123.71 | 0.00 | 15,780.65 |
| 12/31/2019 | RE TAX EXPENSE (07/2019 - 12/2019) | -600.81 | 0.00 | 15,179.84 |
| 12/31/2019 | NETWORK SOLUTIONS RECOVERY (07/2019 - 12/2019) | 115.48 | 0.00 | 15,295.32 |
| 12/31/2019 | NETWORK SOLUTIONS ESTIMATE (07/2019 - 12/2019) | 16.17 | 0.00 | 15,311.49 |
| 01/01/2020 | NETWORK SOLUTIONS ESTIMATE (01/2020) | 10.00 | 0.00 | 15,321.49 |
| 01/01/2020 | PP TAX ESTIMATE (01/2020) | 100.04 | 0.00 | 15,421.53 |
| 01/01/2020 | DEALER RENT - PERSONAL (01/2020) | 7,350.00 | 0.00 | 22,771.53 |
| 01/01/2020 | RE TAX ESTIMATE (01/2020) | 376.98 | 0.00 | 23,148.51 |
| 02/01/2020 | NETWORK SOLUTIONS ESTIMATE (02/2020) | 10.00 | 0.00 | 23,158.51 |
| 02/01/2020 | PP TAX ESTIMATE (02/2020) | 100.04 | 0.00 | 23,258.55 |
| 02/01/2020 | DEALER RENT - PERSONAL (02/2020) | 7,350.00 | 0.00 | 30,608.55 |
| 02/01/2020 | RE TAX ESTIMATE (02/2020) | 376.98 | 0.00 | 30,985.53 |

| 0-30 Days | 31-60 Days | 61-90 Days | Above 90 Days | Amount Due |
|---|---|---|---|---|
| 15,674.04 | 131.65 | 8,057.34 | 7,122.50 | 30,985.53 |

**t CrossAmerica Partners LP**
600 Hamilton Street
Suite 500
Allentown, PA 18101

**Statement**

| | |
|---|---|
| Account | fl0139 t0001890 Universal Property Services Inc |
| Prop Name | FL0139 |
| Assigned Spaces | FUEL |

Syed Kazmi
Universal Property Services Inc
6 Lenn Road
Allentown, NJ 08501

| | |
|---|---|
| Date | 01/31/2020 |
| Payment | $ |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | **Balance Forward** | | | 0.00 |
| 10/01/2019 | :ACH 269498 - Pre Authorized Payment | 0.00 | 23,730.69 | -23,730.69 |
| 10/01/2019 | PP TAX ESTIMATE (10/2019) | 318.04 | 0.00 | -23,412.65 |
| 10/01/2019 | DEALER RENT - PERSONAL (10/2019) | 23,100.00 | 0.00 | -312.65 |
| 10/01/2019 | RE TAX ESTIMATE (10/2019) | 312.65 | 0.00 | 0.00 |
| 10/17/2019 | 8/20/2019 - Guardian Fueling - INV#SRVCE2270813 - POS | 866.66 | 0.00 | 866.66 |
| 11/01/2019 | PP TAX ESTIMATE (11/2019) | 318.04 | 0.00 | 1,184.70 |
| 11/01/2019 | DEALER RENT - PERSONAL (11/2019) | 23,100.00 | 0.00 | 24,284.70 |
| 11/01/2019 | RE TAX ESTIMATE (11/2019) | 312.65 | 0.00 | 24,597.35 |
| 11/01/2019 | NETWORK SOLUTIONS ESTIMATE (10/2019) | 10.00 | 0.00 | 24,607.35 |
| 11/01/2019 | NETWORK SOLUTIONS ESTIMATE (11/2019) | 10.00 | 0.00 | 24,617.35 |
| 11/04/2019 | :ACH 280711 - Pre-Authorized Payment NSFed by ctrl# 95498 NSF | 0.00 | 24,597.35 | 20.00 |
| 11/07/2019 | :ACH 280711 - NSF receipt Ctrl# 94446 NSF | 0.00 | -24,597.35 | 24,617.35 |
| 11/19/2019 | 10/1/2019 - Verifone - INV#3358964 - Help Desk | 67.32 | 0.00 | 24,684.67 |
| 11/26/2019 | 9/30/2019 - 7G Environmental - INV#4371 - Monthly Visual Inspection | 75.00 | 0.00 | 24,759.67 |
| 11/26/2019 | 10/30/2019 - 7G Environmental - INV#4496 - Monthly Visual Inspection | 75.00 | 0.00 | 24,834.67 |
| 12/01/2019 | NETWORK SOLUTIONS ESTIMATE (12/2019) | 10.00 | 0.00 | 24,844.67 |
| 12/01/2019 | PP TAX ESTIMATE (12/2019) | 318.04 | 0.00 | 25,162.71 |
| 12/01/2019 | DEALER RENT - PERSONAL (12/2019) | 23,100.00 | 0.00 | 48,262.71 |
| 12/01/2019 | RE TAX ESTIMATE (12/2019) | 312.65 | 0.00 | 48,575.36 |
| 12/31/2019 | PP TAX RECOVERY (07/2019 - 12/2019) | -396.70 | 0.00 | 48,178.66 |
| 12/31/2019 | RE TAX EXPENSE (07/2019 - 12/2019) | -509.63 | 0.00 | 47,669.03 |
| 12/31/2019 | NETWORK SOLUTIONS RECOVERY (07/2019 - 12/2019) | 114.60 | 0.00 | 47,783.63 |
| 12/31/2019 | NETWORK SOLUTIONS ESTIMATE (07/2019 - 12/2019) | 16.06 | 0.00 | 47,799.69 |
| 01/01/2020 | NETWORK SOLUTIONS ESTIMATE (01/2020) | 10.00 | 0.00 | 47,809.69 |
| 01/01/2020 | PP TAX ESTIMATE (01/2020) | 318.04 | 0.00 | 48,127.73 |
| 01/01/2020 | DEALER RENT - PERSONAL (01/2020) | 23,100.00 | 0.00 | 71,227.73 |
| 01/01/2020 | RE TAX ESTIMATE (01/2020) | 312.65 | 0.00 | 71,540.38 |
| 02/01/2020 | NETWORK SOLUTIONS ESTIMATE (02/2020) | 10.00 | 0.00 | 71,550.38 |
| 02/01/2020 | PP TAX ESTIMATE (02/2020) | 318.04 | 0.00 | 71,868.42 |
| 02/01/2020 | DEALER RENT - PERSONAL (02/2020) | 23,100.00 | 0.00 | 94,968.42 |
| 02/01/2020 | RE TAX ESTIMATE (02/2020) | 312.65 | 0.00 | 95,281.07 |

| 0-30 Days | 31-60 Days | 61-90 Days | Above 90 Days | Amount Due |
|---|---|---|---|---|
| 47,481.38 | 130.66 | 23,958.01 | 23,711.02 | 95,281.07 |

**t CrossAmerica Partners LP**
600 Hamilton Street
Suite 500
Allentown, PA 18101

Syed Kazmi
Universal Property Services Inc
6 Lenn Road
Allentown, NJ 08501

| | |
|---|---|
| **Statement** | |
| **Account** | fl0142 t0001891 Universal Property Services Inc |
| **Prop Name** | FL0142 |
| **Assigned Spaces** | FUEL |
| **Date** | 01/31/2020 |
| **Payment** | $ |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | **Balance Forward** | | | 0.00 |
| 10/01/2019 | :ACH-269499 - Pre-Authorized Payment | 0.00 | 18,424.51 | -18,424.51 |
| 10/01/2019 | PP TAX ESTIMATE (10/2019) | 54.24 | 0.00 | -18,370.27 |
| 10/01/2019 | DEALER RENT - PERSONAL (10/2019) | 17,850.00 | 0.00 | -520.27 |
| 10/01/2019 | RE TAX ESTIMATE (10/2019) | 520.27 | 0.00 | 0.00 |
| 11/01/2019 | PP TAX ESTIMATE (11/2019) | 54.24 | 0.00 | 54.24 |
| 11/01/2019 | DEALER RENT - PERSONAL (11/2019) | 17,850.00 | 0.00 | 17,904.24 |
| 11/01/2019 | RE TAX ESTIMATE (11/2019) | 520.27 | 0.00 | 18,424.51 |
| 11/01/2019 | NETWORK SOLUTIONS ESTIMATE (10/2019) | 10.00 | 0.00 | 18,434.51 |
| 11/01/2019 | NETWORK SOLUTIONS ESTIMATE (11/2019) | 10.00 | 0.00 | 18,444.51 |
| 11/04/2019 | :ACH-280712 - Pre-Authorized Payment NSFed by ctrl# 95499 NSF | 0.00 | 18,424.51 | 20.00 |
| 11/07/2019 | :ACH-280712 - NSF receipt Ctrl# 94447 NSF | 0.00 | -18,424.51 | 18,444.51 |
| 11/19/2019 | 10/1/2019 - Verifone - INV#3358964 - Help Desk | 67.32 | 0.00 | 18,511.83 |
| 11/26/2019 | 9/30/2019 - 7G Environmental - INV#4371 - Monthly Visual Inspection | 75.00 | 0.00 | 18,586.83 |
| 11/26/2019 | 10/30/2019 - 7G Environmental - INV#4496 - Monthly Visual Inspection | 75.00 | 0.00 | 18,661.83 |
| 12/01/2019 | NETWORK SOLUTIONS ESTIMATE (12/2019) | 10.00 | 0.00 | 18,671.83 |
| 12/01/2019 | PP TAX ESTIMATE (12/2019) | 54.24 | 0.00 | 18,726.07 |
| 12/01/2019 | DEALER RENT - PERSONAL (12/2019) | 17,850.00 | 0.00 | 36,576.07 |
| 12/01/2019 | RE TAX ESTIMATE (12/2019) | 520.27 | 0.00 | 37,096.34 |
| 12/31/2019 | PP TAX RECOVERY (07/2019 - 12/2019) | -68.24 | 0.00 | 37,028.10 |
| 12/31/2019 | RE TAX EXPENSE (07/2019 - 12/2019) | -697.87 | 0.00 | 36,330.23 |
| 12/31/2019 | NETWORK SOLUTIONS RECOVERY (07/2019 - 12/2019) | 113.71 | 0.00 | 36,443.94 |
| 12/31/2019 | NETWORK SOLUTIONS RECOVERY (07/2019 - 12/2019) | 15.97 | 0.00 | 36,459.91 |
| 01/01/2020 | NETWORK SOLUTIONS ESTIMATE (01/2020) | 10.00 | 0.00 | 36,469.91 |
| 01/01/2020 | PP TAX ESTIMATE (01/2020) | 54.24 | 0.00 | 36,524.15 |
| 01/01/2020 | DEALER RENT - PERSONAL (01/2020) | 17,850.00 | 0.00 | 54,374.15 |
| 01/01/2020 | RE TAX ESTIMATE (01/2020) | 520.27 | 0.00 | 54,894.42 |
| 01/17/2020 | 11/13/2019 - Valley Tank Testing - INV#106946 - Annual Testing | 790.00 | 0.00 | 55,684.42 |
| 02/01/2020 | NETWORK SOLUTIONS ESTIMATE (02/2020) | 10.00 | 0.00 | 55,694.42 |
| 02/01/2020 | PP TAX ESTIMATE (02/2020) | 54.24 | 0.00 | 55,748.66 |
| 02/01/2020 | DEALER RENT - PERSONAL (02/2020) | 17,850.00 | 0.00 | 73,598.66 |
| 02/01/2020 | RE TAX ESTIMATE (02/2020) | 520.27 | 0.00 | 74,118.93 |

| 0-30 Days | 31-60 Days | 61-90 Days | Above 90 Days | Amount Due |
|---|---|---|---|---|
| 37,659.02 | 129.68 | 18,651.83 | 17,678.40 | 74,118.93 |

**t CrossAmerica Partners LP**
600 Hamilton Street
Suite 500
Allentown, PA 18101

**Statement**

| | |
|---|---|
| **Account** | fl0152 t0001911 Universal Property Services Inc |
| **Prop Name** | FL0152 |
| **Assigned Spaces** | FUEL |

Syed Kazmi
Universal Property Services Inc
6 Lenn Road
Allentown, NJ 08501

| | |
|---|---|
| **Date** | 01/31/2020 |
| **Payment** | $ |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | **Balance Forward** | | | 0.00 |
| 10/01/2019 | :ACH-269505 - Pre-Authorized Payment | 0.00 | 10,720.10 | -10,720.10 |
| 10/01/2019 | PP TAX ESTIMATE (10/2019) | 237.86 | 0.00 | -10,482.24 |
| 10/01/2019 | DEALER RENT - PERSONAL (10/2019) | 9,450.00 | 0.00 | -1,032.24 |
| 10/01/2019 | RE TAX ESTIMATE (10/2019) | 1,032.24 | 0.00 | 0.00 |
| 11/01/2019 | PP TAX ESTIMATE (11/2019) | 237.86 | 0.00 | 237.86 |
| 11/01/2019 | DEALER RENT - PERSONAL (11/2019) | 9,450.00 | 0.00 | 9,687.86 |
| 11/01/2019 | RE TAX ESTIMATE (11/2019) | 1,032.24 | 0.00 | 10,720.10 |
| 11/01/2019 | NETWORK SOLUTIONS ESTIMATE (10/2019) | 125.00 | 0.00 | 10,845.10 |
| 11/01/2019 | NETWORK SOLUTIONS ESTIMATE (11/2019) | 125.00 | 0.00 | 10,970.10 |
| 11/04/2019 | :ACH-280713 - Pre-Authorized Payment NSFed by ctrl# 95500 NSF | 0.00 | 10,720.10 | 250.00 |
| 11/07/2019 | :ACH-280713 - NSF receipt Ctrl# 94448 NSF | 0.00 | -10,720.10 | 10,970.10 |
| 11/22/2019 | 10/1/2019 - Verifone - INV#3358964 - Help Desk | 67.32 | 0.00 | 11,037.42 |
| 11/26/2019 | 9/30/2019 - 7G Environmental - INV#4371 - Monthly Visual Inspection | 75.00 | 0.00 | 11,112.42 |
| 11/26/2019 | 10/30/2019 - 7G Environmental - INV#4496 - Monthly Visual Inspection | 75.00 | 0.00 | 11,187.42 |
| 12/01/2019 | NETWORK SOLUTIONS ESTIMATE (12/2019) | 125.00 | 0.00 | 11,312.42 |
| 12/01/2019 | PP TAX ESTIMATE (12/2019) | 237.86 | 0.00 | 11,550.28 |
| 12/01/2019 | DEALER RENT - PERSONAL (12/2019) | 9,450.00 | 0.00 | 21,000.28 |
| 12/01/2019 | RE TAX ESTIMATE (12/2019) | 1,032.24 | 0.00 | 22,032.52 |
| 12/31/2019 | PP TAX RECOVERY (08/2019 - 12/2019) | -329.93 | 0.00 | 21,702.59 |
| 12/31/2019 | RE TAX EXPENSE (08/2019 - 12/2019) | -1,431.82 | 0.00 | 20,270.77 |
| 12/31/2019 | NETWORK SOLUTIONS RECOVERY (08/2019 - 12/2019) | -235.89 | 0.00 | 20,034.88 |
| 12/31/2019 | NETWORK SOLUTIONS RECOVERY (08/2019 - 12/2019) | 15.46 | 0.00 | 20,050.34 |
| 01/01/2020 | NETWORK SOLUTIONS ESTIMATE (01/2020) | 125.00 | 0.00 | 20,175.34 |
| 01/01/2020 | PP TAX ESTIMATE (01/2020) | 237.86 | 0.00 | 20,413.20 |
| 01/01/2020 | DEALER RENT - PERSONAL (01/2020) | 9,450.00 | 0.00 | 29,863.20 |
| 01/01/2020 | RE TAX ESTIMATE (01/2020) | 1,032.24 | 0.00 | 30,895.44 |
| 02/01/2020 | NETWORK SOLUTIONS ESTIMATE (02/2020) | 125.00 | 0.00 | 31,020.44 |
| 02/01/2020 | PP TAX ESTIMATE (02/2020) | 237.86 | 0.00 | 31,258.30 |
| 02/01/2020 | DEALER RENT - PERSONAL (02/2020) | 9,450.00 | 0.00 | 40,708.30 |
| 02/01/2020 | RE TAX ESTIMATE (02/2020) | 1,032.24 | 0.00 | 41,740.54 |

| 0-30 Days | 31-60 Days | 61-90 Days | Above 90 Days | Amount Due |
|---|---|---|---|---|
| 21,690.20 | 15.46 | 11,062.42 | 8,972.46 | 41,740.54 |

**t CrossAmerica Partners LP**
600 Hamilton Street
Suite 500
Allentown, PA 18101

**Statement**

| | |
|---|---|
| **Account** | fl0131 t0001914 Universal Property Services Inc |
| **Prop Name** | FL0131 |
| **Assigned Spaces** | FUEL |

Syed Kazmi
Universal Property Services Inc
6 Lenn Road
Allentown, NJ 08501

| | |
|---|---|
| **Date** | 01/31/2020 |
| **Payment** | $ |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | **Balance Forward** | | | 0.00 |
| 10/01/2019 | :ACH-269507 - Pre-Authorized Payment | 0.00 | 7,331.77 | -7,331.77 |
| 10/01/2019 | PP TAX ESTIMATE (10/2019) | 139.18 | 0.00 | -7,192.59 |
| 10/01/2019 | DEALER RENT - PERSONAL (10/2019) | 6,825.00 | 0.00 | -367.59 |
| 10/01/2019 | RE TAX ESTIMATE (10/2019) | 367.59 | 0.00 | 0.00 |
| 11/01/2019 | PP TAX ESTIMATE (11/2019) | 139.18 | 0.00 | 139.18 |
| 11/01/2019 | DEALER RENT - PERSONAL (11/2019) | 6,825.00 | 0.00 | 6,964.18 |
| 11/01/2019 | RE TAX ESTIMATE (11/2019) | 367.59 | 0.00 | 7,331.77 |
| 11/01/2019 | NETWORK SOLUTIONS ESTIMATE (10/2019) | 10.00 | 0.00 | 7,341.77 |
| 11/01/2019 | NETWORK SOLUTIONS ESTIMATE (11/2019) | 10.00 | 0.00 | 7,351.77 |
| 11/04/2019 | :ACH-280714 - Pre Authorized Payment NSFed by ctrl# 95501 NSF | 0.00 | 7,331.77 | 20.00 |
| 11/07/2019 | :ACH-280714 - NSF receipt Ctrl# 94449 NSF | 0.00 | -7,331.77 | 7,351.77 |
| 11/19/2019 | 10/1/2019 - Verifone - INV#3358964 - Help Desk | 67.32 | 0.00 | 7,419.09 |
| 11/26/2019 | 9/30/2019 - 7G Environmental - INV#4371 - Monthly Visual Inspection | 75.00 | 0.00 | 7,494.09 |
| 11/26/2019 | 10/30/2019 - 7G Environmental - INV#4496 - Monthly Visual Inspection | 75.00 | 0.00 | 7,569.09 |
| 12/01/2019 | NETWORK SOLUTIONS ESTIMATE (12/2019) | 10.00 | 0.00 | 7,579.09 |
| 12/01/2019 | PP TAX ESTIMATE (12/2019) | 139.18 | 0.00 | 7,718.27 |
| 12/01/2019 | DEALER RENT - PERSONAL (12/2019) | 6,825.00 | 0.00 | 14,543.27 |
| 12/01/2019 | RE TAX ESTIMATE (12/2019) | 367.59 | 0.00 | 14,910.86 |
| 12/31/2019 | PP TAX RECOVERY (08/2019 - 12/2019) | -194.55 | 0.00 | 14,716.31 |
| 12/31/2019 | RE TAX EXPENSE (08/2019 - 12/2019) | -599.00 | 0.00 | 14,117.31 |
| 12/31/2019 | NETWORK SOLUTIONS RECOVERY (08/2019 - 12/2019) | 102.18 | 0.00 | 14,219.49 |
| 12/31/2019 | NETWORK SOLUTIONS RECOVERY (08/2019 - 12/2019) | 14.69 | 0.00 | 14,234.18 |
| 01/01/2020 | NETWORK SOLUTIONS ESTIMATE (01/2020) | 10.00 | 0.00 | 14,244.18 |
| 01/01/2020 | PP TAX ESTIMATE (01/2020) | 139.18 | 0.00 | 14,383.36 |
| 01/01/2020 | DEALER RENT - PERSONAL (01/2020) | 6,825.00 | 0.00 | 21,208.36 |
| 01/01/2020 | RE TAX ESTIMATE (01/2020) | 367.59 | 0.00 | 21,575.95 |
| 02/01/2020 | NETWORK SOLUTIONS ESTIMATE (02/2020) | 10.00 | 0.00 | 21,585.95 |
| 02/01/2020 | PP TAX ESTIMATE (02/2020) | 139.18 | 0.00 | 21,725.13 |
| 02/01/2020 | DEALER RENT - PERSONAL (02/2020) | 6,825.00 | 0.00 | 28,550.13 |
| 02/01/2020 | RE TAX ESTIMATE (02/2020) | 367.59 | 0.00 | 28,917.72 |

| 0-30 Days | 31-60 Days | 61-90 Days | Above 90 Days | Amount Due |
|---|---|---|---|---|
| 14,683.54 | 116.87 | 7,559.09 | 6,558.22 | 28,917.72 |

**t CrossAmerica Partners LP**
600 Hamilton Street
Suite 500
Allentown, PA 18101

| | |
|---|---|
| **Statement** | |
| **Account** | f0133 t0001917 Universal Property Services Inc |
| **Prop Name** | FL0133 |
| **Assigned Spaces** | FUEL |

Syed Kazmi
Universal Property Services Inc
6 Lenn Road
Allentown, NJ 08501

| | |
|---|---|
| **Date** | 01/31/2020 |
| **Payment** | $ |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | **Balance Forward** | | | 0.00 |
| 10/01/2019 | :ACH-269509 - Pre-Authorized Payment | 0.00 | 9,843.24 | -9,843.24 |
| 10/01/2019 | PP TAX ESTIMATE (10/2019) | 83.51 | 0.00 | -9,759.73 |
| 10/01/2019 | DEALER RENT - PERSONAL (10/2019) | 9,240.00 | 0.00 | -519.73 |
| 10/01/2019 | RE TAX ESTIMATE (10/2019) | 519.73 | 0.00 | 0.00 |
| 11/01/2019 | PP TAX ESTIMATE (11/2019) | 83.51 | 0.00 | 83.51 |
| 11/01/2019 | DEALER RENT - PERSONAL (11/2019) | 9,240.00 | 0.00 | 9,323.51 |
| 11/01/2019 | RE TAX ESTIMATE (11/2019) | 519.73 | 0.00 | 9,843.24 |
| 11/01/2019 | NETWORK SOLUTIONS ESTIMATE (10/2019) | 125.00 | 0.00 | 9,968.24 |
| 11/01/2019 | NETWORK SOLUTIONS ESTIMATE (11/2019) | 125.00 | 0.00 | 10,093.24 |
| 11/04/2019 | :ACH-280715 - Pre Authorized Payment NSFed by ctrl# 95502 NSF | 0.00 | 9,843.24 | 250.00 |
| 11/07/2019 | :ACH-280715 - NSF receipt Ctrl# 94450 NSF | 0.00 | -9,843.24 | 10,093.24 |
| 11/25/2019 | 10/9/2019 - Clemens Fuel - INV#27220 - Annual Testing | 999.00 | 0.00 | 11,092.24 |
| 11/25/2019 | 10/18/2019 - Clemens Fuel - INV#27258 - Cathodic Protection Testing | 350.00 | 0.00 | 11,442.24 |
| 11/26/2019 | 9/30/2019 - 7G Environmental - INV#4371 - Monthly Visual Inspection | 75.00 | 0.00 | 11,517.24 |
| 11/26/2019 | 10/30/2019 - 7G Environmental - INV#4496 - Monthly Visual Inspection | 75.00 | 0.00 | 11,592.24 |
| 12/01/2019 | NETWORK SOLUTIONS ESTIMATE (12/2019) | 125.00 | 0.00 | 11,717.24 |
| 12/01/2019 | PP TAX ESTIMATE (12/2019) | 83.51 | 0.00 | 11,800.75 |
| 12/01/2019 | DEALER RENT - PERSONAL (12/2019) | 9,240.00 | 0.00 | 21,040.75 |
| 12/01/2019 | RE TAX ESTIMATE (12/2019) | 519.73 | 0.00 | 21,560.48 |
| 12/31/2019 | PP TAX RECOVERY (08/2019 - 12/2019) | -117.63 | 0.00 | 21,442.85 |
| 12/31/2019 | RE TAX EXPENSE (08/2019 - 12/2019) | -404.36 | 0.00 | 21,038.49 |
| 12/31/2019 | NETWORK SOLUTIONS RECOVERY (08/2019 - 12/2019) | -237.74 | 0.00 | 20,800.75 |
| 12/31/2019 | NETWORK SOLUTIONS RECOVERY (08/2019 - 12/2019) | 15.25 | 0.00 | 20,816.00 |
| 01/01/2020 | NETWORK SOLUTIONS ESTIMATE (01/2020) | 125.00 | 0.00 | 20,941.00 |
| 01/01/2020 | PP TAX ESTIMATE (01/2020) | 83.51 | 0.00 | 21,024.51 |
| 01/01/2020 | DEALER RENT - PERSONAL (01/2020) | 9,240.00 | 0.00 | 30,264.51 |
| 01/01/2020 | RE TAX ESTIMATE (01/2020) | 519.73 | 0.00 | 30,784.24 |
| 02/01/2020 | NETWORK SOLUTIONS ESTIMATE (02/2020) | 125.00 | 0.00 | 30,909.24 |
| 02/01/2020 | PP TAX ESTIMATE (02/2020) | 83.51 | 0.00 | 30,992.75 |
| 02/01/2020 | DEALER RENT - PERSONAL (02/2020) | 9,240.00 | 0.00 | 40,232.75 |
| 02/01/2020 | RE TAX ESTIMATE (02/2020) | 519.73 | 0.00 | 40,752.48 |

| 0-30 Days | 31-60 Days | 61-90 Days | Above 90 Days | Amount Due |
|---|---|---|---|---|
| 19,936.48 | 15.25 | 11,467.24 | 9,333.51 | 40,752.48 |

**t CrossAmerica Partners LP**
600 Hamilton Street
Suite 500
Allentown, PA 18101

| | |
|---|---|
| **Statement** | |
| **Account** | fl0150 f0001927 Universal Property Services Inc |
| **Prop Name** | FL0150 |
| **Assigned Spaces** | FUEL |

Syed Kazmi
Universal Property Services Inc
6 Lenn Road
Allentown, NJ 08501

| | |
|---|---|
| **Date** | 01/31/2020 |
| **Payment** | $ |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | **Balance Forward** | | | 0.00 |
| 10/01/2019 | :ACH-269513 - Pre-Authorized Payment | 0.00 | 10,345.15 | -10,345.15 |
| 10/01/2019 | PP TAX ESTIMATE (10/2019) | 60.72 | 0.00 | -10,284.43 |
| 10/01/2019 | DEALER RENT - PERSONAL (10/2019) | 9,975.00 | 0.00 | -309.43 |
| 10/01/2019 | RE TAX ESTIMATE (10/2019) | 309.43 | 0.00 | 0.00 |
| 11/01/2019 | PP TAX ESTIMATE (11/2019) | 60.72 | 0.00 | 60.72 |
| 11/01/2019 | DEALER RENT - PERSONAL (11/2019) | 9,975.00 | 0.00 | 10,035.72 |
| 11/01/2019 | RE TAX ESTIMATE (11/2019) | 309.43 | 0.00 | 10,345.15 |
| 11/01/2019 | NETWORK SOLUTIONS ESTIMATE (10/2019) | 125.00 | 0.00 | 10,470.15 |
| 11/01/2019 | NETWORK SOLUTIONS ESTIMATE (11/2019) | 125.00 | 0.00 | 10,595.15 |
| 11/04/2019 | :ACH-280716 - Pre-Authorized Payment NSFed by ctrl# 95503 NSF | 0.00 | 10,345.15 | 250.00 |
| 11/07/2019 | :ACH-280716 - NSF receipt Ctrl# 94451 NSF | 0.00 | -10,345.15 | 10,595.15 |
| 11/22/2019 | 10/1/2019 - Verifone - INV#3358964 - Help Desk | 67.32 | 0.00 | 10,662.47 |
| 11/26/2019 | 9/30/2019 - 7G Environmental - INV#4371 - Monthly Visual Inspection | 75.00 | 0.00 | 10,737.47 |
| 11/26/2019 | 10/30/2019 - 7G Environmental - INV#4496 - Monthly Visual Inspection | 75.00 | 0.00 | 10,812.47 |
| 12/01/2019 | NETWORK SOLUTIONS ESTIMATE (12/2019) | 125.00 | 0.00 | 10,937.47 |
| 12/01/2019 | PP TAX ESTIMATE (12/2019) | 60.72 | 0.00 | 10,998.19 |
| 12/01/2019 | DEALER RENT - PERSONAL (12/2019) | 9,975.00 | 0.00 | 20,973.19 |
| 12/01/2019 | RE TAX ESTIMATE (12/2019) | 309.43 | 0.00 | 21,282.62 |
| 12/31/2019 | PP TAX RECOVERY (08/2019 - 12/2019) | -88.79 | 0.00 | 21,193.83 |
| 12/31/2019 | RE TAX EXPENSE (08/2019 - 12/2019) | -559.88 | 0.00 | 20,633.95 |
| 12/31/2019 | NETWORK SOLUTIONS RECOVERY (08/2019 - 12/2019) | -242.38 | 0.00 | 20,391.57 |
| 12/31/2019 | NETWORK SOLUTIONS RECOVERY (08/2019 - 12/2019) | 14.74 | 0.00 | 20,406.31 |
| 01/01/2020 | NETWORK SOLUTIONS ESTIMATE (01/2020) | 125.00 | 0.00 | 20,531.31 |
| 01/01/2020 | PP TAX ESTIMATE (01/2020) | 60.72 | 0.00 | 20,592.03 |
| 01/01/2020 | DEALER RENT - PERSONAL (01/2020) | 9,975.00 | 0.00 | 30,567.03 |
| 01/01/2020 | RE TAX ESTIMATE (01/2020) | 309.43 | 0.00 | 30,876.46 |
| 02/01/2020 | NETWORK SOLUTIONS ESTIMATE (02/2020) | 125.00 | 0.00 | 31,001.46 |
| 02/01/2020 | PP TAX ESTIMATE (02/2020) | 60.72 | 0.00 | 31,062.18 |
| 02/01/2020 | DEALER RENT - PERSONAL (02/2020) | 9,975.00 | 0.00 | 41,037.18 |
| 02/01/2020 | RE TAX ESTIMATE (02/2020) | 309.43 | 0.00 | 41,346.61 |

| 0-30 Days | 31-60 Days | 61-90 Days | Above 90 Days | Amount Due |
|---|---|---|---|---|
| 20,940.30 | 14.74 | 10,687.47 | 9,704.10 | 41,346.61 |

t CrossAmerica Partners LP
600 Hamilton Street
Suite 500
Allentown, PA 18101

**Statement**

| | |
|---|---|
| **Account** | fl0153 I0001929 Universal Property Services Inc |
| **Prop Name** | FL0153 |
| **Assigned Spaces** | FUEL |

Syed Kazmi
Universal Property Services Inc
6 Lenn Road
Allentown, NJ 08501

| | |
|---|---|
| **Date** | 01/31/2020 |
| **Payment** | $ _____ |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | **Balance Forward** | | | 0.00 |
| 10/01/2019 | :ACH-269557 - Pre-Authorized Payment NSFed by ctrl# 93063 | 0.00 | 15,104.95 | -15,104.95 |
| 10/01/2019 | PP TAX ESTIMATE (10/2019) | 404.95 | 0.00 | -14,700.00 |
| 10/01/2019 | DEALER RENT - PERSONAL (10/2019) | 14,700.00 | 0.00 | 0.00 |
| 10/04/2019 | :ACH-269557 - NSF receipt Ctrl# 92876 Invalid/Closed Account | 0.00 | -15,104.95 | 15,104.95 |
| 10/11/2019 | :ACH-272580 - One Time EFT Receipt | 0.00 | 15,104.95 | 0.00 |
| 11/01/2019 | PP TAX ESTIMATE (11/2019) | 404.95 | 0.00 | 404.95 |
| 11/01/2019 | DEALER RENT - PERSONAL (11/2019) | 14,700.00 | 0.00 | 15,104.95 |
| 11/01/2019 | NETWORK SOLUTIONS ESTIMATE (10/2019) | 10.00 | 0.00 | 15,114.95 |
| 11/01/2019 | NETWORK SOLUTIONS ESTIMATE (11/2019) | 10.00 | 0.00 | 15,124.95 |
| 11/04/2019 | :ACH-280722 - One Time EFT Receipt NSFed by ctrl# 95509 NSF | 0.00 | 15,104.95 | 20.00 |
| 11/07/2019 | :ACH-280722 - NSF receipt Ctrl# 94457 NSF | 0.00 | -15,104.95 | 15,124.95 |
| 11/18/2019 | 9/26/2019 - Petroleum Group - INV#4783 - Dispensers | 5,425.94 | 0.00 | 20,550.89 |
| 11/22/2019 | 10/1/2019 - Verifone - INV#3358964 - Help Desk | 67.32 | 0.00 | 20,618.21 |
| 11/22/2019 | 10/11/2019 - Guardian Fueling - INV#SRVCE2285597 - Pump Out | 830.00 | 0.00 | 21,448.21 |
| 11/26/2019 | 9/30/2019 - 7G Environmental - INV#4371 - Monthly Visual Inspection | 75.00 | 0.00 | 21,523.21 |
| 11/26/2019 | 10/30/2019 - 7G Environmental - INV#4496 - Monthly Visual Inspection | 75.00 | 0.00 | 21,598.21 |
| 12/01/2019 | NETWORK SOLUTIONS ESTIMATE (12/2019) | 10.00 | 0.00 | 21,608.21 |
| 12/01/2019 | PP TAX ESTIMATE (12/2019) | 404.95 | 0.00 | 22,013.16 |
| 12/01/2019 | DEALER RENT - PERSONAL (12/2019) | 14,700.00 | 0.00 | 36,713.16 |
| 12/31/2019 | PP TAX RECOVERY (08/2019 - 12/2019) | -596.54 | 0.00 | 36,116.62 |
| 12/31/2019 | RE TAX EXPENSE (08/2019 - 12/2019) | 34.00 | 0.00 | 36,150.62 |
| 12/31/2019 | NETWORK SOLUTIONS RECOVERY (08/2019 - 12/2019) | 95.97 | 0.00 | 36,246.59 |
| 12/31/2019 | NETWORK SOLUTIONS RECOVERY (08/2019 - 12/2019) | 14.00 | 0.00 | 36,260.59 |
| 01/01/2020 | NETWORK SOLUTIONS ESTIMATE (01/2020) | 10.00 | 0.00 | 36,270.59 |
| 01/01/2020 | PP TAX ESTIMATE (01/2020) | 404.95 | 0.00 | 36,675.54 |
| 01/01/2020 | DEALER RENT - PERSONAL (01/2020) | 14,700.00 | 0.00 | 51,375.54 |
| 02/01/2020 | NETWORK SOLUTIONS ESTIMATE (02/2020) | 10.00 | 0.00 | 51,385.54 |
| 02/01/2020 | PP TAX ESTIMATE (02/2020) | 404.95 | 0.00 | 51,790.49 |
| 02/01/2020 | DEALER RENT - PERSONAL (02/2020) | 14,700.00 | 0.00 | 66,490.49 |

| 0-30 Days | 31-60 Days | 61-90 Days | Above 90 Days | Amount Due |
|---|---|---|---|---|
| 30,229.90 | 143.97 | 21,588.21 | 14,528.41 | 66,490.49 |

**t CrossAmerica Partners LP**
600 Hamilton Street
Suite 500
Allentown, PA 18101

**Statement**

| | |
|---|---|
| Account | fl0134 t0001933 Universal Property Services Inc |
| Prop Name | FL0134 |
| Assigned Spaces | FUEL |

Syed Kazmi
Universal Property Services Inc
6 Lenn Road
Allentown, NJ 08501

| | |
|---|---|
| Date | 01/31/2020 |
| Payment | $ _____ |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | **Balance Forward** | | | 0.00 |
| 10/01/2019 | :ACH 269517 - Pre Authorized Payment | 0.00 | 2,015.70 | -2,015.70 |
| 10/01/2019 | PP TAX ESTIMATE (10/2019) | 47.16 | 0.00 | -1,968.54 |
| 10/01/2019 | DEALER RENT - PERSONAL (10/2019) | 1,575.00 | 0.00 | -393.54 |
| 10/01/2019 | RE TAX ESTIMATE (10/2019) | 393.54 | 0.00 | 0.00 |
| 11/01/2019 | PP TAX ESTIMATE (11/2019) | 47.16 | 0.00 | 47.16 |
| 11/01/2019 | DEALER RENT - PERSONAL (11/2019) | 1,575.00 | 0.00 | 1,622.16 |
| 11/01/2019 | RE TAX ESTIMATE (11/2019) | 393.54 | 0.00 | 2,015.70 |
| 11/01/2019 | NETWORK SOLUTIONS ESTIMATE (10/2019) | 10.00 | 0.00 | 2,025.70 |
| 11/01/2019 | NETWORK SOLUTIONS ESTIMATE (11/2019) | 10.00 | 0.00 | 2,035.70 |
| 11/04/2019 | :ACH 280717 - Pre Authorized Payment NSFed by ctrl# 95504 NSF | 0.00 | 2,015.70 | 20.00 |
| 11/07/2019 | :ACH 280717 - NSF receipt Ctrl# 94452 NSF | 0.00 | -2,015.70 | 2,035.70 |
| 11/19/2019 | 10/1/2019 - Verifone - INV#3358964 - Help Desk | 67.31 | 0.00 | 2,103.01 |
| 11/26/2019 | 9/30/2019 - 7G Environmental - INV#4371 - Monthly Visual Inspection | 75.00 | 0.00 | 2,178.01 |
| 11/26/2019 | 10/30/2019 - 7G Environmental - INV#4496 - Monthly Visual Inspection | 75.00 | 0.00 | 2,253.01 |
| 12/01/2019 | NETWORK SOLUTIONS ESTIMATE (12/2019) | 10.00 | 0.00 | 2,263.01 |
| 12/01/2019 | PP TAX ESTIMATE (12/2019) | 47.16 | 0.00 | 2,310.17 |
| 12/01/2019 | DEALER RENT - PERSONAL (12/2019) | 1,575.00 | 0.00 | 3,885.17 |
| 12/01/2019 | RE TAX ESTIMATE (12/2019) | 393.54 | 0.00 | 4,278.71 |
| 12/31/2019 | PP TAX RECOVERY (08/2019 - 12/2019) | -69.98 | 0.00 | 4,208.73 |
| 12/31/2019 | RE TAX EXPENSE (08/2019 - 12/2019) | 628.54 | 0.00 | 4,837.27 |
| 12/31/2019 | NETWORK SOLUTIONS RECOVERY (08/2019 - 12/2019) | 95.08 | 0.00 | 4,932.35 |
| 12/31/2019 | NETWORK SOLUTIONS RECOVERY (08/2019 - 12/2019) | 13.90 | 0.00 | 4,946.25 |
| 01/01/2020 | NETWORK SOLUTIONS ESTIMATE (01/2020) | 10.00 | 0.00 | 4,956.25 |
| 01/01/2020 | PP TAX ESTIMATE (01/2020) | 47.16 | 0.00 | 5,003.41 |
| 01/01/2020 | DEALER RENT - PERSONAL (01/2020) | 1,575.00 | 0.00 | 6,578.41 |
| 01/01/2020 | RE TAX ESTIMATE (01/2020) | 393.54 | 0.00 | 6,971.95 |
| 02/01/2020 | NETWORK SOLUTIONS ESTIMATE (02/2020) | 10.00 | 0.00 | 6,981.95 |
| 02/01/2020 | PP TAX ESTIMATE (02/2020) | 47.16 | 0.00 | 7,029.11 |
| 02/01/2020 | DEALER RENT - PERSONAL (02/2020) | 1,575.00 | 0.00 | 8,604.11 |
| 02/01/2020 | RE TAX ESTIMATE (02/2020) | 393.54 | 0.00 | 8,997.65 |

| 0-30 Days | 31-60 Days | 61-90 Days | Above 90 Days | Amount Due |
|---|---|---|---|---|
| 4,051.40 | 737.52 | 2,243.01 | 1,965.72 | 8,997.65 |

**t CrossAmerica Partners LP**
600 Hamilton Street
Suite 500
Allentown, PA 18101

| | |
|---|---|
| **Statement** | |
| **Account** | fl0146 t0001989 Universal Property Services, Inc. |
| **Prop Name** | FL0146 |
| **Assigned Spaces** | FUEL |

Syed Karmi
Universal Property Services, Inc.
6 Lenn Road
Allentown, NJ 08501

| | |
|---|---|
| **Date** | 01/31/2020 |
| **Payment** | $ |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | **Balance Forward** | | | 0.00 |
| 10/01/2019 | :ACH-269558 - Pre-Authorized Payment | 0.00 | 4,622.71 | -4,622.71 |
| 10/01/2019 | PP TAX ESTIMATE (10/2019) | 105.38 | 0.00 | -4,517.33 |
| 10/01/2019 | DEALER RENT - PERSONAL (10/2019) | 3,975.00 | 0.00 | -542.33 |
| 10/01/2019 | RE TAX ESTIMATE (10/2019) | 542.33 | 0.00 | 0.00 |
| 10/17/2019 | 8/31/2019 - Guardian Fueling - INV#SRVCE2271953 - POS | 389.80 | 0.00 | 389.80 |
| 11/01/2019 | PP TAX ESTIMATE (11/2019) | 105.38 | 0.00 | 495.18 |
| 11/01/2019 | DEALER RENT - PERSONAL (11/2019) | 3,975.00 | 0.00 | 4,470.18 |
| 11/01/2019 | RE TAX ESTIMATE (11/2019) | 542.33 | 0.00 | 5,012.51 |
| 11/01/2019 | NETWORK SOLUTIONS ESTIMATE (10/2019) | 125.00 | 0.00 | 5,137.51 |
| 11/01/2019 | NETWORK SOLUTIONS ESTIMATE (11/2019) | 125.00 | 0.00 | 5,262.51 |
| 11/04/2019 | :ACH-280718 - Pre-Authorized Payment NSFed by ctrl# 95505 NSF | 0.00 | 5,012.51 | 250.00 |
| 11/07/2019 | :ACH-280718 - NSF receipt Ctl# 94453 NSF | 0.00 | -5,012.51 | 5,262.51 |
| 11/26/2019 | 9/30/2019 - 7G Environmental - INV#4371 - Monthly Visual Inspection | 75.00 | 0.00 | 5,337.51 |
| 11/26/2019 | 10/30/2019 - 7G Environmental - INV#4496 - Monthly Visual Inspection | 75.00 | 0.00 | 5,412.51 |
| 12/01/2019 | NETWORK SOLUTIONS ESTIMATE (12/2019) | 125.00 | 0.00 | 5,537.51 |
| 12/01/2019 | PP TAX ESTIMATE (12/2019) | 105.38 | 0.00 | 5,642.89 |
| 12/01/2019 | DEALER RENT - PERSONAL (12/2019) | 3,975.00 | 0.00 | 9,617.89 |
| 12/01/2019 | RE TAX ESTIMATE (12/2019) | 542.33 | 0.00 | 10,160.22 |
| 12/31/2019 | PP TAX RECOVERY (07/2019 - 12/2019) | -139.37 | 0.00 | 10,020.85 |
| 12/31/2019 | RE TAX EXPENSE (07/2019 - 12/2019) | -717.28 | 0.00 | 9,303.57 |
| 12/31/2019 | NETWORK SOLUTIONS RECOVERY (07/2019 - 12/2019) | -230.32 | 0.00 | 9,073.25 |
| 12/31/2019 | NETWORK SOLUTIONS RECOVERY (07/2019 - 12/2019) | 16.07 | 0.00 | 9,089.32 |
| 01/01/2020 | NETWORK SOLUTIONS ESTIMATE (01/2020) | 125.00 | 0.00 | 9,214.32 |
| 01/01/2020 | PP TAX ESTIMATE (01/2020) | 105.38 | 0.00 | 9,319.70 |
| 01/01/2020 | DEALER RENT - PERSONAL (01/2020) | 3,975.00 | 0.00 | 13,294.70 |
| 01/01/2020 | RE TAX ESTIMATE (01/2020) | 542.33 | 0.00 | 13,837.03 |
| 02/01/2020 | NETWORK SOLUTIONS ESTIMATE (02/2020) | 125.00 | 0.00 | 13,962.03 |
| 02/01/2020 | PP TAX ESTIMATE (02/2020) | 105.38 | 0.00 | 14,067.41 |
| 02/01/2020 | DEALER RENT - PERSONAL (02/2020) | 3,975.00 | 0.00 | 18,042.41 |
| 02/01/2020 | RE TAX ESTIMATE (02/2020) | 542.33 | 0.00 | 18,584.74 |

| 0-30 Days | 31-60 Days | 61-90 Days | Above 90 Days | Amount Due |
|---|---|---|---|---|
| 9,495.42 | 16.07 | 4,897.71 | 4,175.54 | 18,584.74 |

**t CrossAmerica Partners LP**
600 Hamilton Street
Suite 500
Allentown, PA 18101

| | | **Statement** |
|---|---|---|
| | **Account** | fl0145 t0001991 Universal Property Services, Inc. |
| | **Prop Name** | FL0145 |
| | **Assigned Spaces** | FUEL |

Syed Kazmi
Universal Property Services, Inc.
6 Lenn Road
Allentown, NJ 08501

| | |
|---|---|
| **Date** | 01/31/2020 |
| **Payment** | $ |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | **Balance Forward** | | | 0.00 |
| 10/01/2019 | :ACH-269559 - Pre-Authorized Payment | 0.00 | 14,183.76 | -14,183.76 |
| 10/01/2019 | PP TAX ESTIMATE (10/2019) | 168.96 | 0.00 | -14,014.80 |
| 10/01/2019 | DEALER RENT - PERSONAL (10/2019) | 13,650.00 | 0.00 | -364.80 |
| 10/01/2019 | RE TAX ESTIMATE (10/2019) | 364.80 | 0.00 | 0.00 |
| 10/17/2019 | 8/30/2019 - Guardian Fueling - INV#SRVCE2274431 - POS | 945.30 | 0.00 | 945.30 |
| 11/01/2019 | PP TAX ESTIMATE (11/2019) | 168.96 | 0.00 | 1,114.26 |
| 11/01/2019 | DEALER RENT - PERSONAL (11/2019) | 13,650.00 | 0.00 | 14,764.26 |
| 11/01/2019 | RE TAX ESTIMATE (11/2019) | 364.80 | 0.00 | 15,129.06 |
| 11/01/2019 | NETWORK SOLUTIONS ESTIMATE (10/2019) | 125.00 | 0.00 | 15,254.06 |
| 11/01/2019 | NETWORK SOLUTIONS ESTIMATE (11/2019) | 125.00 | 0.00 | 15,379.06 |
| 11/04/2019 | :ACH-280719 - Pre-Authorized Payment NSFed by ctrl# 95506 NSF | 0.00 | 15,129.06 | 250.00 |
| 11/07/2019 | :ACH-280719 - NSF receipt Ctrl# 94454 NSF | 0.00 | -15,129.06 | 15,379.06 |
| 11/19/2019 | 10/1/2019 - Verifone - INV#3358964 - Help Desk | 67.32 | 0.00 | 15,446.38 |
| 11/19/2019 | 10/10/2019 - Guardian Fueling - INV#SRVCE22845 - Dispensers | 327.00 | 0.00 | 15,773.38 |
| 11/26/2019 | 9/30/2019 - 7G Environmental - INV#4371 - Monthly Visual Inspection | 75.00 | 0.00 | 15,848.38 |
| 11/26/2019 | 10/30/2019 - 7G Environmental - INV#4496 - Monthly Visual Inspection | 75.00 | 0.00 | 15,923.38 |
| 11/26/2019 | 11/1/2019 - Titan Cloud - INV#INV0458 - Monthly Titan Monitoring | 3.00 | 0.00 | 15,926.38 |
| 12/01/2019 | NETWORK SOLUTIONS ESTIMATE (12/2019) | 125.00 | 0.00 | 16,051.38 |
| 12/01/2019 | PP TAX ESTIMATE (12/2019) | 168.96 | 0.00 | 16,220.34 |
| 12/01/2019 | DEALER RENT - PERSONAL (12/2019) | 13,650.00 | 0.00 | 29,870.34 |
| 12/01/2019 | RE TAX ESTIMATE (12/2019) | 364.80 | 0.00 | 30,235.14 |
| 12/31/2019 | PP TAX RECOVERY (07/2019 - 12/2019) | -223.46 | 0.00 | 30,011.68 |
| 12/31/2019 | RE TAX EXPENSE (07/2019 - 12/2019) | -482.48 | 0.00 | 29,529.20 |
| 12/31/2019 | NETWORK SOLUTIONS RECOVERY (07/2019 - 12/2019) | -230.32 | 0.00 | 29,298.88 |
| 12/31/2019 | NETWORK SOLUTIONS RECOVERY (07/2019 - 12/2019) | 16.07 | 0.00 | 29,314.95 |
| 01/01/2020 | NETWORK SOLUTIONS ESTIMATE (01/2020) | 125.00 | 0.00 | 29,439.95 |
| 01/01/2020 | PP TAX ESTIMATE (01/2020) | 168.96 | 0.00 | 29,608.91 |
| 01/01/2020 | DEALER RENT - PERSONAL (01/2020) | 13,650.00 | 0.00 | 43,258.91 |
| 01/01/2020 | RE TAX ESTIMATE (01/2020) | 364.80 | 0.00 | 43,623.71 |
| 02/01/2020 | NETWORK SOLUTIONS ESTIMATE (02/2020) | 125.00 | 0.00 | 43,748.71 |
| 02/01/2020 | PP TAX ESTIMATE (02/2020) | 168.96 | 0.00 | 43,917.67 |
| 02/01/2020 | DEALER RENT - PERSONAL (02/2020) | 13,650.00 | 0.00 | 57,567.67 |
| 02/01/2020 | RE TAX ESTIMATE (02/2020) | 364.80 | 0.00 | 57,932.47 |

| 0-30 Days | 31-60 Days | 61-90 Days | Above 90 Days | Amount Due |
|---|---|---|---|---|
| 28,617.52 | 16.07 | 14,856.08 | 14,442.80 | 57,932.47 |

dotloop signature verification: dtlp.us/Km6P-Gjbo-QlzC

**t CrossAmerica Partners LP**
600 Hamilton Street
Suite 500
Allentown, PA 18101

**Statement**

| | |
|---|---|
| **Account** | fl0138 t0001992 Universal Property Services, Inc. |
| **Prop Name** | FL0138 |
| **Assigned Spaces** | FUEL |

Syed Kazmi
Universal Property Services, Inc.
6 Lenn Road
Allentown, NJ 08501

| | |
|---|---|
| **Date** | 01/31/2020 |
| **Payment** | $ _____ |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | **Balance Forward** | | | 0.00 |
| 10/01/2019 | :ACH-269560 - Pre-Authorized Payment | 0.00 | 8,467.10 | -8,467.10 |
| 10/01/2019 | PP TAX ESTIMATE (10/2019) | 61.46 | 0.00 | -8,405.64 |
| 10/01/2019 | DEALER RENT - PERSONAL (10/2019) | 7,875.00 | 0.00 | -530.64 |
| 10/01/2019 | RE TAX ESTIMATE (10/2019) | 530.64 | 0.00 | 0.00 |
| 11/01/2019 | PP TAX ESTIMATE (11/2019) | 61.46 | 0.00 | 61.46 |
| 11/01/2019 | DEALER RENT - PERSONAL (11/2019) | 7,875.00 | 0.00 | 7,936.46 |
| 11/01/2019 | RE TAX ESTIMATE (11/2019) | 530.64 | 0.00 | 8,467.10 |
| 11/01/2019 | NETWORK SOLUTIONS ESTIMATE (10/2019) | 70.00 | 0.00 | 8,537.10 |
| 11/01/2019 | NETWORK SOLUTIONS ESTIMATE (11/2019) | 70.00 | 0.00 | 8,607.10 |
| 11/04/2019 | :ACH-280720 - Pre-Authorized Payment NSFed by ctrl# 95507 NSF | 0.00 | 8,467.10 | 140.00 |
| 11/07/2019 | :ACH-280720 - NSF receipt Ctrl# 94455 NSF | 0.00 | -8,467.10 | 8,607.10 |
| 11/18/2019 | 9/30/2019 - Guardian Fueling - INV#SRVCEZ285571 - POS | 567.50 | 0.00 | 9,174.60 |
| 11/19/2019 | 10/1/2019 - Verifone - INV#3358964 - Help Desk | 67.32 | 0.00 | 9,241.92 |
| 11/26/2019 | 9/30/2019 - 7G Environmental - INV#4371 - Monthly Visual Inspection | 75.00 | 0.00 | 9,316.92 |
| 11/26/2019 | 10/30/2019 - 7G Environmental - INV#4496 - Monthly Visual Inspection | 75.00 | 0.00 | 9,391.92 |
| 11/26/2019 | 10/30/2019 - 7G Environmental - INV#4496 - Monthly Visual Inspection | 75.00 | 0.00 | 9,466.92 |
| 11/26/2019 | 11/1/2019 - Titan Cloud - INV#INV0458 - Monthly Titan Monitoring | 3.00 | 0.00 | 9,469.92 |
| 12/01/2019 | NETWORK SOLUTIONS ESTIMATE (12/2019) | 70.00 | 0.00 | 9,539.92 |
| 12/01/2019 | PP TAX ESTIMATE (12/2019) | 61.46 | 0.00 | 9,601.38 |
| 12/01/2019 | DEALER RENT - PERSONAL (12/2019) | 7,875.00 | 0.00 | 17,476.38 |
| 12/01/2019 | RE TAX ESTIMATE (12/2019) | 530.64 | 0.00 | 18,007.02 |
| 12/31/2019 | PP TAX RECOVERY (07/2019 - 12/2019) | -80.62 | 0.00 | 17,926.40 |
| 12/31/2019 | RE TAX EXPENSE (07/2019 - 12/2019) | -696.11 | 0.00 | 17,230.29 |
| 12/31/2019 | NETWORK SOLUTIONS RECOVERY (07/2019 - 12/2019) | -26.07 | 0.00 | 17,204.22 |
| 01/01/2020 | NETWORK SOLUTIONS ESTIMATE (01/2020) | 70.00 | 0.00 | 17,274.22 |
| 01/01/2020 | PP TAX ESTIMATE (01/2020) | 61.46 | 0.00 | 17,335.68 |
| 01/01/2020 | DEALER RENT - PERSONAL (01/2020) | 7,875.00 | 0.00 | 25,210.68 |
| 01/01/2020 | RE TAX ESTIMATE (01/2020) | 530.64 | 0.00 | 25,741.32 |
| 02/01/2020 | NETWORK SOLUTIONS ESTIMATE (02/2020) | 70.00 | 0.00 | 25,811.32 |
| 02/01/2020 | PP TAX ESTIMATE (02/2020) | 61.46 | 0.00 | 25,872.78 |
| 02/01/2020 | DEALER RENT - PERSONAL (02/2020) | 7,875.00 | 0.00 | 33,747.78 |
| 02/01/2020 | RE TAX ESTIMATE (02/2020) | 530.64 | 0.00 | 34,278.42 |

| 0-30 Days | 31-60 Days | 61-90 Days | Above 90 Days | Amount Due |
|---|---|---|---|---|
| 17,074.20 | 0.00 | 9,399.92 | 7,804.30 | 34,278.42 |

**t CrossAmerica Partners LP**
600 Hamilton Street
Suite 500
Allentown, PA 18101

**Statement**

| | |
|---|---|
| **Account** | f0141 t0001996 Universal Property Services, Inc. |
| **Prop Name** | FL0141 |
| **Assigned Spaces** | FUEL |

Syed Karmi
Universal Property Services, Inc.
6 Lenn Road
Allentown, NJ 08501

| | |
|---|---|
| **Date** | 01/31/2020 |
| **Payment** | $ _____ |

| Date | Description | Charges | Payments | Balance |
|------|-------------|--------:|---------:|--------:|
| | **Balance Forward** | | | 0.00 |
| 10/01/2019 | :ACH-269523 - Pre-Authorized Payment | 0.00 | 8,017.25 | -8,017.25 |
| 10/01/2019 | PP TAX ESTIMATE (10/2019) | 74.02 | 0.00 | -7,943.23 |
| 10/01/2019 | DEALER RENT - PERSONAL (10/2019) | 7,350.00 | 0.00 | -593.23 |
| 10/01/2019 | RE TAX ESTIMATE (10/2019) | 593.23 | 0.00 | 0.00 |
| 11/01/2019 | PP TAX ESTIMATE (11/2019) | 74.02 | 0.00 | 74.02 |
| 11/01/2019 | DEALER RENT - PERSONAL (11/2019) | 7,350.00 | 0.00 | 7,424.02 |
| 11/01/2019 | RE TAX ESTIMATE (11/2019) | 593.23 | 0.00 | 8,017.25 |
| 11/01/2019 | NETWORK SOLUTIONS ESTIMATE (10/2019) | 125.00 | 0.00 | 8,142.25 |
| 11/01/2019 | NETWORK SOLUTIONS ESTIMATE (11/2019) | 125.00 | 0.00 | 8,267.25 |
| 11/04/2019 | :ACH-280721 - Pre-Authorized Payment NSFed by ctrl# 95508 NSF | 0.00 | 8,017.25 | 250.00 |
| 11/07/2019 | :ACH-280721 - NSF receipt Ctrl# 94456 NSF | 0.00 | -8,017.25 | 8,267.25 |
| 11/26/2019 | 9/30/2019 - 7G Environmental - INV#4371 - Monthly Visual Inspection | 75.00 | 0.00 | 8,342.25 |
| 11/26/2019 | 10/30/2019 - 7G Environmental - INV#4496 - Monthly Visual Inspection | 75.00 | 0.00 | 8,417.25 |
| 11/26/2019 | 11/1/2019 - Titan Cloud - INV#INV0458 - Monthly Titan Monitoring | 3.00 | 0.00 | 8,420.25 |
| 12/01/2019 | NETWORK SOLUTIONS ESTIMATE (12/2019) | 125.00 | 0.00 | 8,545.25 |
| 12/01/2019 | PP TAX ESTIMATE (12/2019) | 74.02 | 0.00 | 8,619.27 |
| 12/01/2019 | DEALER RENT - PERSONAL (12/2019) | 7,350.00 | 0.00 | 15,969.27 |
| 12/01/2019 | RE TAX ESTIMATE (12/2019) | 593.23 | 0.00 | 16,562.50 |
| 12/31/2019 | PP TAX RECOVERY (07/2019 - 12/2019) | -96.31 | 0.00 | 16,466.19 |
| 12/31/2019 | RE TAX EXPENSE (07/2019 - 12/2019) | -771.84 | 0.00 | 15,694.35 |
| 12/31/2019 | NETWORK SOLUTIONS RECOVERY (07/2019 - 12/2019) | -228.47 | 0.00 | 15,465.88 |
| 12/31/2019 | NETWORK SOLUTIONS RECOVERY (07/2019 - 12/2019) | 16.28 | 0.00 | 15,482.16 |
| 01/01/2020 | NETWORK SOLUTIONS ESTIMATE (01/2020) | 125.00 | 0.00 | 15,607.16 |
| 01/01/2020 | PP TAX ESTIMATE (01/2020) | 74.02 | 0.00 | 15,681.18 |
| 01/01/2020 | DEALER RENT - PERSONAL (01/2020) | 7,350.00 | 0.00 | 23,031.18 |
| 01/01/2020 | RE TAX ESTIMATE (01/2020) | 593.23 | 0.00 | 23,624.41 |
| 02/01/2020 | NETWORK SOLUTIONS ESTIMATE (02/2020) | 125.00 | 0.00 | 23,749.41 |
| 02/01/2020 | PP TAX ESTIMATE (02/2020) | 74.02 | 0.00 | 23,823.43 |
| 02/01/2020 | DEALER RENT - PERSONAL (02/2020) | 7,350.00 | 0.00 | 31,173.43 |
| 02/01/2020 | RE TAX ESTIMATE (02/2020) | 593.23 | 0.00 | 31,766.66 |

| 0-30 Days | 31-60 Days | 61-90 Days | Above 90 Days | Amount Due |
|-----------|-----------|-----------|---------------|-----------|
| 16,284.50 | 16.28 | 8,295.25 | 7,170.63 | 31,766.66 |

dotloop signature verification: dtlp.us/Km6P-GJbo-QlzC

**Exhibit D**

**Supply Agreement Charge Statements**

## EFT Notifications



**Lehigh Gas Wholesale, LLC**
600 Hamilton Street
Suite 500
Allentown, PA 18101
(610) 625-8000

| UNIVERSAL PROPERTY SERVICES INC-FL0131 | | Account No: 10827 |
| 2413 US Highway 301 N | | Reference No.: D-79001-010220 |
| Ellenton, FL 34222 | | Date: 01/02/2020 |

| Date | Location | Reference No. | P.O No. or Additional Info | Original Amount | Discounts & Fees | Net Amount | Remaining Balance |
|------|----------|---------------|----------------------------|-----------------|------------------|------------|-------------------|
| 12/20/2019 | UNIVERSAL PR | INV-00916785 | 8559539 | 15,003.05 | | 15,003.05 | |
| 12/21/2019 | FL0131 | MOT12479744000-12 | Motiva Credit Cards | 3,642.15- | 81.71 | 3,560.44- | |
| 12/22/2019 | FL0131 | MOT12479744000-12 | Motiva Credit Cards | 2,285.21- | 48.32 | 2,236.89- | |
| 12/23/2019 | FL0131 | MOT12479744000-12 | Motiva Credit Cards | 1,944.13- | 41.86 | 1,902.27- | |
| 12/24/2019 | FL0131 | MOT12479744000-12 | Motiva Credit Cards | 2,683.27- | 60.04 | 2,623.23- | |
| 12/25/2019 | FL0131 | MOT12479744000-12 | Motiva Credit Cards | 2,025.66- | 41.82 | 1,983.84- | |
| 12/26/2019 | FL0131 | MOT12479744000-12 | Motiva Credit Cards | 804.12- | 16.28 | 787.84- | |
| 12/27/2019 | UNIVERSAL PR | INV-00917070 | 8566705 | 17,262.38 | | 17,262.38 | |
| 12/27/2019 | FL0131 | MOT12479744000-12 | Motiva Credit Cards | 2,582.37- | 57.16 | 2,525.21- | |
| 12/29/2019 | FL0131 | MOT12479744000-12 | Motiva Credit Cards | 10,275.46- | 220.70 | 10,054.76- | |
| 12/30/2019 | UNIVERSAL PR | INV-00917075 | 8569764 | 22,293.21 | | 22,293.21 | |
| 12/30/2019 | FL0131 | MOT12479744000-12 | Motiva Credit Cards | 4,234.76- | 90.51 | 4,144.25- | |
| 12/31/2019 | FL0131 | MOT12479744000-12 | Motiva Credit Cards | 5,345.01- | 113.26 | 5,231.75- | |
| 01/01/2020 | FL0131 | MOT12479744000-01 | Motiva Credit Cards | 5,570.87- | 125.66 | 5,445.21- | |
| 01/02/2020 | FL0131 | MOT12479744000-01 | Motiva Credit Cards | 2,866.48- | 56.92 | 2,809.56- | |

**Total Draft Amount:** 11,253.39

| New Transaction Summary | Subtotal | Amount |
|-------------------------|----------|--------|
| Fuel | | 54,558.64 |
| Motiva Credit Cards | | 43,305.25- |
| Gross Credit Cards | 44,259.49- | |
| Credit Card Fees | 954.24 | |

*Returned Draft   $11,253.39*

*Fee   250.00*

*Total Due   $11,503.39*

| Your account will be drafted on or after: | 01/03/2020 | Total Draft Amount: | 11,253.39 |

## EFT Notifications



**Lehigh Gas Wholesale, LLC**
600 Hamilton Street
Suite 500
Allentown, PA 18101
(610) 625-8000

| | |
|---|---|
| UNIVERSAL PROPERTY SERVICES INC-FL0131 | Account No: 10827 |
| 2413 US Highway 301 N | Reference No.: D-79718-011720 |
| Ellenton, FL 34222 | Date: 01/17/2020 |

| Date | Location | Reference No. | P.O No. or Additional Info | Original Amount | Discounts & Fees | Net Amount | Remaining Balance |
|---|---|---|---|---|---|---|---|
| 01/02/2020 | UNIVERSAL PR | INV-00924683 | 8572782 | 17,158.05 | | 17,158.05 | |
| 01/02/2020 | UNIVERSAL PR | INV-00924683A | 8572782A | 17,110.67 | | 17,110.67 | |
| 01/02/2020 | UNIVERSAL PR | INV-00924683C | 8572782C | 17,158.05- | | 17,158.05- | |
| 01/03/2020 | FL0131 | MOT12479744000-01 Motiva Credit Cards | | 5,694.89- | 130.89 | 5,564.00- | |
| 01/04/2020 | UNIVERSAL PR | INV-00924951 | 8574024 | 17,953.49 | | 17,953.49 | |
| 01/04/2020 | FL0131 | MOT12479744000-01 Motiva Credit Cards | | 5,198.77- | 106.26 | 5,092.51- | |
| 01/05/2020 | UNIVERSAL PR | INV-00924685 | 8575393 | 19,625.65 | | 19,625.65 | |
| 01/05/2020 | FL0131 | MOT12479744000-01 Motiva Credit Cards | | 15,284.69- | 325.76 | 14,958.93- | |
| 01/06/2020 | FL0131 | MOT12479744000-01 Motiva Credit Cards | | 7,615.94- | 155.54 | 7,460.40- | |
| 01/07/2020 | FL0131 | MOT12479744000-01 Motiva Credit Cards | | 10,540.35- | 228.38 | 10,311.97- | |
| 01/08/2020 | UNIVERSAL PR | INV-00920565 | ShLoy 12/19-1/1/20 | 282.15- | | 282.15- | |
| 01/08/2020 | UNIVERSAL PR | INV-00920566 | ShLoy 12/19-1/1/20B | 12.76- | | 12.76- | |
| 01/08/2020 | FL0131 | MOT12479744000-01 Motiva Credit Cards | | 6,484.17- | 143.13 | 6,341.04- | |
| 01/09/2020 | UNIVERSAL PR | INV-00924684 | 8579549 | 19,796.68 | | 19,796.68 | |
| 01/09/2020 | FL0131 | MOT12479744000-01 Motiva Credit Cards | | 800.16- | 18.71 | 781.45- | |
| 01/10/2020 | FL0131 | MOT12479744000-01 Motiva Credit Cards | | 878.10- | 21.92 | 856.18- | |
| 01/11/2020 | FL0131 | MOT12479744000-01 Motiva Credit Cards | | 7,696.67- | 162.91 | 7,533.76- | |
| 01/12/2020 | FL0131 | MOT12479744000-01 Motiva Credit Cards | | 6,704.03- | 146.84 | 6,557.19- | |
| 01/13/2020 | FL0131 | MOT12479744000-01 Motiva Credit Cards | | 3,950.49- | 86.99 | 3,863.50- | |
| 01/14/2020 | UNIVERSAL PR | INV-00923494 | 1-20 Network Fee | 96.35 | | 96.35 | |
| 01/14/2020 | FL0131 | MOT12479744000-01 Motiva Credit Cards | | 561.23- | 13.79 | 547.44- | |
| 01/15/2020 | FL0131 | MOT12479744000-01 Motiva Credit Cards | | 734.51- | 16.71 | 717.80- | |
| 01/16/2020 | FL0131 | MOT12479744000-01 Motiva Credit Cards | | 619.58- | 17.34 | 602.24- | |
| 01/17/2020 | FL0131 | MOT12479744000-01 Motiva Credit Cards | | 654.04- | 16.06 | 637.98- | |
| | | | | **Total Draft Amount:** | | **2,461.54** | |

| New Transaction Summary | Subtotal | Amount |
|---|---|---|
| Bill to Dealer | | 294.91- |
| Fuel | | 74,486.49 |
| Motiva Credit Cards | | 71,826.39- |
| Gross Credit Cards | 73,417.62- | |
| Credit Card Fees | 1,591.23 | |
| POS Fees | | 96.35 |

*Returned Draft    $2,461.54*
*Fee    250 -*
*Total Due    $2,711.54*

| | | | |
|---|---|---|---|
| Your account will be drafted on or after: | 01/21/2020 | Total Draft Amount: | 2,461.54 |

## EFT Notifications



**Lehigh Gas Wholesale, LLC**
600 Hamilton Street
Suite 500
Allentown, PA 18101
(610) 625-8000

| UNIVERSAL PROPERTY SERVICES INC-FL0138 | | |
|---|---|---|
| 3232 W Silver Springs Blvd | | |
| Ocala, FL 34475 | | |

Account No: 10833
Reference No.: D-79443-011520
Date: 01/15/2020

| Date | Location | Reference No. | P.O No. or Additional Info | Original Amount | Discounts & Fees | Net Amount | Remaining Balance |
|---|---|---|---|---|---|---|---|
| 11/20/2019 | FL0138 | VAL98639-1120-1120 Valero Credit Cards | | 1,323.19- | 29.22 | 1,293.97- | |
| 11/21/2019 | FL0138 | VAL98639-1121-1121 Valero Credit Cards | | 855.97- | 20.23 | 835.74- | |
| 11/23/2019 | FL0138 | VAL98639-1122-1123 Valero Credit Cards | | 1,543.34- | 37.57 | 1,505.77- | |
| 11/24/2019 | FL0138 | VAL98639-1124-1124 Valero Credit Cards | | 432.94- | 7.90 | 425.04- | |
| 11/26/2019 | FL0138 | VAL98639-1125-1126 Valero Credit Cards | | 1,851.48- | 41.14 | 1,810.34- | |
| 11/28/2019 | FL0138 | VAL98639-1127-1128 Valero Credit Cards | | 1,753.26- | 37.04 | 1,716.22- | |
| 12/01/2019 | FL0138 | VAL98639-1129-1201 Valero Credit Cards | | 2,241.31- | 49.38 | 2,191.93- | |
| 12/02/2019 | FL0138 | VAL98639-1202-1202 Valero Credit Cards | | 790.20- | 20.05 | 770.15- | |
| 12/03/2019 | FL0138 | VAL98639-1203-1203 Valero Credit Cards | | 1,189.13- | 26.64 | 1,162.49- | |
| 12/03/2019 | FL0138 | VAL98639-1203-ADJ4 Valero Credit Cards | | 94.34 | | 94.34 | |
| 12/04/2019 | FL0138 | VAL98639-1204-1204 Valero Credit Cards | | 2,050.29- | 38.66 | 2,011.63- | |
| 12/05/2019 | FL0138 | VAL98639-1205-1205 Valero Credit Cards | | 1,133.93- | 23.83 | 1,110.10- | |
| 12/06/2019 | UNIVERSAL PR | INV-00903885 | VAL10-19 Network Fee | 94.34 | | 94.34 | |
| 12/06/2019 | UNIVERSAL PR | INV-00903886 | VAL11-19 Network Fee | 94.34 | | 94.34 | |
| 12/08/2019 | FL0138 | VAL98639-1206-1208 Valero Credit Cards | | 1,459.50- | 32.34 | 1,427.16- | |
| 12/09/2019 | FL0138 | VAL98639-1209-1209 Valero Credit Cards | | 712.21- | 16.25 | 695.96- | |
| 12/10/2019 | UNIVERSAL PR | INV-00914816 | 8549348 | 18,733.31 | | 18,733.31 | |
| 12/10/2019 | FL0138 | VAL98639-1210-1210 Valero Credit Cards | | 553.90- | 13.69 | 540.21- | |
| 12/11/2019 | FL0138 | VAL98639-1211-1211 Valero Credit Cards | | 506.35- | 14.88 | 491.47- | |
| 12/12/2019 | FL0138 | VAL98639-1212-1212 Valero Credit Cards | | 613.27- | 16.86 | 596.41- | |
| 12/14/2019 | FL0138 | VAL98639-1213-1214 Valero Credit Cards | | 1,751.42- | 36.73 | 1,714.69- | |
| 12/16/2019 | FL0138 | VAL98639-1215-1216 Valero Credit Cards | | 814.22- | 18.72 | 795.50- | |
| 12/18/2019 | FL0138 | VAL98639-1217-1218 Valero Credit Cards | | 2,438.13- | 48.03 | 2,390.10- | |
| 12/19/2019 | FL0138 | VAL98639-1219-1219 Valero Credit Cards | | 525.73- | 11.39 | 514.34- | |
| 12/19/2019 | FL0138 | VAL98639-1219-ADJ4 Valero Credit Cards | | 50.00 | | 50.00 | |
| 12/22/2019 | FL0138 | VAL98639-1220-1222 Valero Credit Cards | | 979.71- | 18.53 | 961.18- | |
| 12/23/2019 | FL0138 | VAL98639-1223-1223 Valero Credit Cards | | 303.73- | 8.31 | 295.42- | |
| 12/24/2019 | FL0138 | VAL98639-1224-1224 Valero Credit Cards | | 361.75- | 8.32 | 353.43- | |
| 12/26/2019 | FL0138 | VAL98639-1225-1226 Valero Credit Cards | | 514.91- | 12.73 | 502.18- | |
| 12/29/2019 | FL0138 | VAL98639-1227-1229 Valero Credit Cards | | 729.08- | 19.61 | 709.47- | |
| 01/01/2020 | FL0138 | VAL98639-1230-0101 Valero Credit Cards | | 1,210.43- | 28.28 | 1,182.15- | |
| 01/02/2020 | FL0138 | VAL98639-0102-0102 Valero Credit Cards | | 329.37- | 5.20 | 324.17- | |
| 01/03/2020 | FL0138 | VAL98639-0103-0103 Valero Credit Cards | | 526.38- | 8.49 | 517.89- | |
| 01/03/2020 | FL0138 | VAL98639-0103-ADJ4 Valero Credit Cards | | 94.34 | | 94.34 | |
| 01/04/2020 | FL0138 | VAL98639-0104-0104 Valero Credit Cards | | 654.34- | 7.95 | 646.39- | |
| 01/05/2020 | FL0138 | VAL98639-0103-0105 Valero Credit Cards | | 1,180.72- | 16.44 | 1,164.28- | |
| 01/05/2020 | FL0138 | VAL98639-0103-1051 Valero Credit Cards | | 1,180.72 | 16.44- | 1,164.28 | |
| 01/06/2020 | FL0138 | VAL98639-0106-0106 Valero Credit Cards | | 369.79- | 4.68 | 365.11- | |
| 01/08/2020 | FL0138 | VAL98639-0107-0108 Valero Credit Cards | | 777.88- | 12.83 | 765.05- | |
| 01/09/2020 | FL0138 | VAL98639-0109-0109 Valero Credit Cards | | 476.44- | 7.17 | 469.27- | |
| 01/11/2020 | UNIVERSAL PR | INV-00923567 | 8580858 | 21,556.35 | | 21,556.35 | |
| 01/12/2020 | FL0138 | VAL98639-0110-0112 Valero Credit Cards | | 1,115.01- | 15.46 | 1,099.55- | |
| 01/13/2020 | FL0138 | VAL98639-0113-0113 Valero Credit Cards | | 1,342.48- | 20.71 | 1,321.77- | |

## EFT Notifications


**LEHIGH GAS**
WHOLESALE

**Lehigh Gas Wholesale, LLC**
600 Hamilton Street
Suite 500
Allentown, PA 18101
(610) 625-8000

Page: 2
Account No: 10833

| Date | Location | Reference No. | P.O No. or Additional Info | Original Amount | Discounts & Fees | Net Amount | Remaining Balance |
|------|----------|---------------|----------------------------|-----------------|------------------|------------|-------------------|
| 01/14/2020 | FL0138 | VAL98639-0114-0114 | Valero Credit Cards | 667.95- | 10.04 | 657.91- | |
| | | | | Total Draft Amount: | | 6,546.86 | |

| New Transaction Summary | Subtotal | Amount | | | | | |
|------|----------|--------|--|--|--|--|--|
| Fuel | | 40,289.66 | | | | | |
| POS Fees | | 188.68 | | | | | |
| VAL Credit Cards | | 33,931.48- | | | | | |
| Gross Credit Cards | 34,660.34- | | | | | | |
| Credit Card Fees | 728.86 | | | | | | |

*[handwritten:]*
Returned Draft $6,546.86
Fee 250 —
Total Due $6,796.86

| | | | |
|--|--|--|--|
| **Your account will be drafted on or after:** | 01/16/2020 | **Total Draft Amount:** | 6,546.86 |

## EFT Notifications



**LEHIGH GAS**
WHOLESALE

**Lehigh Gas Wholesale, LLC**
600 Hamilton Street
Suite 500
Allentown, PA 18101
(610) 625-8000

| UNIVERSAL PROPERTY SERVICES INC-FL0141 | | |
|---|---|---|
| 239 N Center St | **Account No:** 10835 | |
| Pierson, FL 32180 | **Reference No.:** D-79042-010320 | |
| | **Date:** 01/03/2020 | |

| Date | Location | Reference No. | P.O No. or Additional Info | Original Amount | Discounts & Fees | Net Amount | Remaining Balance |
|---|---|---|---|---|---|---|---|
| 12/27/2019 | FL0141 | 122619CREDIT8 | Unbranded Credit Carc | 2,111.29- | 53.01 | 2,058.28- | |
| 12/30/2019 | FL0141 | 122719CREDIT8 | Unbranded Credit Carc | 2,006.34- | 49.57 | 1,956.77- | |
| 12/30/2019 | FL0141 | 122819CREDIT8 | Unbranded Credit Carc | 1,890.05- | 48.16 | 1,841.89- | |
| 12/30/2019 | FL0141 | 122919CREDIT8 | Unbranded Credit Carc | 1,426.25- | 35.82 | 1,390.43- | |
| 12/31/2019 | FL0141 | 123019CREDIT8 | Unbranded Credit Carc | 1,980.57- | 47.35 | 1,933.22- | |
| 12/31/2019 | UNIVERSAL PR | INV-00917529 | 9167642 | 21,721.30 | | 21,721.30 | |
| 01/02/2020 | FL0141 | 123119CREDIT8 | Unbranded Credit Carc | 2,482.03- | 59.64 | 2,422.39- | |
| 01/03/2020 | FL0141 | 010120CREDIT8 | Unbranded Credit Carc | 1,316.43- | 32.68 | 1,283.75- | |
| 01/03/2020 | FL0141 | 010220CREDIT8 | Unbranded Credit Carc | 1,464.31- | 37.48 | 1,426.83- | |
| 01/03/2020 | FL0141 | 123119CREDIT8 | Unbranded Credit Carc | 10.03- | 0.30 | 9.73- | |
| | | | | **Total Draft Amount:** | | 7,398.01 | |

| New Transaction Summary | Subtotal | Amount |
|---|---|---|
| Choice Credit Cards | | 14,323.29- |
| Gross Credit Cards | 14,687.30- | |
| Credit Card Fees | 364.01 | |
| Fuel | | 21,721.30 |

Retained Draft $ 7,398.01
Fee        250 -
total Due    $ 7,648.01

| Your account will be drafted on or after: | 01/06/2020 | Total Draft Amount: | 7,398.01 |
|---|---|---|---|

**EFT Notifications**



**LEHIGH GAS**
WHOLESALE

**Lehigh Gas Wholesale, LLC**
600 Hamilton Street
Suite 500
Allentown, PA 18101
(610) 625-8000

| UNIVERSAL PROPERTY SERVICES INC-FL0150 | | | | Account No: 10841 | | | |
| 808 S Park Ave | | | | Reference No.: D-79395-011420 | | | |
| Apopka, FL 32703 | | | | Date: 01/14/2020 | | | |

| Date | Location | Reference No. | P.O No. or Additional Info | Original Amount | Discounts & Fees | Net Amount | Remaining Balance |
|------|----------|---------------|---------------------------|-----------------|------------------|------------|-------------------|
| 01/01/2020 | UNIVERSAL PR | INV-00922916 | 8559127 | 16,456.35 | | 16,456.35 | |
| 01/14/2020 | FL0150 | MAR265355-0114-38 | Marathon Credit Cards | 1,575.74- | 33.45 | 1,542.29- | |
| | | | | **Total Draft Amount:** | | 14,914.06 | |

| New Transaction Summary | | Subtotal | | Amount | | | |
|-------------------------|--|----------|--|--------|--|--|--|
| Fuel | | | | 16,456.35 | | | |
| Marathon Credit Card | | | | 1,542.29- | | | |
| Gross Credit Cards | | 1,575.74- | | | | | |
| Credit Card Fees | | 33.45 | | | | | |

*Returned Draft $14,914.06*

*Fee        250 —*

*total Due $15,164.06*

| Your account will be drafted on or after: | 01/15/2020 | | Total Draft Amount: | 14,914.06 |

## EFT Notifications



**LEHIGH GAS**
WHOLESALE

Lehigh Gas Wholesale, LLC
600 Hamilton Street
Suite 500
Allentown, PA 18101
(610) 625-8000

| UNIVERSAL PROPERTY SERVICES INC-FL0150 | | Account No: 10841 |
| --- | --- | --- |
| 808 S Park Ave | | Reference No.: D-79833-012120 |
| Apopka, FL 32703 | | Date: 01/21/2020 |

| Date | Location | Reference No. | P.O No. or Additional Info | Original Amount | Discounts & Fees | Net Amount | Remaining Balance |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 01/14/2020 | UNIVERSAL PR | INV-00923487 | Vfone ASM1-20 | 65.00 | | 65.00 | |
| 01/15/2020 | FL0150 | MAR265355-0115-41 | Marathon Credit Cards | 1,031.01- | 23.87 | 1,007.14- | |
| 01/16/2020 | UNIVERSAL PR | INV-00926489 | 8586403 | 18,229.92 | | 18,229.92 | |
| 01/16/2020 | FL0150 | MAR265355-0116-44 | Marathon Credit Cards | 1,180.02- | 26.44 | 1,153.58- | |
| 01/17/2020 | FL0150 | MAR265355-0117-47 | Marathon Credit Cards | 1,301.32- | 28.69 | 1,272.63- | |
| 01/18/2020 | FL0150 | MAR265355-0118-49 | Marathon Credit Cards | 1,335.75- | 27.26 | 1,308.49- | |
| 01/19/2020 | FL0150 | MAR265355-0119-52 | Marathon Credit Cards | 1,599.72- | 33.49 | 1,566.23- | |
| 01/20/2020 | FL0150 | MAR265355-0120-54 | Marathon Credit Cards | 773.19- | 17.58 | 755.61- | |
| 01/21/2020 | FL0150 | MAR265355-0121-56 | Marathon Credit Cards | 877.40- | 19.18 | 858.22- | |
| | | | **Total Draft Amount:** | | | **10,373.02** | |

| New Transaction Summary | Subtotal | Amount |
| --- | --- | --- |
| Fuel | | 18,229.92 |
| Marathon Credit Card | | 7,921.90- |
| Gross Credit Cards | 8,098.41- | |
| Credit Card Fees | 176.51 | |
| POS Fees | | 65.00 |

*(handwritten)* Retained Draft $ 10,373.02
Fee 250 —
Total Due 10,623.02

| Your account will be drafted on or after: | 01/22/2020 | | Total Draft Amount: | 10,373.02 |
| --- | --- | --- | --- | --- |

dotloop signature verification: dtlp.us/g1NF-tgjA-q62s



**VIA ELECTRONIC DELIVERY/CERTIFIED MAIL**                        06/17/2020

Universal Property Services, Inc.
6 Lenn Road
Allentown, NJ 08501
Atten: Syed Kazmi

Syed Kazmi, Guarantor
6 Lenn Road
Allentown, NJ 08501

**RE:    Notice of Termination of PMPA Franchise Agreement for 127 Easton Avenue
         New Brunswick, NJ 08901 - NJ0174 (the "Marketing Premises")**

Dear Mr. Kazmi:

Please be advised that this letter serves as formal written notice of termination of that certain PMPA Franchise Agreement (the "Franchise Agreement") made by and between Universal Property Services, Inc. (the "Franchise Dealer") and Lehigh Gas Wholesale LLC, LGP Realty Holdings LP, and Lehigh Gas Wholesale Services, Inc. (collectively, "Lehigh") with an effective date of December 10, 2018 for the Marketing Premises cited above (attached for reference as Exhibit A).

Lehigh hereby terminates the Franchise Dealer, **effective immediately** (the "Termination Date"), for failure to pay the Monthly Lease Fees, failure to purchase the minimum volume of Products, failure to pay the Supply Agreement Charges, failure to maximize the sale of those Products, failure to keep all persons safe, and failure to provide an acceptable letter of credit. Capitalized terms used but not otherwise defined in this letter have the meanings given those terms in the Franchise Agreement.

This notice is provided in compliance with Section 15 U.S.C, Sections 2801 et. seq. (the "PMPA"), including, without limitation, 15 U.S.C Section 2804(b)(1).  Attached hereto is a summary statement under Section 2804(c)(3)(C).

The specific grounds for the termination are as follows (collectively, the Defaults"):

1.  Failure to pay under the Lease the monthly rent installments, taxes, network fees, utilities and environmental compliance inspection fees (together, the "Monthly Lease Fees") on the applicable due dates (Sections 2.2, 3.1 of the Lease), which according to Lehigh's records, (attached for reference as Exhibit B), reflect that Franchise Dealer has failed to pay the Monthly Lease Fees beginning in February 2020. The current YTD Combined Statements on Exhibit B show **past due Monthly Lease Fees of Twenty-Six Thousand, Eight Hundred and Sixty-Two Dollars and Forty-One Cents ($26,862.41)**.

dotloop signature verification: dtlp.us/g1NF-tgjA-q62s

2.  Failure to purchase Product since November 2019, which is a Default of the Minimum Monthly Contract Volume under Exhibit 2.1 of the Fuel Supply Agreement, and subsequent failure to maximize the sale of fuel under Section 2.1 (attached for reference as Exhibit A).

3.  Failure to pay under the Fuel Supply Agreement the Shell credit cards, POS fees, loyalty fees, and take or pay fees (together, the "Supply Agreement Charges") on the applicable due dates Sections 2.3, 2.4, 5.4, 11.1 of the Fuel Supply Agreement), which according to Lehigh's records (attached for reference as Exhibit C), reflect that Dealer has failed to pay the Supply Agreement Charges beginning in February 2020. The current YTD Combined Statements on Exhibit C show **past due Supply Agreement Charges of Nine Hundred and One Dollars and Fifty-Nine Cents ($901.59)**.

**Total Monthly Lease Fees and Supply Agreement Charges owed by type of expense:**

| Type of Expense | Total Amount Owed |
|---|---|
| Rent | $12,000 |
| Real Estate Tax | $11,877.55 |
| Network Solutions | $100.00 |
| Utilities | $1,077.96 |
| Environmental | $806.90 |
| Non-Sufficient Fund Fees (4x's) | $1,000.00 |
| Fuel & Fuel-Related Fees | 901.59 |
| | **$27,764.00** |

**All overdue sums owed to Lehigh will bear interest at the rate of eighteen percent (18%) per annum, or the maximum lawful rate, whichever is less, until paid in full.**

Furthermore, Article III, Section 3.2 Franchise Agreement Provisions of the Lease states,
"Tenant [aka the "Franchise Dealer"] shall comply, at Tenant's sole expense, with all provisions of the Related Agreements. A material breach, termination, or expiration of any of the Related Agreements shall constitute a material breach or termination of this Lease."

Jennifer Meyer, the Territory Manager for the Marketing Premise, has noted that the condition of the site is deplorable (photos attached for reference as Exhibits D, E and F). This is a Default of Article III, Section 3.5 Surrender in Good Condition of the Lease, which states that,
"Upon the expiration or termination of the Term for any reason, Tenant shall peaceably surrender to Landlord the Property in broom-clean condition and in the condition and good repair as the Property existed on the Commencement Date, subject only to reasonable wear and tear. If Tenant fails to remove any of Tenant's property upon termination or of this Lease, such property will be deemed abandoned and Landlord may dispose of Tenant's property without recourse subject to the claims of any other person in interest. Furthermore, Tenant shall surrender the property, with respect to the environmental condition of the property, in the same condition it was in at the Commencement Date of this Lease. In addition to Landlord's rights under this Section 3.5, Landlord will be entitled to compensation, as liquidated damages and not as a penalty, in the amount of $300 per day from Tenant from the date of termination or nonrenewal of this Lease until the date of final removal of all of Tenant's property and restoration of the Property to Landlord."

Further, this constitutes a Default of Article III, Section 4.5, Tenant's Obligations, identifying the Tenant as having sole responsibility to keep the Property safe for all persons.

4.   Failure to provide an acceptable letter of credit as required under Exhibit 2.3 Credit and Security Provisions of the Supply Agreement.

The Defaults are all reasonable and of material significance to the franchise relationship and in multiple instances Lehigh first acquired knowledge of the Defaults not more than sixty days of the date of this notification.  Accordingly, pursuant to Section 15 U.S.C § 2802(b)(2)(A)(i) the Lehigh may terminate the Franchise Agreement.   Termination of the Franchise Agreement also is justified pursuant to 15 U.S.C. §§ 2802(b)(2)(C) and 2802(c)(8) as a consequence of the Dealer failing to pay Lehigh in a timely manner when due all sums to which Lehigh is legally entitled.

Furthermore, Lehigh hereby makes a concurrent demand upon you under the Personal Guaranties of Performance for payment of the Liabilities as specified on the attached Exhibits B and C.

Finally, Lehigh reserves the right, without notice, to exercise all rights to apply the Security provided pursuant to the Security Agreements towards payment of any and all amounts due under the Franchise Agreement as specified on Exhibits B and C.

The rights of Lehigh expressed in this letter are without prejudice to any additional, rights, claims or remedies that Lehigh may have now or in the future, at law, in equity or otherwise, with respect to this matter, all of which are expressly reserved, including but not limited to: rights of eviction, rights to collect the balance of the rent owed for the remainder of the term, all sums incurred by us to prepare the station for re-rental, attorney's fees/costs incurred to enforce our rights under the Franchise Agreement, as well as any rights we may have to claim damages for the loss of business resulting from this default.

Notwithstanding any termination, Lehigh reserves all of its rights under the Franchise Agreement to make demand for and collect all such other amounts that presently or in the future may be due and payable under the Franchise Agreement.  Nothing in this letter should be read to limit our rights with respect to other basis for termination or other violations of the Franchise Agreement.

Regards,

*David Hrinak*

dotloop verified
06/17/20 1:02 PM EDT
OILC-LHOX-WLHL-DWAT

David Hrinak
Executive Vice President Wholesale


Enclosures


Cc: Keenan Lynch, Esq.
      Ken Frye

t CrossAmerica Partners LP
600 Hamilton Street
Suite 500
Allentown, PA 18101

**Statement**

| | |
|---|---|
| **Account** | nj0174pp t0001634 Universal Property Services Inc |
| **Prop Name** | NJ0174pp |
| **Assigned Spaces** | FUEL-PP |

Syed Kazmi
Universal Property Services Inc
60 Lenn Rd
Allentown, NJ 08501

| | |
|---|---|
| **Date** | 05/12/2020 |
| **Payment** | $ _____ |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | **Balance Forward** | | | 0.00 |
| 10/01/2019 | DEALER RENT - PERSONAL (10/2019) | 588.20 | 0.00 | -28.69 |
| 10/01/2019 | UTILITIES ESTIMATE (10/2019) | 28.69 | 0.00 | 0.00 |
| 10/18/2019 | 9/4/2019 - Tanknology - INV#LGAS02_20190904 - Monthly Visual | 78.75 | 0.00 | 78.75 |
| 10/18/2019 | 9/25/2019 - Crompco Corp - INV#752558 - Annual Testing | 500.00 | 0.00 | 578.75 |
| 11/01/2019 | :ACH-275396 - Pre-Authorized Payment | 0.00 | 1,195.64 | -616.89 |
| 11/01/2019 | DEALER RENT - PERSONAL (11/2019) | 588.20 | 0.00 | -28.69 |
| 11/01/2019 | UTILITIES ESTIMATE (11/2019) | 28.69 | 0.00 | 0.00 |
| 12/01/2019 | :ACH-286494 - Pre-Authorized Payment | 0.00 | 825.61 | -825.61 |
| 12/01/2019 | DEALER RENT - PERSONAL (12/2019) | 170.77 | 0.00 | -654.84 |
| 12/01/2019 | DEALER RENT - PERSONAL (12/2019) | 626.15 | 0.00 | -28.69 |
| 12/01/2019 | UTILITIES ESTIMATE (12/2019) | 28.69 | 0.00 | 0.00 |
| 12/31/2019 | UTILITIES RECOVERY (01/2019 - 12/2019) | 713.36 | 0.00 | 713.36 |
| 12/31/2019 | NETWORK SOLUTIONS RECOVERY (01/2019 - 12/2019) | 60.00 | 0.00 | 773.36 |
| 01/01/2020 | :ACH-294164 - Pre-Authorized Payment | 0.00 | 920.99 | -147.63 |
| 01/01/2020 | NETWORK SOLUTIONS ESTIMATE (01/2020) | 10.00 | 0.00 | -137.63 |
| 01/01/2020 | DEALER RENT - PERSONAL (01/2020) | 882.30 | 0.00 | 744.67 |
| 01/01/2020 | UTILITIES ESTIMATE (01/2020) | 28.69 | 0.00 | 773.36 |
| 01/28/2020 | 6/12/2019 - Tanknology - INV#LGAS02_20190612 - Monthly Visual | 78.75 | 0.00 | 852.11 |
| 01/28/2020 | 7/31/2019 - Tanknology - INV#LGAS02_20190731 - Monthly Visual | 78.75 | 0.00 | 930.86 |
| 02/01/2020 | :ACH-304078 - Pre-Authorized Payment NSFed by ctrl# 102736 NSF | 0.00 | 1,914.31 | -983.45 |
| 02/01/2020 | NETWORK SOLUTIONS ESTIMATE (02/2020) | 10.00 | 0.00 | -973.45 |
| 02/01/2020 | DEALER RENT - PERSONAL (02/2020) | 882.30 | 0.00 | -91.15 |
| 02/01/2020 | UTILITIES ESTIMATE (02/2020) | 91.15 | 0.00 | 0.00 |
| 02/05/2020 | :ACH-304078 - NSF receipt Ctrl# 101815 NSF | 0.00 | -1,914.31 | 1,914.31 |
| 02/05/2020 | Returned check charge | 250.00 | 0.00 | 2,164.31 |
| 02/25/2020 | 9/1/2019 - Titan Cloud - INV#INV0121 - Monthly Visual Inspection | 3.00 | 0.00 | 2,167.31 |
| 02/25/2020 | 10/1/2019 - Titan Cloud - INV#INV0342 - Monthly Visual Inspection | 3.00 | 0.00 | 2,170.31 |
| 02/25/2020 | 11/20/2019 - Tanknology - INV#LGAS02_20191120 - Monthly Visual | 78.75 | 0.00 | 2,249.06 |
| 02/27/2020 | 12/17/2019 - Crompco Corp - INV#757908 - Third Party Inspection | 485.90 | 0.00 | 2,734.96 |
| 03/01/2020 | :ACH-315399 - Pre-Authorized Payment NSFed by ctrl# 104730 NSF | 0.00 | 3,718.41 | -983.45 |
| 03/01/2020 | NETWORK SOLUTIONS ESTIMATE (03/2020) | 10.00 | 0.00 | -973.45 |
| 03/01/2020 | DEALER RENT - PERSONAL (03/2020) | 882.30 | 0.00 | -91.15 |
| 03/01/2020 | UTILITIES ESTIMATE (03/2020) | 91.15 | 0.00 | 0.00 |
| 03/04/2020 | :ACH-315399 - NSF receipt Ctrl# 103796 NSF | 0.00 | -3,718.41 | 3,718.41 |
| 03/04/2020 | Returned check charge | 250.00 | 0.00 | 3,968.41 |
| 03/26/2020 | 12/27/2019 - Tanknology - INV#LGAS02_20191227 - Monthly Visual | 78.75 | 0.00 | 4,047.16 |
| 04/01/2020 | :ACH-323054 - Pre-Authorized Payment NSFed by ctrl# 106340 | 0.00 | 5,030.61 | -983.45 |
| 04/01/2020 | NETWORK SOLUTIONS ESTIMATE (04/2020) | 10.00 | 0.00 | -973.45 |
| 04/01/2020 | DEALER RENT - PERSONAL (04/2020) | 882.30 | 0.00 | -91.15 |
| 04/01/2020 | UTILITIES ESTIMATE (04/2020) | 91.15 | 0.00 | 0.00 |

| 0-30 Days | 31-60 Days | 61-90 Days | Above 90 Days | Amount Due |
|---|---|---|---|---|
| 983.45 | 1,062.20 | 1,804.10 | 2,164.31 | 6,014.06 |

**t CrossAmerica Partners LP**
600 Hamilton Street
Suite 500
Allentown, PA 18101

**Statement**

| | |
|---|---|
| **Account** | nj0174pp t0001634 Universal Property Services Inc |
| **Prop Name** | NJ0174pp |
| **Assigned Spaces** | FUEL-PP |

Syed Kazmi
Universal Property Services Inc
60 Lenn Rd
Allentown, NJ 08501

| | |
|---|---|
| **Date** | 05/12/2020 |
| **Payment** | $ _____ |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | **Balance Forward** | | | 0.00 |
| 04/06/2020 | :ACH-323054 - NSF receipt Ctrl# 105490 Invalid/Closed Account | 0.00 | -5,030.61 | 5,030.61 |
| 05/01/2020 | :ACH-329872 - Pre-Authorized Payment NSFed by ctrl# 108092 | 0.00 | 6,014.06 | -983.45 |
| 05/01/2020 | NETWORK SOLUTIONS ESTIMATE (05/2020) | 10.00 | 0.00 | -973.45 |
| 05/01/2020 | DEALER RENT - PERSONAL (05/2020) | 882.30 | 0.00 | -91.15 |
| 05/01/2020 | UTILITIES ESTIMATE (05/2020) | 91.15 | 0.00 | 0.00 |
| 05/06/2020 | :ACH-329872 - NSF receipt Ctrl# 107401 Invalid/Closed Account | 0.00 | -6,014.06 | 6,014.06 |

| 0-30 Days | 31-60 Days | 61-90 Days | Above 90 Days | Amount Due |
|---|---|---|---|---|
| 983.45 | 1,062.20 | 1,804.10 | 2,164.31 | 6,014.06 |

t CrossAmerica Partners LP
600 Hamilton Street
Suite 500
Allentown, PA 18101

**Statement**

| | |
|---|---|
| **Account** | nj0174rp t0001635 Universal Property Services Inc |
| **Prop Name** | NJ0174rp |
| **Assigned Spaces** | FUEL-RP |

Syed Kazmi
Universal Property Services Inc
60 Lenn Rd
Allentown, NJ 08501

| | |
|---|---|
| **Date** | 05/12/2020 |
| **Payment** | $ _____ |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | **Balance Forward** | | | 0.00 |
| 12/01/2018 | RENT INCOME DEALER - REAL (12/2018) | 1,001.92 | 0.00 | 1,001.92 |
| 12/01/2018 | RE TAX ESTIMATE (12/2018) | 1,699.73 | 0.00 | 2,701.65 |
| 12/31/2018 | RE TAX EST RECOVERY (12/2018 - 12/2018) | -1,699.73 | 0.00 | 1,001.92 |
| 01/01/2019 | :ACH-210240 - EFT Payment One Time EFT Receipt | 0.00 | 6,463.45 | -5,461.53 |
| 01/01/2019 | RENT INCOME DEALER - REAL (01/2019) | 1,411.80 | 0.00 | -4,049.73 |
| 01/01/2019 | RE TAX ESTIMATE (01/2019) | 2,350.00 | 0.00 | -1,699.73 |
| 02/01/2019 | :ACH-215080 - Pre-Authorized Payment | 0.00 | 650.27 | -2,350.00 |
| 02/01/2019 | RE TAX ESTIMATE (02/2019) | 2,350.00 | 0.00 | 0.00 |
| 03/01/2019 | :ACH-221698 - Pre-Authorized Payment | 0.00 | 2,350.00 | -2,350.00 |
| 03/01/2019 | RE TAX ESTIMATE (03/2019) | 2,350.00 | 0.00 | 0.00 |
| 04/01/2019 | :ACH-227872 - Pre-Authorized Payment | 0.00 | 3,761.80 | -3,761.80 |
| 04/01/2019 | RENT INCOME DEALER - REAL (04/2019) | 1,411.80 | 0.00 | -2,350.00 |
| 04/01/2019 | RE TAX ESTIMATE (04/2019) | 2,350.00 | 0.00 | 0.00 |
| 05/01/2019 | :ACH-233524 - Pre-Authorized Payment | 0.00 | 3,761.80 | -3,761.80 |
| 05/01/2019 | RENT INCOME DEALER - REAL (05/2019) | 1,411.80 | 0.00 | -2,350.00 |
| 05/01/2019 | RE TAX ESTIMATE (05/2019) | 2,350.00 | 0.00 | 0.00 |
| 06/01/2019 | :ACH-241130 - Pre-Authorized Payment | 0.00 | 3,761.80 | -3,761.80 |
| 06/01/2019 | RENT INCOME DEALER - REAL (06/2019) | 1,411.80 | 0.00 | -2,350.00 |
| 06/01/2019 | RE TAX ESTIMATE (06/2019) | 2,350.00 | 0.00 | 0.00 |
| 07/01/2019 | :ACH-250529 - Pre-Authorized Payment | 0.00 | 3,761.80 | -3,761.80 |
| 07/01/2019 | RENT INCOME DEALER - REAL (07/2019) | 1,411.80 | 0.00 | -2,350.00 |
| 07/01/2019 | RE TAX ESTIMATE (07/2019) | 2,350.00 | 0.00 | 0.00 |
| 08/01/2019 | :ACH-255629 - Pre-Authorized Payment | 0.00 | 3,761.80 | -3,761.80 |
| 08/01/2019 | RENT INCOME DEALER - REAL (08/2019) | 1,411.80 | 0.00 | -2,350.00 |
| 08/01/2019 | RE TAX ESTIMATE (08/2019) | 2,350.00 | 0.00 | 0.00 |
| 09/01/2019 | :ACH-261736 - Pre-Authorized Payment | 0.00 | 3,761.80 | -3,761.80 |
| 09/01/2019 | RENT INCOME DEALER - REAL (09/2019) | 1,411.80 | 0.00 | -2,350.00 |
| 09/01/2019 | RE TAX ESTIMATE (09/2019) | 2,350.00 | 0.00 | 0.00 |
| 10/01/2019 | :ACH-268910 - Pre-Authorized Payment | 0.00 | 3,761.80 | -3,761.80 |
| 10/01/2019 | RENT INCOME DEALER - REAL (10/2019) | 1,411.80 | 0.00 | -2,350.00 |
| 10/01/2019 | RE TAX ESTIMATE (10/2019) | 2,350.00 | 0.00 | 0.00 |
| 11/01/2019 | :ACH-275397 - Pre-Authorized Payment | 0.00 | 3,761.80 | -3,761.80 |
| 11/01/2019 | RENT INCOME DEALER - REAL (11/2019) | 1,411.80 | 0.00 | -2,350.00 |
| 11/01/2019 | RE TAX ESTIMATE (11/2019) | 2,350.00 | 0.00 | 0.00 |
| 12/01/2019 | :ACH-286495 - Pre-Authorized Payment | 0.00 | 4,262.76 | -4,262.76 |
| 12/01/2019 | RENT INCOME DEALER - REAL (12/2019) | 409.88 | 0.00 | -3,852.88 |
| 12/01/2019 | RENT INCOME DEALER - REAL (12/2019) | 1,502.88 | 0.00 | -2,350.00 |
| 12/01/2019 | RE TAX ESTIMATE (12/2019) | 2,350.00 | 0.00 | 0.00 |
| 12/31/2019 | RE TAX EST RECOVERY (01/2019 - 12/2019) | 1,634.39 | 0.00 | 1,634.39 |
| 01/01/2020 | :ACH-294165 - Pre-Authorized Payment | 0.00 | 4,467.70 | -2,833.31 |

| 0-30 Days | 31-60 Days | 61-90 Days | Above 90 Days | Amount Due |
|---|---|---|---|---|
| 4,678.49 | 4,678.49 | 4,928.49 | 6,562.88 | 20,848.35 |

t CrossAmerica Partners LP
600 Hamilton Street
Suite 500
Allentown, PA 18101

**Statement**

| | |
|---|---|
| **Account** | nj0174rp t0001635 Universal Property Services Inc |
| **Prop Name** | NJ0174rp |
| **Assigned Spaces** | FUEL-RP |

Syed Kazmi
Universal Property Services Inc
60 Lenn Rd
Allentown, NJ 08501

| | |
|---|---|
| **Date** | 05/12/2020 |
| **Payment** | $ _____ |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | **Balance Forward** | | | 0.00 |
| 01/01/2020 | RENT INCOME DEALER - REAL (01/2020) | 2,117.70 | 0.00 | -715.61 |
| 01/01/2020 | RE TAX ESTIMATE (01/2020) | 2,350.00 | 0.00 | 1,634.39 |
| 02/01/2020 | :ACH-304079 - Pre-Authorized Payment NSFed by ctrl# 102737 NSF | 0.00 | 6,312.88 | -4,678.49 |
| 02/01/2020 | RENT INCOME DEALER - REAL (02/2020) | 2,117.70 | 0.00 | -2,560.79 |
| 02/01/2020 | RE TAX ESTIMATE (02/2020) | 2,560.79 | 0.00 | 0.00 |
| 02/05/2020 | :ACH-304079 - NSF receipt Ctrl# 101816 NSF | 0.00 | -6,312.88 | 6,312.88 |
| 02/05/2020 | Returned check charge | 250.00 | 0.00 | 6,562.88 |
| 03/01/2020 | :ACH-315400 - Pre-Authorized Payment NSFed by ctrl# 104731 NSF | 0.00 | 11,241.37 | -4,678.49 |
| 03/01/2020 | RENT INCOME DEALER - REAL (03/2020) | 2,117.70 | 0.00 | -2,560.79 |
| 03/01/2020 | RE TAX ESTIMATE (03/2020) | 2,560.79 | 0.00 | 0.00 |
| 03/04/2020 | :ACH-315400 - NSF receipt Ctrl# 103797 NSF | 0.00 | -11,241.37 | 11,241.37 |
| 03/04/2020 | Returned check charge | 250.00 | 0.00 | 11,491.37 |
| 04/01/2020 | RENT INCOME DEALER - REAL (04/2020) | 2,117.70 | 0.00 | 13,609.07 |
| 04/01/2020 | RE TAX ESTIMATE (04/2020) | 2,560.79 | 0.00 | 16,169.86 |
| 05/01/2020 | RENT INCOME DEALER - REAL (05/2020) | 2,117.70 | 0.00 | 18,287.56 |
| 05/01/2020 | RE TAX ESTIMATE (05/2020) | 2,560.79 | 0.00 | 20,848.35 |

| 0-30 Days | 31-60 Days | 61-90 Days | Above 90 Days | Amount Due |
|---|---|---|---|---|
| 4,678.49 | 4,678.49 | 4,928.49 | 6,562.88 | 20,848.35 |



**Lehigh Gas Wholesale, LLC**
600 Hamilton Street
Suite 500
Allentown, PA 18101
(610) 625-8000

**Invoice No:** INV-00977323
**Invoice Date:** Thu 04/30/2020
**Delivery Date:** Thu 04/30/2020

**Account ID:** 10703

| Bill To: | Ship To: |
|---|---|
| UNIVERSAL PROPERTY SERVICES<br>127 Easton Avenue<br>New Brunswick, NJ 08901 | ID:  10703<br>UNIVERSAL PROPERTY SERVICES<br>127 Easton Avenue<br>New Brunswick, NJ 08901 |

| Order No: | OD-00974918 | Reference No.: | | P.O. No: | POS Feb 2020 |
|---|---|---|---|---|---|
| Salesperson: | Jennifer Meyer | | | | |

**Non Fuel Message**

| ID | Description | Quantity | Unit Price | Total |
|---|---|---|---|---|
| 1 | POS Fees | 1.0000 | 96.35000 | 96.35 |

| Invoice Total | $96.35 |
|---|---|

| ****Payment Terms Summary****<br>Due by Sat 05/02/2020 (DUE NEXT DAY) | 96.35 |
|---|---|

Thank you for your Business!

# EFT Notifications



**LEHIGH GAS**
WHOLESALE

**Lehigh Gas Wholesale, LLC**
600 Hamilton Street
Suite 500
Allentown, PA 18101
(610) 625-8000

---

**UNIVERSAL PROPERTY SERVICES**

127 Easton Avenue
New Brunswick, NJ 08901

Phone: (609) 672-1594

**Account No:** 10703
**Reference No.:** D-82776-040820
**Date:** 04/08/2020

---

| Date | Location | Reference No. | P.O No. or Additional Info | Original Amount | Discounts & Fees | Net Amount | Remaining Balance |
|------|----------|---------------|---------------------------|-----------------|------------------|-----------|-------------------|
| 11/21/2019 | NJ0174 | SHL57545709404-11; | Shell Credit Cards | 459.57- | 11.55 | 448.02- | |
| 11/22/2019 | NJ0174 | SHL57545709404-11; | Shell Credit Cards | 389.75- | 11.17 | 378.58- | |
| 11/23/2019 | NJ0174 | SHL57545709404-11; | Shell Credit Cards | 750.26- | 18.41 | 731.85- | |
| 11/24/2019 | NJ0174 | SHL57545709404-11; | Shell Credit Cards | 899.99- | 20.81 | 879.18- | |
| 11/25/2019 | NJ0174 | SHL57545709404-11; | Shell Credit Cards | 117.91- | 2.63 | 115.28- | |
| 11/26/2019 | NJ0174 | SHL-LRM575457094( | SHELL LOYALTY | 0.76- | | 0.76- | |
| 11/26/2019 | NJ0174 | SHL57545709404-11; | Shell Credit Cards | 296.79- | 6.09 | 290.70- | |
| 11/27/2019 | NJ0174 | SHL57545709404-11; | Shell Credit Cards | 231.50- | 6.39 | 225.11- | |
| 11/28/2019 | NJ0174 | SHL57545709404-11; | Shell Credit Cards | 15.00- | 0.49 | 14.51- | |
| 11/29/2019 | NJ0174 | SHL57545709404-11; | Shell Credit Cards | 28.63- | 0.80 | 27.83- | |
| 12/06/2019 | UNIVERSAL PR | INV-00903545 | November FRN | 56.93- | | 56.93- | |
| 12/18/2019 | UNIVERSAL PR | INV-00909898 | Contract Short11-19 | 804.60 | | 804.60 | |
| 01/01/2020 | UNIVERSAL PR | INV-00929006 | POSJan 2019 | 96.35 | | 96.35 | |
| 01/07/2020 | UNIVERSAL PR | INV-00920213 | December FRN | 7.16- | | 7.16- | |
| 02/12/2020 | UNIVERSAL PR | INV-00938243 | Contract Short12-19 | 1,050.00 | | 1,050.00 | |
| 03/06/2020 | UNIVERSAL PR | INV-00952739 | Contract Short01-20 | 945.00 | | 945.00 | |
| 03/31/2020 | UNIVERSAL PR | INV-00964626 | POS Jan 2020 | 96.35 | | 96.35 | |
| 03/31/2020 | UNIVERSAL PR | INV-00964691 | POS Feb 2020 | 96.35 | | 96.35 | |
| 04/07/2020 | UNIVERSAL PR | INV-00966494 | Contract Short02-20 | 892.50 | | 892.50 | |
| | | | **Total Draft Amount:** | | | 805.24 | |

| New Transaction Summary | Subtotal | Amount |
|-------------------------|----------|--------|
| FRN/EXCENTUS LOYALTY | | 64.09- |
| POS Fees | | 289.05 |
| SHELL Credit Cards | | 3,111.06- |
|     Gross Credit Cards | 3,189.40- | |
|     Credit Card Fees | 78.34 | |
| SHELL Loyalty | | 0.76- |
| TAKE OR PAY | | 3,692.10 |

| Your account will be drafted on or after: | 04/09/2020 | Total Draft Amount: | 805.24 |
|---|---|---|---|







DEPARTMENT OF ENERGY

**Revised Summary of Title I of the Petroleum Marketing Practices Act**
(Extracted from the Federal Register, Vol. 61, No. 123, Tuesday, June 25, 1996, 32786-32790)
AGENCY: Department of Energy.


ACTION: Notice.
-----------------------------------------------------------------

SUMMARY: This notice contains a summary of Title I of the Petroleum Marketing Practices Act, as amended (the Act). The Petroleum Marketing Practices Act was originally enacted on June 19, 1978, and was amended by the Petroleum Marketing Practices Act Amendments of 1994, enacted on October 19, 1994. On August 30, 1978, the Department of Energy published in the Federal Register a summary of the provisions of Title I of the 1978 law, as required by the Act. The Department is publishing this revised summary to reflect key changes made by the 1994 amendments.

The Act is intended to protect franchised distributors and retailers of gasoline and diesel motor fuel against arbitrary or discriminatory termination or nonrenewal of franchises. This summary describes the reasons for which a franchise may be terminated or not renewed under the law, the responsibilities of franchisors, and the remedies and relief available to franchisees. The Act requires franchisors to give franchisees copies of the summary contained in this notice whenever notification of termination or nonrenewal of a franchise is given.

FOR FURTHER INFORMATION CONTACT: Office of Energy Efficiency, Alternative Fuels, and Oil Analysis (PO-62), U.S. Department of Energy, Washington, D.C. 20585, Telephone (202) 586-4444; Office of General Counsel (GC-73), U.S. Department of Energy, Washington, D.C. 20585, Telephone (202) 586-6978.

SUPPLEMENTARY INFORMATION: Title I of the Petroleum Marketing Practices Act, as amended, 15 U.S.C. Secs. 2801-2806, provides for the protection of franchised distributors and retailers of motor fuel by establishing minimum Federal standards governing the termination of franchises and the nonrenewal of franchise relationships by the franchisor or distributor of such fuel.

Section 104(d)(1) of the Act required the Secretary of Energy to publish in the Federal Register a simple and concise summary of the provisions of Title I, including a statement of the respective responsibilities of, and the remedies and relief available to, franchisors and franchisees under their title. The Department published this summary in the Federal Register on August 30, 1978. 43 F.R. 38743 (1978).

In 1994 the Congress enacted the Petroleum Marketing Practices Act Amendments to affirm and clarify certain key provisions of the 1978 statute. Among the key issues addressed in the 1994 amendments are: (1) termination or nonrenewal of franchised dealers by their franchisors for purposes of conversion to ``company'' operation; (2) application of state law; (3) the rights and obligations of franchisors and franchisees in third-party lease situations; and (4) waiver of rights limitations. See H.R. REP. NO. 737, 103rd Cong., 2nd Sess. 2 (1994), reprinted in 1994 U.S.C.C.A.N. 2780.

Congress intended to: (1) make explicit that upon renewal a franchisor may not insist on changes to a franchise agreement where the purpose of such changes is to prevent renewal in order to convert a franchisee-operated service station into a company-operated service station; (2) make clear that where the franchisor has an option to continue the lease or to purchase the premises but does not wish to do so, the franchisor must offer to assign the option to the franchisee; (3) make clear that no franchisor may require, as a condition of entering or renewing a franchise agreement, that a franchisee waive any rights under the Petroleum Marketing Practices Act, any other Federal law, or any state law; and (4) reconfirm the limited scope of Federal preemption under the Act. Id.

The summary which follows reflects key changes to the statute resulting from the 1994 amendments. The Act requires franchisors to give copies of this summary statement to their franchisees when entering into an agreement to terminate the franchise or not to renew the franchise relationship, and when giving notification of termination or nonrenewal. This summary does not purport to interpret the Act, as amended, or to create new legal rights.

In addition to the summary of the provisions of Title I, a more detailed description of the definitions contained in the Act and of the legal remedies available to franchisees is also included in this notice, following the summary statement.

Summary of Legal Rights of Motor Fuel Franchisees

This is a summary of the franchise protection provisions of the Federal Petroleum Marketing Practices Act, as amended in 1994 (the Act), 15 U.S.C. Sections. 2801-2806. This summary must be given to you, as a person holding a franchise for the sale, consignment or distribution of gasoline or diesel motor fuel, in connection with any termination or nonrenewal of your franchise by your franchising company (referred to in this summary as your supplier).

You should read this summary carefully, and refer to the Act if necessary, to determine whether a proposed termination or nonrenewal of your franchise is lawful, and what legal remedies are available to you if you think the proposed termination or failure to renew is not lawful. In addition, if you think your supplier has failed to comply with the Act, you may wish to consult an attorney in order to enforce your legal rights.

The franchise protection provisions of the Act apply to a variety of franchise agreements. The term ``franchise'' is broadly defined as a license to use a motor fuel trademark which is owned or controlled by a refiner, and it includes secondary arrangements such as leases of real property and motor fuel supply agreements which have existed continuously since May 15, 1973, regardless of a subsequent withdrawal of a trademark. Thus, if you have lost the use of a trademark previously granted by your supplier but have continued to receive motor fuel supplies through a continuation of a supply agreement with your supplier, you are protected under the Act. Any issue arising under your franchise which is not governed by this Act will be governed by the law of the State in which the principal place of business of your franchise is located.   Although a State may specify the terms and conditions under which your franchise may be transferred upon the death of the franchisee, it may not require a payment to you (the franchisee) for the goodwill of a franchise upon termination or nonrenewal.

The Act is intended to protect you, whether you are a distributor or a retailer, from arbitrary or discriminatory termination or nonrenewal of your franchise agreement. To accomplish this, the Act first lists the reasons for which termination or nonrenewal is permitted. Any notice of termination or nonrenewal must state the precise reason, as listed in the Act, for which the particular termination or nonrenewal is being made. These reasons are described below under the headings "Reasons for Termination" and "Reasons for Nonrenewal."

The Act also requires your supplier to give you a written notice of termination or intention not to renew the franchise within certain time periods. These requirements are summarized below under the heading "Notice Requirements for Termination or Nonrenewal."

The Act also provides certain special requirements with regard to trial and interim franchise agreements, which are described below under the heading "Trial and Interim Franchises."

The Act gives you certain legal rights if your supplier terminates or does not renew your franchise in a way that is not permitted by the Act. These legal rights are described below under the heading "Your Legal Rights."

The Act contains provisions pertaining to waiver of franchisee rights and applicable State law. These provisions are described under the heading "Waiver of Rights and Applicable State Law."

This summary is intended as a simple and concise description of the general nature of your rights under the Act. For a more detailed description of these rights, you should read the text of the Petroleum Marketing Practices Act, as amended in 1994 (15 U.S.C. Secs. 2801-2806). This summary does not purport to interpret the Act, as amended, or to create new legal rights.

I. Reasons for Termination

If your franchise was entered into on or after June 19, 1978, the Act bars termination of your franchise for any reasons other than those reasons discussed below. If your franchise was entered into before June 19, 1978, there is no statutory restriction on the reasons for which it may be terminated. If a franchise entered into before June 19, 1978, is terminated, however, the Act requires the supplier to reinstate the franchise relationship unless one of the reasons listed under this heading or one of the additional reasons for nonrenewal described below under the heading "Reasons for Nonrenewal" exists.

A. Non-Compliance with Franchise Agreement

Your supplier may terminate your franchise if you do not comply with a reasonable and important requirement of the franchise relationship. However, termination may not be based on a failure to comply with a provision of the franchise that is illegal or unenforceable under applicable Federal, State or local law. In order to terminate for non-compliance with the franchise agreement, your supplier must have learned of this non-compliance recently. The Act limits the time period within which your supplier must have learned of your non-compliance to various periods, the longest of which is 120 days, before you receive notification of the termination.

B. Lack of Good Faith Efforts

Your supplier may terminate your franchise if you have not made good faith efforts to carry out the requirements of the franchise, provided you are first notified in writing that you are not meeting a requirement of the franchise and you are given an opportunity to make a good faith effort to carry out the requirement. This reason can be used by your supplier only if you fail to make good faith efforts to carry out the requirements of the franchise within the period which began not more than 180 days before you receive the notice of termination.

C. Mutual Agreement To Terminate the Franchise

A franchise can be terminated by an agreement in writing between you and your supplier if the agreement is entered into not more than 180 days before the effective date of the termination and you receive a copy of that agreement, together with this summary statement of your rights under the Act. You may cancel the agreement to terminate within 7 days after you receive a copy of the agreement, by mailing (by certified mail) a written statement to this effect to your supplier.

D. Withdrawal From the Market Area

Under certain conditions, the Act permits your supplier to terminate your franchise if your supplier is withdrawing from marketing activities in the entire geographic area in which you operate. You should read the Act for a more detailed description of the conditions under which market withdrawal terminations are permitted. See 15 U.S.C. Sec. 2802(b)(E).

E. Other Events Permitting a Termination

If your supplier learns within the time period specified in the Act (which in no case is more than 120 days prior to the termination notice) that one of the following events has occurred, your supplier may terminate your franchise agreement:

(1) Fraud or criminal misconduct by you that relates to the operation of your marketing premises.
(2) You declare bankruptcy or a court determines that you are insolvent.
(3) You have a severe physical or mental disability lasting at least 3 months which makes you unable to provide for the continued proper operation of the marketing premises.
(4) Expiration of your supplier's underlying lease to the leased marketing premises, if: (a) your supplier gave you written notice before the beginning of the term of the franchise of the duration of the underlying lease and that the underlying lease might expire and not be renewed during the term of the franchise; (b) your franchisor offered to assign to you, during the 90-day period after notification of termination or nonrenewal was given, any option which the franchisor held to extend the underlying lease or to purchase the marketing premises (such an assignment may be conditioned on the franchisor receiving from both the landowner and the franchisee an unconditional release from liability for specified events occurring after the assignment); and (c) in a situation in which the franchisee acquires possession of the leased marketing premises effective immediately after the loss of the right of the franchisor to grant possession, the franchisor, upon the written request of the franchisee, made a bona fide offer to sell or assign to the franchisee the franchisor's interest in any improvements or equipment located on the premises, or offered the franchisee a right of first refusal of any offer from another person to purchase the franchisor's interest in the improvements and equipment.
(5) Condemnation or other taking by the government, in whole or in part, of the marketing premises pursuant to the power of eminent domain. If the termination is based on a condemnation or other taking, your supplier must give you a fair share of any compensation which he receives for any loss of business opportunity or good will.
(6) Loss of your supplier's right to grant the use of the trademark that is the subject of the franchise, unless the loss was because of bad faith actions by your supplier relating to trademark abuse, violation of Federal or State law, or other fault or negligence.
(7) Destruction (other than by your supplier) of all or a substantial part of your marketing premises. If the termination is based on the destruction of the marketing premises and if the premises are rebuilt or replaced by your supplier and operated under a franchise, your supplier must give you a right of first refusal to this new franchise.
(8) Your failure to make payments to your supplier of any sums to which your supplier is legally entitled.
(9) Your failure to operate the marketing premises for 7 consecutive days, or any shorter period of time which, taking into account facts and circumstances, amounts to an unreasonable period of time not to operate.
(10) Your intentional adulteration, mislabeling or misbranding of motor fuels or other trademark violations.

2

(11) Your failure to comply with Federal, State, or local laws or regulations of which you have knowledge and that relate to the operation of the marketing premises.

(12) Your conviction of any felony involving moral turpitude.

(13) Any event that affects the franchise relationship and as a result of which termination is reasonable.

II. Reasons for Nonrenewal

If your supplier gives notice that he does not intend to renew any franchise agreement, the Act requires that the reason for nonrenewal must be either one of the reasons for termination listed immediately above, or one of the reasons for nonrenewal listed below.

A. Failure To Agree on Changes or Additions To Franchise

If you and your supplier fail to agree to changes in the franchise that your supplier in good faith has determined are required, and your supplier's insistence on the changes is not for the purpose of converting the leased premises to a company operation or otherwise preventing the renewal of the franchise relationship, your supplier may decline to renew the franchise.

B. Customer Complaints

If your supplier has received numerous customer complaints relating to the condition of your marketing premises or to the conduct of any of your employees, and you have failed to take prompt corrective action after having been notified of these complaints, your supplier may decline to renew the franchise.

C. Unsafe or Unhealthful Operations

If you have failed repeatedly to operate your marketing premises in a clean, safe and healthful manner after repeated notices from your supplier, your supplier may decline to renew the franchise.

D. Operation of Franchise is Uneconomical

Under certain conditions specified in the Act, your supplier may decline to renew your franchise if he has determined that renewal of the franchise is likely to be uneconomical. Your supplier may also decline to renew your franchise if he has decided to convert your marketing premises to a use other than for the sale of motor fuel, to sell the premises, or to materially alter, add to, or replace the premises.

III. Notice Requirements for Termination or Nonrenewal

The following is a description of the requirements for the notice which your supplier must give you before he may terminate your franchise or decline to renew your franchise relationship. These notice requirements apply to all franchise terminations, including franchises entered into before June 19, 1978 and trial and interim franchises, as well as to all nonrenewals of franchise relationships.

A. How Much Notice Is Required

In most cases, your supplier must give you notice of termination or non-renewal at least 90 days before the termination or nonrenewal takes effect.

In circumstances where it would not be reasonable for your supplier to give you 90 days notice, he must give you notice as soon as he can do so. In addition, if the franchise involves leased marketing premises, your supplier may not establish a new franchise relationship involving the same premises until 30 days after notice was given to you or the date the termination or nonrenewal takes effect, whichever is later. If the franchise agreement permits, your supplier may repossess the premises and, in reasonable circumstances, operate them through his employees or agents.

If the termination or nonrenewal is based upon a determination to withdraw from the marketing of motor fuel in the area, your supplier must give you notice at least 180 days before the termination or nonrenewal takes effect.

B. Manner and Contents of Notice

To be valid, the notice must be in writing and must be sent by certified mail or personally delivered to you. It must contain:

(1) A statement of your supplier's intention to terminate the franchise or not to renew the franchise relationship, together with his reasons for this action;

(2) The date the termination or non-renewal takes effect; and

(3) A copy of this summary.

IV. Trial Franchises and Interim Franchises

The following is a description of the special requirements that apply to trial and interim franchises.

A. Trial Franchises

A trial franchise is a franchise, entered into on or after June 19, 1978, in which the franchisee has not previously been a party to a franchise with the franchisor and which has an initial term of 1 year or less. A trial franchise must be in writing and must make certain disclosures, including that it is a trial franchise, and that the franchisor has the right not to renew the franchise relationship at the end of the initial term by giving the franchisee proper notice.

The unexpired portion of a transferred franchise (other than as a trial franchise, as described above) does not qualify as a trial franchise.

In exercising his right not to renew a trial franchise at the end of its initial term, your supplier must comply with the notice requirements described above under the heading "Notice Requirements for Termination or Nonrenewal."

B. Interim Franchises

An interim franchise is a franchise, entered into on or after June 19, 1978, the duration of which, when combined with the terms of all prior interim franchises between the franchisor and the franchisee, does not exceed three years, and which begins immediately after the expiration of a prior franchise involving the same marketing premises which was not renewed, based on a lawful determination by the franchisor to withdraw from marketing activities in the geographic area in which the franchisee operates.

An interim franchise must be in writing and must make certain disclosures, including that it is an interim franchise and that the franchisor has the right not to renew the franchise at the end of the term based upon a lawful determination to withdraw from marketing activities in the geographic area in which the franchisee operates.

In exercising his right not to renew a franchise relationship under an interim franchise at the end of its term, your supplier must comply with the notice requirements described above under the heading ``Notice Requirements for Termination or Nonrenewal.''

V. Your Legal Rights

Under the enforcement provisions of the Act, you have the right to sue your supplier if he fails to comply with the requirements of the Act. The courts are authorized to grant whatever equitable relief is necessary to remedy the effects of your supplier's failure to comply with the requirements of the Act, including declaratory judgment, mandatory or prohibitive injunctive relief, and interim equitable relief. Actual damages, exemplary (punitive) damages under certain circumstances, and reasonable attorney and expert witness fees are also authorized. For a more detailed description of these legal remedies you should read the text of the Act. 15 U.S.C. Sections 2801-2806.

VI. Waiver of Rights and Applicable State Law

Your supplier may not require, as a condition of entering into or renewing the franchise relationship, that you relinquish or waive any right that you have under this or any other Federal law or applicable State law. In addition, no provision in a franchise agreement would be valid or enforceable if the provision specifies that the franchise would be governed by the law of any State other than the one in which the principal place of business for the franchise is located.

Further Discussion of Title I--Definitions and Legal Remedies

I. Definitions

Section 101 of the Petroleum Marketing Practices Act sets forth definitions of the key terms used throughout the franchise protection provisions of the Act. The definitions from the Act which are listed below are of those terms which are most essential for purposes of the summary statement. (You should consult section 101 of the Act for additional definitions not included here.)

A. Franchise

A ``franchise'' is any contract between a refiner and a distributor, between a refiner and a retailer, between a distributor and another distributor, or between a distributor and a retailer, under which a refiner or distributor (as the case may be) authorizes or permits a retailer or distributor to use, in connection with the sale, consignment, or distribution of motor fuel, a trademark which is owned or controlled by such refiner or by a refiner which supplies motor fuel to the distributor which authorizes or permits such use.   The term ``franchise'' includes any contract under which a retailer or distributor (as the case may be) is authorized or permitted to occupy leased marketing premises, which premises are to be employed in connection with the sale, consignment, or distribution of motor fuel under a trademark which is owned or controlled by such refiner or by a refiner which supplies motor fuel to the distributor which authorizes or permits such occupancy. The term also includes any contract pertaining to the supply of motor fuel which is to be sold, consigned or distributed under a trademark owned or controlled by a refiner, or under a contract which has existed continuously since May 15, 1973, and pursuant to which, on May 15, 1973, motor fuel was sold, consigned or distributed under a trademark owned or controlled on such date by a refiner. The unexpired portion of a transferred franchise is also included in the definition of the term.

B. Franchise Relationship

The term "franchise relationship" refers to the respective motor fuel marketing or distribution obligations and responsibilities of a franchisor and a franchisee which result from the marketing of motor fuel under a franchise.

C. Franchisee

A "franchisee" is a retailer or distributor who is authorized or permitted, under a franchise, to use a trademark in connection with the sale, consignment, or distribution of motor fuel.

D. Franchisor

A "franchisor" is a refiner or distributor who authorizes or permits, under a franchise, a retailer or distributor to use a trademark in connection with the sale, consignment, or distribution of motor fuel.

E. Marketing Premises

"Marketing premises" are the premises which, under a franchise, are to be employed by the franchisee in connection with the sale, consignment, or distribution of motor fuel.

F. Leased Marketing Premises

"Leased marketing premises" are marketing premises owned, leased or in any way controlled by a franchisor and which the franchisee is authorized or permitted, under the franchise, to employ in connection with the sale, consignment, or distribution of motor fuel.

G. Fail to Renew and Nonrenewal

4

The terms "fail to renew" and "nonrenewal" refer to a failure to reinstate, continue, or extend a franchise relationship (1) at the conclusion of the term, or on the expiration date, stated in the relevant franchise, (2) at any time, in the case of the relevant franchise which does not state a term of duration or an expiration date, or (3) following a termination (on or after June 19, 1978) of the relevant franchise which was entered into prior to June 19, 1978 and has not been renewed after such date.

II. Legal Remedies Available to Franchisee

The following is a more detailed description of the remedies available to the franchisee if a franchise is terminated or not renewed in a way that fails to comply with the Act.

A. Franchisee's Right to Sue

A franchisee may bring a civil action in United States District Court against a franchisor who does not comply with the requirements of the Act. The action must be brought within one year after the date of termination or nonrenewal or the date the franchisor fails to comply with the requirements of the law, whichever is later.

B. Equitable Relief

Courts are authorized to grant whatever equitable relief is necessary to remedy the effects of a violation of the law's requirements. Courts are directed to grant a preliminary injunction if the franchisee shows that there are sufficiently serious questions, going to the merits of the case, to make them a fair ground for litigation, and if, on balance, the hardship which the franchisee would suffer if the preliminary injunction is not granted will be greater than the hardship which the franchisor would suffer if such relief is granted.

Courts are not required to order continuation or renewal of the franchise relationship if the action was brought after the expiration of the period during which the franchisee was on notice concerning the franchisor's intention to terminate or not renew the franchise agreement.

C. Burden of Proof

In an action under the Act, the franchisee has the burden of proving that the franchise was terminated or not renewed. The franchisor has the burden of proving, as an affirmative defense, that the termination or nonrenewal was permitted under the Act and, if applicable, that the franchisor complied with certain other requirements relating to terminations and nonrenewals based on condemnation or destruction of the marketing premises.

D. Damages

A franchisee who prevails in an action under the Act is entitled to actual damages and reasonable attorney and expert witness fees. If the action was based upon conduct of the franchisor which was in willful disregard of the Act's requirements or the franchisee's rights under the Act, exemplary (punitive) damages may be awarded where appropriate. The court, and not the jury, will decide whether to award exemplary damages and, if so, in what amount.

On the other hand, if the court finds that the franchisee's action is frivolous, it may order the franchisee to pay reasonable attorney and expert witness fees.

E. Franchisor's Defense to Permanent Injunctive Relief

Courts may not order a continuation or renewal of a franchise relationship if the franchisor shows that the basis of the non-renewal of the franchise relationship was a determination made in good faith and in the normal course of business:
    (1) To convert the leased marketing premises to a use other than the sale or distribution of motor fuel;
    (2) To materially alter, add to, or replace such premises;
    (3) To sell such premises;
    (4) To withdraw from marketing activities in the geographic area in which such premises are located; or
    (5) That the renewal of the franchise relationship is likely to be uneconomical to the franchisor despite any reasonable changes or additions to the franchise provisions which may be acceptable to the franchisee.

In making this defense, the franchisor also must show that he has complied with the notice provisions of the Act.

This defense to permanent injunctive relief, however, does not affect the franchisee's right to recover actual damages and reasonable attorney and expert witness fees if the nonrenewal is otherwise prohibited under the Act.

Issued in Washington, D.C. on June 12, 1996.
Marc W. Chupka,
Acting Assistant Secretary for Policy.
[FR Doc. 96-16124 Filed 6-24-96; 8:45 am]

13.7 Summary Statement of PMPA Rights/BMA Contract Package 5.0

**2007 PMPA AMENDMENT**

15 U.S.C. § 2807.    Prohibition on restriction of installation of renewable fuel pumps.

**(a) Definition**
In this section:

(1)  Renewable fuel
     The term "renewable fuel" means any fuel-

     (A) at least 85 percent of the volume of which consists of ethanol; or

     (B) any mixture of biodiesel and diesel or renewable diesel (as defined in regulations adopted pursuant to section 7545(o) of Title 42 (40 CFR, part 80)), determined without regard to any use of kerosene and containing at least 20 percent biodiesel or renewable diesel

(2)  Franchise-related document
     The term "franchise-related document" means-

     (A) a franchise under this Chapter; and

     (B) any other contract or directive of a franchisor relating to terms or conditions of the sale of fuel by a franchisee

**(b) Prohibitions**

(1)  In general

     No franchise-related document entered into or renewed on or after December 19, 2007, shall contain any provision allowing a franchisor to restrict the franchisee or any affiliate of the franchisee from-

     (A) installing on the marketing premises of the franchisee a renewable fuel pump or tank, except that the franchisee's franchisor may restrict the installation of a tank on leased marketing premises of such franchisor;

     (B) converting an existing tank or pump on the marketing premises of the franchisee for renewable fuel use, no long as such tank or pump and the piping connecting them are either warranted by the manufacturer or certified by a recognized standards setting organization to be suitable for use with such renewable fuel;

     (C) advertising (including through the use of signage) the sale of any renewable fuel;

     (D) selling renewable fuel in any specified area on the marketing premises of the franchisee (including any area in which a name or logo of a franchisor or any other entity appears);

     (E) purchasing renewable fuel from sources other than the franchisor if the franchisor does not offer its own renewable fuel for sale by the franchisee;

     (F) listing renewable fuel availability or prices, including on service station signs, fuel dispensers, or light poles; **or**

     (G) allowing for payment of renewable fuel with a credit card,

     so long as such activities described in subparagraphs (A) through (G) do not constitute mislabeling, misbranding, willful adulteration, or other trademark violations by the franchisee

(2)  Effect of provision

     Nothing in this section shall be construed to preclude a franchisor from requiring the franchisee to obtain reasonable indemnification and insurance policies

**(c) Exception to 3-grade requirement**

     No franchise-related document that requires that 3 grades of gasoline be sold by the applicable franchisee shall prevent the franchisee from selling a renewable fuel in lieu of 1, and only 1, grade of gasoline.

**Revised Summary of Title I of the Petroleum Marketing Practices Act (PMPA)**