## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

UNIVERSAL PROPERTY SERVICES, INC., and SYED KAZMI,

Plaintiffs,

v.

LEHIGH GAS WHOLESALE SERVICES, INC., LEHIGH GAS WHOLESALE, INC., LGP REALTY HOLDINGS LP, CIRCLE K STORES, INC., and TMC FRANCHISE CORP.,

Defendants.

Civil Action No. 3:20-cv-03315-FLW-TJB

## STIPULATION AND ORDER
## REGARDING ESI AND DISCOVERY PROTOCOLS

Pursuant to Fed. R. Civ. P. 26(f)(3)(C) and Local Civil Rule 26.1(d)(3), the parties to the above-captioned action have conferred and jointly submit this Stipulation and Order Regarding Discovery Protocols for Electronically Stored Information ("ESI") and hard copy document production.

## I.  PRODUCTION OF DOCUMENTS GENERALLY

A.  **Image files.** Image files for a document are to be provided as single page, black and white, Group IV TIFFs of at least 300 dpi. Each image should have a unique file name, which is the Bates number of the page. In cases where color is an integral part of a document (such as, but not limited to, photos, graphs, etc.), images are to be produced as JPEG files.

B.  **OCR Text Files.** The parties shall use industry-standard OCR technology. OCR text files shall be provided as a single document-level text file for each document, named after

the Bates number on the first page of that document. The text files will not contain any redacted portions of the documents.

C.   **Load File Fields.** The following information shall be produced in the delimited data files accompanying hard copy documents: (a) ProdBeg, (b) ProdEnd, (c) BegAttach, (d) EndAttach, (e) custodian, and (f) a path or link to the OCR Text file.

D.   **Database Load Files/Cross-Reference Files.** Documents should be provided with (a) a delimited text data file using standard Concordance delimiters, and (b) an image load file. Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load files in the production.

E.   **Bates Numbering.** All images shall be assigned a Bates number that will always: (1) be unique across the entire document production; (2) maintain a constant length (0-padded) across the entire production; and (3) be sequential within a given document. If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production.

F.   **Manner of Production.** If a producing party produces hard copy documents or ESI in accordance with this Protocol such party will be deemed to have produced such materials as they are kept in the usual course of business in accordance with Fed. R. Civ. P. 34(b)(E)(i), and such party is not required to organize, index, or label the materials to correspond to the categories in the requesting party's requests. If, after reviewing a production in good faith, a requesting party is unable to determine whether materials responsive to a particular request have been produced, the requesting party may submit an inquiry to the producing party and the

producing party will respond to such inquiry in good faith. In no event will the producing party be required to identify all documents or ESI potentially responsive to a particular request.

       G.     **Unitizing of Documents.** In scanning paper documents, the producing party will use reasonable efforts to preserve the logical unity of documents, i.e., distinct documents should not be merged into a single record, and single documents should not be split into multiple records.

## II.     PRODUCTION OF ELECTRONICALLY STORED INFORMATION

       A.     **System Files.** System and program files, including those as defined by the NIST library (http:itwww.nsrl.nist,govi), commonly used by e-discovery vendors to exclude system and program files from document review and production, need not be processed, reviewed, or produced. Additional files may be added to the list of excluded files by agreement of the parties.

       B.     **De-Duplication.** To the extent that exact duplicate documents (based on MD5 or SHA-1 hash values at the document level or by message ID and other standard vendor methodology for email) reside within a party's ESI data set, each party is only required to produce a single copy of a responsive document or record. Where any such documents have attachments, hash values must be identical for both the document-plus-attachment (including associated metadata) as well as for any attachment (including associated metadata) standing alone. To the extent that a producing party is employing global de-duplication, it will include "CustodianALL" and "PathsALL" fields in a production load file to identify additional custodians who had a copy of the produced document and the file paths detailing the location at which each custodian had saved each document, respectively. No party is required to compare individual documents in order to exclude documents from duplicate production.

       C.     **Parent-Child Relationships.** "Attachments" and their "Parent" documents are a "Family" of documents. "Children" should be located directly after their Parent in the production

and should be sequentially Bates numbered. The beginning and ending Bates numbers of the Parent and the Child, along with the family information, will be provided in the DAT file under the following filed names: BegDoc, EndDoc, BegAttach, EndAttach. Attachment and Parent refers to email and their attachments, a document and its embedded files, as well as other Family relationships.

        D.      **Embedded Documents.** Parties are required to process embedded files. If a document has another file embedded in it (e.g., a PowerPoint presentation that has a spreadsheet embedded in it), the embedded file is to be produced as a child to the original file. Embedded files are to be processed in the same manner as parent documents, capturing all referenced and available metadata outlined below.

        E.      **Metadata Fields and Processing.** Each of the metadata and coding fields set forth in Appendix A that can be extracted from a document shall be produced for that document. The parties are not obligated to populate manually any of the fields in Appendix A if such fields cannot be extracted from a document, with the exception of the following: (a) ProdBeg; (b) ProdEnd, (c) BegAttach, (d) EndAttach, and (e) Custodian, which should be populated by the party or the party's vendor. To the extent that the tools used by a producing party's vendor do not, as a matter of course, collect any of the metadata fields listed in Appendix A, the producing party shall provide the requesting party in writing a list of metadata fields that the vendor does not collect as a matter of course.

        F.      **Image Files.** Image files for a document are to be provided as single page, black and white, Group IV TIFFs of at least 300 dpi. Each image should have a unique file name, which is the Bates number of the page. In cases where color is an integral part of a document (such as, but not limited to, photos, graphs, etc.), images are to be produced as JPEG files.

G.      **Text Files.** For each document, a text file containing the extracted text shall be provided along with the image files and metadata, when such text exists. The text file name should be the same as the Bates number on the first page of the document. The text files will not contain the redacted portions of the documents.

H.      **Database Load Files/Cross-Reference Files.** Documents shall be provided with (a) a delimited text data file using standard Concordance delimiters, and (b) an image load file. Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load files in the production. Parties will provide a Summation or Concordance load file at the requesting party's preference.

I.      **Spreadsheets and Untiffable files.** Spreadsheets and untiffable files (such as videos and audio files) shall only be produced in native format along with an accompanying slip sheet that will include a Bates number and any confidentiality labeling for the document. If a spreadsheet includes redacted information, it need not be produced in native format, but shall be produced in TIFF along with extracted text and applicable metadata fields set forth in Appendix A except to the extent the extracted text or metadata fields are themselves redacted. If a party determines that there is significant burden associated with redactions of spreadsheets in TIFF, the parties agree to meet and confer on alternative methods of redaction and production of this material.

J.      **Structured Data.** To the extent a response to discovery requires production of discoverable electronic information contained in a database, the parties shall meet and confer to determine the protocol for searching and producing from that database.

K.     **Requests for Native Files.** Unless otherwise stated herein, a producing party need not produce documents in native format. If good cause exists to request production of specified files in native format, the requesting party may request such production and provide an explanation of the need for the native file, which request shall not unreasonably be denied. The requesting party will provide a specific Bates range for documents it wishes to be produced in native format. Any native files that are produced pursuant to this Protocol shall be produced with all extracted text and applicable metadata fields set forth in Appendix A.

L.     **Confidentiality Designations.** If a party produces or prints native files or other ESI that has a confidentiality designation in a hardcopy form, it shall mark the hardcopy with the appropriate confidentiality designation.

M.     **Password Protected Documents.** If a party produces a password protected document, upon request of the opposing party, the producing party will use all reasonable efforts to provide the password so that the document can be viewed in the same capacity as all other documents produced.

### III.    CLAIMS OF PRIVILEGE

A.     If privilege is claimed over only a portion of a document, the parties will redact the privileged portion and produce all non-privileged portions of that document, including any non-privileged attachments. If the non-privileged portion of that document (and any non-privileged attachments) has already been produced, then the parties are not obligated to reproduce that partially privileged document with redactions.

B.     Privilege logs shall include the following fields: (1) sequential entry numbers (e.g., 1, 2, 3, 4….), (2) author(s)/sender(s) of the document, (3) addressee(s)/recipient(s) of the document, (4) the date of the document (if reasonably determinable), (5) email subject / re: line (as applicable), unless the subject line itself is privileged, (6) file name (as applicable, e.g., for

Word or Excel files), unless the file name itself is privileged, (7) a description of the document sufficient to allow the receiving party to assess the claim of privilege, and (8) the nature or type of privilege asserted. Documents sent solely between counsel for the parties (such as internal law firm communications) or documents authored by a party's outside counsel that were not directly or indirectly provided to the client (such as internal law firm memoranda) do not need to be logged as it would be unreasonably burdensome and disproportionate to the needs of the case. Additionally, the parties do not need to log any documents that post-date Plaintiffs' filing of this litigation to the extent such documents relate solely to the prosecution or defense of this litigation as it would be unreasonably burdensome and disproportionate to the needs of the case.

C.     If information subject to a claim of attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity protecting information from discovery is inadvertently produced to a party or parties, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of privilege, work product or other ground for withholding production to which the producing party or other person otherwise would be entitled. In the event the receiving party discovers it has received either privileged or protected information, it will bring that fact to the attention of the producing party immediately upon discovery.

D.     If the producing party discovers it inadvertently disclosed information subject to an attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity, as soon as practicable the producing party claiming such privilege shall notify the receiving party in writing, including identification of the claimed document(s) by Bates Stamp number, if any, the basis for such claim of privilege or protection, and all other information required for a privilege log under the applicable Rules, without waiving such privilege or

protection. If the parties agree as to the privilege or protection, the receiving Party shall return all copies (electronic and paper) to the producing party or otherwise agree and certify as to the destruction of these documents as soon as practicable. If the parties do not agree as to the claim of privilege, the claimed documents shall be segregated from all other materials and within 21 days of the communicated claim of privilege, shall be filed under seal with a motion by the receiving party for in camera review. The receiving party's failure to so move within the agreed time shall constitute agreement to the producing party's claim of privilege or protection.

## IV.    MISCELLANEOUS PROVISIONS

A.    **Objections Preserved.** Nothing in this Protocol shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and ESI.

B.    **Modifications.** Any practice or procedure set forth herein may be varied by agreement of the parties, confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of documents or ESI.

C.    **No Effect on Cost Shifting.** Nothing in this Agreement shall affect, in any way, a producing party's right to request that the Court order reimbursement for costs associated with collection, re-processing and re-filtering, scanning, review, and/or production of documents or ESI.

D. Any application to seal information from public view must comply with L.Civ.R. 5.3.

Dated: February 8, 2022

**MCCUSKER, ANSELMI, ROSEN & CARVELLI, P.C.**

**By:** */s/ Asaad K. Siddiqi*
Asaad K. Siddiqi
James Harry Oliviero
210 Park Avenue
Suite 301
Florham Park, NJ 07932
(973) 635-6300
asiddiqi@marc.law
jholiverio@marc.law

**ZARCO EINHORN SALKOWSKI & BRITO, P.A.**

**By:** */s/ Robert Zarco*
Robert Zarco, Esq., (*pro hac vice*)
Robert Salkowski, Esq. (*pro hac vice*)
Alejandro Brito, Esq. (NJ Bar No: 049591992)
One Biscayne Tower
2 South Biscayne Boulevard
34th Floor
Miami, FL 33131
(305) 374-5418
RZarco@ZarcoLaw.com
RSalkowski@ZarcoLaw.com
ABrito@ZarcoLaw.com

*Attorneys for Plaintiffs Universal Property Services, Inc. and Syed Kazmi*

**FOX ROTHSCHILD LLP**

**By:** */s/ Peter C. Buckley*
Peter C. Buckley
Barry J. Muller
2000 Market Street
Ste 20th Floor
Philadelphia, PA 19103
(215) 299-2854
pbuckley@foxrothschild.com
bmuller@foxrothschild.com

*Attorneys for Defendants Lehigh Gas Wholesale Services, Inc., Lehigh Gas Wholesale LLC, and LGP Realty Holdings LP*

**FAEGRE DRINKER BIDDLE & REATH LLP**

**By:** */s/ Matthew J. Fedor*
Matthew J. Fedor
Alison Thompson
600 Campus Drive
Florham Park, New Jersey 07932
(973) 549-7000
Matthew.fedor@faegredrinker.com
Alison.Thompson@faegredrinker.com

**By:** */s/ Kerry L. Bundy*
Kerry L. Bundy, Esq. (*pro hac vice*)
Joshua N. Turner, Esq. (*pro hac vice*)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 766-7000
Kerry.Bundy@faegredrinker.com
Josh.Turner@faegredrinker.com

*Attorneys for Defendants Circle K Stores, Inc.*
*and TMC Franchise Corp.*

IT IS SO ORDERED THIS  8th   DAY OF  February  , 2022.

s/ Tonianne J. Bongiovanni
**Hon. Tonianne J. Bongiovanni, U.S.M.J.**

**PRODUCTION OF DOCUMENTS PROTOCOL**

**APPENDIX A**

**ESI METADATA AND CODING FIELDS**

- For all files

  - ☐ BEGDOC

  - ☐ ENDDOC

  - ☐ BEGATTACH

  - ☐ ENDATTACH

  - ☐ MD5 HASH

  - ☐ PARENT

  - ☐ ATTACHMENT IDS

  - ☐ FAMILY COUNT, to the extent feasible

  - ☐ FOLDER or FILEPATH

  - ☐ FILE EXTENSION

  - ☐ CREATION DATE (FORMAT MM 'DD MY)

  - ☐ CREATION TIME (FORMAT FIRM MM:SS)

  - ☐ CUSTODIAN

- For emails:

  - ☐ BCC

  - ☐ CC

  - ☐ CONVERSATION IDS

  - ☐ MSGID

  - ☐ PSTFILENAME, as part of the filepath or otherwise

  - ☐ RECEIVED DATE (FORMAT MM/DD/YYYY)

☐ RECEIVED TIME (FORMAT HH:MM:SS)

☐ RECIPIENT NAME AND/OR EMAIL ADDRESS

☐ SENDER EMAIL ADDRESS, in combination with Sender Name or otherwise

☐ SENDER NAME, in combination with Sender Email Address or otherwise

☐ SENT DATE (FORMAT MM/DD/YYYY)

☐ SENT TIME (FORMAT HH:MM:SS)

☐ SUBJECT

☐ UNREAD

☐ IMPORTANCE

☐ SENSITIVITY

- For Non-Email Files:

  ☐ AUTHOR

  ☐ DOCUMENT CREATION DATE (FORMAT MM/DD/YYYY)

  ☐ DOCUMENT CREATION

  ☐ TIME (FORMAT HH:MM:SS)

  ☐ DOCUMENT FILE VERSION

  ☐ DOCUMENT TYPE/APPLICATION

  ☐ LAST ACCESS DATE (FORMAT MM/DD/YYYY)

  ☐ LAST ACCESS TIME (FORMAT HH:MM:SS)

  ☐ MODIFICATION DATE (FORMAT MM/DD/YYYY)

  ☐ MODIFICATION TIME (FORMAT MM/DD/YYYY)

  ☐ LAST SAVED BY

  ☐ TITLE

  ☐ FILE NAME

☐   HIDDEN COMMENTS